# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| v. | : |
| WILLIAM E. MAPP, III, WARREN K. PAXTON, JR., CALEB J. WHITE, and SERVERGY, INC., | : Civ. Action No. 4:16-cv-00246<br><br>ORAL ARGUMENT REQUESTED |
| Defendants. | : |

## DEFENDANT WARREN K. PAXTON, JR.'S REPLY BRIEF
## IN FURTHER SUPPORT OF HIS MOTION TO DISMISS
_____

William B. Mateja
Texas Bar No. 13185350
Polsinelli PC
2950 N. Harwood
Suite 2100
Dallas, TX 75201
Tel: (214) 754-5751
Fax: (214) 397-0033
Mateja@polsinelli.com

J. Mitchell Little
Texas Bar No. 24043788
Scheef & Stone, LLP
2600 Network Blvd., Ste. 400
Frisco, TX 75034
Tel: (214) 472-2140
Fax: (214) 472-2150
Mitch.Little@solidcounsel.com

Matthew T. Martens (*pro hac vice*)
(Lead Counsel)
Jaclyn N. Moyer (*pro hac vice*)
Alyssa DaCunha (*pro hac vice*)
Kevin Gallagher (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
Matthew.Martens@wilmerhale.com

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT ..........................................................................................................................2

    I.    The SEC Is Unable to Defend its Fraud Allegations ...............................................2

        A.    The SEC Has Not Put Forward a Viable Theory of Scheme Liability ..................................................................................................2

        B.    The SEC Has Not Put Forward a Viable Theory of Fraud Via Half-Truth ..........................................................................................3

        C.    The SEC Has No Viable Misstatement Theory .........................................5

        D.    The SEC Has Not Put Forward a Viable Fiduciary Duty to Disclose Theory ...........................................................................................6

            1.    Investment Group ...........................................................................6

            2.    S3 Group .........................................................................................9

    II.    The SEC Has Abandoned its Section 17(b) Claim ...............................................10

    III.    The SEC Has Put Forward Nothing New to Salvage its Section 15(a) Claim ......................................................................................................................10

CONCLUSION .....................................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Arst v. Stifel, Nicolaus & Co., Inc.*, 86 F.3d 973 (10th Cir. 1996) .................................................. 9

*Carlucci v. Han*, 886 F. Supp. 2d 497 (E.D. Va. 2012) ................................................................. 5

*Chiarella v. United States*, 445 U.S. 222 (1980) .......................................................................... 2

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651 (6th Cir. 2005) ................................................................................................................................. 5

*Consol. Gas & Equip. Co. of Am. v. Thompson*, 405 S.W.2d 333 (Tex. 1966) ............................ 7

*FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282 (11th Cir. 2011) ................................ 5

*Graham v. SEC*, 222 F.3d 994 (D.C. Cir. 2000) ............................................................................ 2

*Gregan v. Kelly*, 355 S.W.3d 223 (Tex. Ct. App. 2011) ............................................................ 7, 8

*Holland v. Lesesne*, 350 S.W.2d 859 (Tex. Ct. App. 1961) .......................................................... 7

*Horton v. Robinson*, 776 S.W.2d 260 (Tex. Ct. App. 1989) ......................................................... 7

*In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008) ................................................................................................................................. 2

*In re K-Tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881 (8th Cir. 2002) ..................................................... 5

*Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667 (Tex. 1998) .......................................................... 8

*Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150 (Tex. 2004) ...................................... 9, 10

*Kunzweiler v. Zero.Net, Inc.*, No. 3:00-CV-2553-P, 2002 WL 1461732 (N.D. Tex. July 3, 2002) ................................................................................................................. 3

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) .......................................................... 4

*Meyer v. Cathey*, 167 S.W.3d 327 (Tex. 2005) ......................................................................... 7, 8

*Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245 (2d Cir. 2014) ......................................... 5

*Pope v. Darcey*, 667 S.W.2d 270 (Tex. Ct. App. 1984) ................................................................ 7

*Regents of the Univ. of Cal. v. Credit Suisse First Bos. (USA), Inc.*, 482 F.3d 372 (5th Cir. 2007) ................................................................................................................... 2

*Reves v. Ernst & Young*, 494 U.S. 56 (1990) ...........................................................................2, 6

*Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171 (Tex. 1997) ........................................7

*SEC v. Helms*, No. A-13-CV-01036, 2015 WL 6438872 (W.D. Tex. Oct. 20, 2015) ...................................................................................................................................9

*SEC v. Kirch*, 263 F. Supp. 2d 1144 (N.D. Ill. 2003) ....................................................................6

*SEC v. Kornman*, 391 F. Supp. 2d 477 (N.D. Tex. 2005) .............................................................6

*Shearer v. Shearer*, __ S.W.3d __, 2016 WL 3050094 (Tex. Ct. App. May 27, 2016) ...................................................................................................................................7

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353 (5th Cir. 2004) ............................6

*Springer v. Henry*, 435 F.3d 268 (3d Cir. 2006) ...........................................................................3

*Steginsky v. Xcelera Inc.*, 741 F.3d 365 (2d Cir. 2014) .................................................................6

*Tex. Bank & Trust Co. v. Moore*, 595 S.W.2d 502 (Tex. 1980) ....................................................7

*Thigpen v. Locke*, 363 S.W.2d 247 (Tex. 1962) ...........................................................................7

*Town North Bank, N.A. v. Shay Fin. Servs., Inc.*, No. 3:11-CV-3125-L, 2014 WL 4851558 (N.D. Tex. Sept. 30, 2014) ...........................................................................9

*United States v. Chestman*, 947 F.2d 551 (2d Cir. 1991) (en banc) .............................................6

*United States v. Whitman*, 904 F. Supp. 2d 363 (S.D.N.Y. 2012) .............................................1, 6

*Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523 (S.D. Tex. 2011) .................................7, 9

## STATUTES, RULES, AND REGULATIONS

17 C.F.R. § 240.10b-5 ....................................................................................................................3

15 U.S.C. § 77q ................................................................................................................. 1, 2, 3, 10

15 U.S.C. § 78o ............................................................................................................................10

15 U.S.C. § 78j ................................................................................................................... 2, 3, 6, 9

## INTRODUCTION

The SEC's brief reads less like an opposition to a motion to dismiss and more like a motion for reconsideration. Though the SEC is never so bold as to tell the Court that it was wrong in granting Mr. Paxton's original Motion to Dismiss, the bulk of the SEC's brief is devoted to disputing the Court's prior legal rulings. The SEC again asserts that omissions can be misleading merely because they are material (a position the Supreme Court has rejected for decades), contests that an omission can be fraudulent only if on the same topic as a statement made (as this Court previously ruled, in accord with every federal circuit court to consider the issue), disputes that scheme liability based on an omission requires a duty to disclose (despite Fifth Circuit precedent on point), asks the Court to reverse its Section 17(b) ruling (but offers no new facts or additional argument), and disagrees that control over the account of another is required to be a broker (despite this Court's prior ruling, which was based on the plain language of the Securities Exchange Act). In allowing leave to amend, the Court invited the SEC to offer new facts, not re-litigate settled legal issues—but the SEC's Opposition attempts to do just that.

Turning to the duty to disclose point, the SEC's primary argument is again that Mr. Paxton had a fiduciary duty to disclose. But the SEC makes no attempt to argue that Mr. Paxton had de facto control or dominance over any other investors, as federal law requires. Nor does the SEC offer an alternative test for when one is a fiduciary under federal law. Instead, the SEC argues, for the first time, that Mr. Paxton was a fiduciary as a matter of Texas state law.

It is nothing short of astounding that the SEC has alleged that Mr. Paxton intentionally violated a duty to disclose that even the Commission did not conjure up until this second round of motion to dismiss briefing. This newfound argument fails for two reasons. *First*, the scope of the fiduciary duty that gives rise to a duty to disclose for purposes of the federal securities laws is a matter of federal law, not state law. *See United States v. Whitman*, 904 F. Supp. 2d 363, 370

(S.D.N.Y. 2012). To hold otherwise would defeat the uniformity that federal law is meant to achieve, making the contours of a federal securities law violation turn on the nuances of a particular state's common law of fiduciary duty. *See Reves v. Ernst & Young*, 494 U.S. 56, 71 (1990) ("We are unpersuaded that Congress intended the Securities Acts to apply differently to the same transactions depending on the accident of which State's law happens to apply."). ***Second***, even if a state law fiduciary duty to disclose could support a federal securities law claim, Texas state law similarly requires dependence and dominance, even in the informal fiduciary relationship context. The SEC makes no argument that it has alleged either.

This case remains, as it has been from the outset, allegations in search of a plausible theory of liability. After a second complaint and a second round of briefing, the search has come up dry. This case should be dismissed with prejudice.

## ARGUMENT

### I. The SEC Is Unable to Defend its Fraud Allegations

#### A. *The SEC Has Not Put Forward a Viable Theory of Scheme Liability*

The SEC first argues that its fraud claims can be sustained on a scheme liability theory because scheme liability can be based on deceptive "conduct." Opp. at 3-6 (Dkt. #45). It is true that courts have recognized that certain actions—such as wash trades, matched trades, or sham transactions—are deceptive conduct that is covered by Sections 10(b) and 17(a). *See, e.g.*, *Graham v. SEC*, 222 F.3d 994, 1000-01 (D.C. Cir. 2000). But the SEC alleges nothing of the sort here. The only supposed deception that the SEC alleges is the failure to disclose a sales commission offered to Mr. Paxton. And, as the Supreme Court and Fifth Circuit have both held, that omission is an actionable fraud under a scheme liability theory only if there was a duty to disclose. *See Chiarella v. United States*, 445 U.S. 222, 228 (1980); *Regents of the Univ. of Cal. v. Credit Suisse First Bos. (USA), Inc.*, 482 F.3d 372, 384 (5th Cir. 2007); *see also In re Enron*

*Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 793 (S.D. Tex. 2008) (rejecting scheme liability theory because the Fifth Circuit "limited the reach of § 10(b) and Rule 10b-5 to a material misrepresentation or omission where there is a recognized duty to disclose").

The SEC responds that those Supreme Court and Fifth Circuit cases addressed scheme liability under Section 10(b), not Section 17(a). *See* Opp. at 6. But the SEC itself argued in the first round of motion to dismiss briefing, in accord with black letter law, that the elements of claims under Sections 10(b) and 17(a) are "essentially the same" except for the intent element. *See* Original Opp. at 5 (Dkt. 25). This Court agreed and held that *both* Section 17(a) and Rule 10b-5 require a duty to disclose for purposes of a scheme liability omissions claim. Order at 7, 17 n.4 (Dkt. 39). The SEC offers no reason for its about-face or any authority for the proposition that a Section 17(a) scheme liability claim can be sustained in the absence of a duty to disclose.

B.  *The SEC Has Not Put Forward a Viable Theory of Fraud Via Half-Truth*

The SEC next argues that Mr. Paxton created a misleading half-truth when he "made statements recommending an investment in Servergy, but failed to disclose his compensation." Opp. at 8. As an initial matter, it is hard to see how a "recommendation" could be true or false. *Springer v. Henry*, 435 F.3d 268, 278 (3d Cir. 2006) ("Such 'recommendations,' by definition, cannot be false."). Further, other than as to Investor 2,[1] the Amended Complaint nowhere alleges with particularity what statements Mr. Paxton allegedly made as part of the supposed recommendations. *See Kunzweiler v. Zero.Net, Inc.*, No. 3:00-CV-2553-P, 2002 WL 1461732, at *11 (N.D. Tex. July 3, 2002) ("[T]he Court must determine whether the alleged material omissions could have rendered any *identified* affirmative statement or statements made by the

---

[1] The only statement made to any investor that is alleged with any particularity in the Amended Complaint is the statement to Investor 2 that Servergy was a "great investment opportunity." *See* Amended Compl. ¶ 96. But as discussed below and as this Court previously ruled, this statement is inactionable puffery. *See infra* Section I.C.

defendants misleading under any set of facts. Plaintiff has not identified any statement made by any of the defendants that would be rendered not misleading if the above-statements were disclosed. Therefore, these alleged omissions are not properly pled because there was no duty to disclose the information." (emphasis in original)).

More importantly, there is no allegation in the Amended Complaint that Mr. Paxton made any statement to any investor regarding his compensation, as this Court previously ruled is required to make the omission of the alleged commission arrangement misleading. *See* Order at 16. Instead, the SEC disputes the notion that the half-truth theory requires the omission to be on the same topic as a statement made. *See* Opp. at 9-12. According to the SEC, requiring this alignment of topics renders the half-truth theory a nullity because it "promotes an impossible rule under which he could only be liable for failing to disclose his compensation if he first disclosed his compensation." *Id.* at 10. This argument is nonsense. As its name suggests, the half-truth theory might apply if Mr. Paxton partially disclosed but materially understated his compensation. For example, a statement that Mr. Mapp had offered Mr. Paxton a consulting fee of 2.5% in cash, while failing to disclose that Mr. Mapp had also offered an additional 2.5% in stock would, if material, be a misleading half-truth. A statement that a 2.5% cash consulting fee was offered would be literally true, but only half the story.

But here, Mr. Paxton made no statement at all about whether compensation was offered to him. Thus, he had no legal duty to disclose any commission allegedly offered. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 (2011) ("Even with respect to information that a reasonable investor might consider material, companies can control what they have to disclose under these provisions by controlling what they say to the market."). This Court's holding that the omission must be on the same topic as some statement made comports with the holdings of

every circuit court of appeals to consider the issue. *See Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 250 (2d Cir. 2014); *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011); *In re K-Tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 898 (8th Cir. 2002).

### C. *The SEC Has No Viable Misstatement Theory*

The SEC also takes issue with the Court's prior ruling that the statements Mr. Paxton allegedly made about Servergy—that it was a "great company" or an "interesting opportunity," Amended Compl. ¶ 90—were inactionable puffery. *See* Opp. at 12-14. As Mr. Paxton noted in his Motion to Dismiss, the Amended Complaint fails to provide any detail concerning the when, where, or to whom these statements were allegedly made, save for the statement to Investor 2. *See* Motion to Dismiss Amended Complaint ("MTD") at 11 (Dkt. 44). The SEC makes no effort to defend these allegations as satisfying the Rule 9(b) particularity requirements. As for the alleged statement to Investor 2 that Servergy was a "great investment opportunity," there is no reason to revisit this Court's prior ruling that such a statement is inactionable puffery. *See* Order at 8-9. While the SEC cites a bevy of cases holding that specific factual assertions were not puffery, *see* Opp. at 13, the SEC cites no case holding that the alleged statement to Investor 2 that Servergy was a "great investment opportunity" is anything other than puffery, *see Carlucci v. Han*, 886 F. Supp. 2d 497, 524 (E.D. Va. 2012) (calling something a "great investment" is "non-actionable" puffery that is "immaterial as a matter of law"). Indeed, it is difficult to imagine how a court would even judge whether such a statement, at the time it was made, was false, much less materially so. *See City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 671 (6th Cir. 2005) ("These statements, both on their own terms and in context, lacked a standard against which a reasonable investor could expect them to be pegged."). Such a statement is the classic example of a statement of "the vague and optimistic type that . . .

contain[s] no concrete factual or material misrepresentation." Order at 8-9 (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 372 (5th Cir. 2004)).

    D.    *The SEC Has Not Put Forward a Viable Fiduciary Duty to Disclose Theory*

        1.    Investment Group

Finally, the SEC revisits the fiduciary duty theory that this Court previously rejected. As this Court previously observed, the original complaint did "not allege that Paxton had any sort of control or dominance over his investment club members." Order at 12. In its most recent brief, the SEC puts forward no argument to counter the clear principle of federal law that, "[a]t the heart of the fiduciary relationship lies reliance, and de facto control and dominance," and a "similar relationship of trust and confidence consequently must share these qualities." *United States v. Chestman*, 947 F.2d 551, 568-69 (2d Cir. 1991) (en banc) (internal quotation marks omitted); *see also SEC v. Kornman*, 391 F. Supp. 2d 477, 487 (N.D. Tex. 2005) (same).[2] Nor does the SEC argue that the Amended Complaint now satisfies that standard. *See* Opp. at 15-19.

Instead, the SEC invokes the Texas state common law definition of fiduciary duty, arguing that it should apply here. *Id.* But state law does not govern whether there is a fiduciary duty to disclose under the federal securities laws. *See Whitman*, 904 F. Supp. 2d at 370 ("[W]here, as here, the issue is a duty to disclose, federal law must be paramount or the goal of the 1934 Act to assure transparency in the markets would be severely compromised depending on the vagaries of individual states' laws and policies.")[3]; *see also Reves*, 494 U.S. at 71 ("We

---

[2]    Even in *SEC v. Kirch*, 263 F. Supp. 2d 1144 (N.D. Ill. 2003), the "express policy" concerned the handling of property (*i.e.*, confidential information) entrusted to the defendant. *See id.* at 1147. There is no allegation here that any property was entrusted to Mr. Paxton.

[3]    The *Whitman* rule was subsequently adopted by the Second Circuit. *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 371 (2d Cir. 2014) ("Second, we hold that the fiduciary-like duty . . . under section 10(b) . . . springs from federal law, and that looking to idiosyncratic differences in state law would thwart the goal of promoting national uniformity in securities markets." (citing *Whitman*, 904 F. Supp. 2d at 369)).

are unpersuaded that Congress intended the Securities Acts to apply differently to the same transactions depending on the accident of which State's law happens to apply.").

Nor would the application of Texas state law rescue the SEC's case. "It is well settled that not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (internal quotation marks omitted). As under federal law, a fiduciary or similar confidential relationship under Texas common law exists only "to the extent that the parties do not deal with each other equally, either because of dominance on one side or weakness, dependence, or justifiable trust on the other." *Pope v. Darcey*, 667 S.W.2d 270, 275 (Tex. Ct. App. 1984). In other words, "[f]iduciary relationships juxtapose trust and dependence on one side with dominance and influence on the other." *Shearer v. Shearer*, __ S.W.3d __, 2016 WL 3050094, at *3 (Tex. Ct. App. May 27, 2016) (citing *Tex. Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 508 (Tex. 1980)); *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523, 545 (S.D. Tex. 2011) ("A fiduciary relationship may arise either as a result of dominance on the part of one, or weakness and dependence on the part of the other.").[4] Such a relationship does not arise from "mere subjective trust alone," *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962), but rather "requires proof" that one party "'is in fact accustomed to be[ing] guided by the judgment or advice' of the other," *Gregan v. Kelly*, 355 S.W.3d 223, 228 (Tex. Ct. App. 2011) (quoting *Thigpen*, 363 S.W.2d at 253). In short, Texas courts "do not create such a relationship lightly." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997). In the only case cited by the SEC concerning a fiduciary duty to

---

[4] The SEC contends that dominance is not required under Texas law. Opp at 16. But the only cases cited in support of this assertion involve "an agreement among the joint adventurers to share financial gains and losses." *See Consol. Gas & Equip. Co. of Am. v. Thompson*, 405 S.W.2d 333, 337 (Tex. 1966); *see also Horton v. Robinson*, 776 S.W.2d 260 (Tex. Ct. App. 1989) (fiduciary duty where parties jointly formed corporation to share profits); *Holland v. Lesesne*, 350 S.W.2d 859, 861-62 (Tex. Ct. App. 1961) (fiduciary duty where one party "relies upon another" to jointly purchase land). There is no allegation of joint securities purchases or shared financial gains or losses here.

disclose with regard to an investment, the Texas Supreme Court held that there was "no evidence of any prior dealings between [the defendant] and the Investors that would justify an expectation that [the defendant] reveal or require disclosure of material information regarding the investment product." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674-75 (Tex. 1998).

Likewise, the SEC makes no argument that it has alleged dependence on or dominance by Mr. Paxton with regard to the investment group. Nor does the SEC allege that any investment group member was accustomed to being guided by Mr. Paxton's judgment or advice with regard to investments, as the Texas courts have said is "require[d] proof" to make out a relationship of trust or confidence. *Gregan*, 355 S.W.3d at 228. Indeed, the Amended Complaint says not a word about Mr. Paxton providing investment advice to any investment group member. The Amended Complaint nowhere alleges that Mr. Paxton recommended a prior investment, much less that the investment group was guided by such a recommendation. *See* Amended Compl. ¶ 79.[5] Instead, the Amended Complaint makes the much more modest allegation that Mr. Paxton "brought" some investment opportunities to the group's attention "for their consideration." *See id.* ¶¶ 77, 79. The SEC has not alleged any history of the investment group being guided by Mr. Paxton's judgment or advice. *Gregan*, 355 S.W.3d at 228 ("A person is justified in placing confidence in the belief that another party will act in his or her best interest *only* where he or she is accustomed to being guided by the judgment or advice of the other party." (emphasis added; internal quotation marks omitted)).[6] That group members subjectively trusted Mr. Paxton and,

---

[5] Any advice provided by Mr. Paxton concerning the Servergy investment cannot give rise to a fiduciary duty because the relationship of trust and confidence must have existed "prior to, and apart from, the agreement made the basis of the suit," *Cathey*, 167 S.W.3d at 331, or, in this case, prior to the express policy alleged in paragraph 77 of the Amended Complaint.

[6] The SEC alleges that, post-investment, the member who introduced an investment to the group "typically monitors the deal going forward and represents the interests of the members who have invested." Amended Compl. ¶ 77. But the Amended Complaint does not allege a single instance in which Mr. Paxton ever played such a role with regard to another investment.

pursuant to the alleged group policy, did not expect that he would earn a commission does not give rise to a fiduciary duty, as "[r]eliance on another party to perform its obligations under an agreement is not sufficient to establish a confidential relationship." *Wellogix*, 788 F. Supp. 2d at 546. Finally, the SEC notes that Mr. Paxton incorporated some entities for Investor 1 years earlier, Opp. at 18, but Texas law is clear that a lawyer's fiduciary "duty to inform does not extend to matters beyond the scope of the representation," *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 160 (Tex. 2004). Thus, even if Texas law applies, the SEC's allegations fail.[7]

    2.    <u>S3 Group</u>

The SEC also argues that Mr. Paxton owed a fiduciary duty to the S3 Group, thus giving rise to a duty to disclose his alleged commission. Opp. at 19-20. But as Mr. Paxton has argued, the Amended Complaint nowhere alleges that the commission was material to any member of the S3 Group. *See* MTD at 23. The SEC offers no response to this argument. For this reason alone, any fraud claim based on supposed omissions to the S3 Group must be dismissed.

What is more, the SEC still offers no basis to find a duty to disclose to the S3 Group. While the SEC contends that Mr. Paxton was providing legal services to the S3 Group in July

---

And, more importantly, post-investment activities are irrelevant here, as any fraudulent omission must be with regard to the purchase or sale of a security. *See Arst v. Stifel, Nicolaus & Co., Inc.*, 86 F.3d 973, 977 (10th Cir. 1996) (holding that an "allegedly deceptive practice [that] occurred after the sale" could not "have had an impact on [Plaintiff's] decision to sell his shares" and thus "was not 'in connection with' the purchase or sale of a security [under] § 10(b)"); *Town North Bank, N.A. v. Shay Fin. Servs., Inc.*, No. 3:11-CV-3125-L, 2014 WL 4851558, at *25 (N.D. Tex. Sept. 30, 2014) (dismissing securities fraud claim based on post-sale misstatements or omissions). As this Court previously observed, "[t]he Complaint alleges prior dealings regarding monitoring various investments *going forward* but fails to explain what these prior dealings were or whether there were any fiduciary-like duties regarding investment *recommendations*." Order at 13 (emphasis in original). The same is true of the Amended Complaint.

[7]     In a footnote, the SEC cites the decision in *SEC v. Helms*, No. A-13-CV-01036, 2015 WL 6438872 (W.D. Tex. Oct. 20, 2015), for the proposition that a broker has a fiduciary duty to disclose compensation to every investor solicited. Opp. at 15 n.6. The *Helms* case is distinguishable on the ground that the broker actually spoke, albeit incompletely, on the issue of compensation. *See id.* And in any event, even assuming Mr. Paxton was a broker, which he was not (*see infra* Section III), the courts of appeals have long rejected the notion that a broker has a fiduciary duty to disclose compensation. *See* Order at 15.

2011, it concedes that these legal services were provided "in connection with a separate investment." Opp. at 20. There is no allegation that Mr. Paxton was serving as legal counsel to the S3 Group with regard to the Servergy investment, and thus there is no allegation that he was its fiduciary with regard to the Servergy investment. *See Joe*, 145 S.W.3d at 159 ("Generally, a lawyer's fiduciary duties to a client, although extremely important, extend only to dealings within the scope of the underlying relationship of the parties." (internal quotation marks and alterations omitted)); *see also* Order at 2 n.1.

## II.     The SEC Has Abandoned its Section 17(b) Claim

The SEC concedes that it has alleged no additional facts bearing on its Section 17(b) claim. *See* Opp. at 3. Accordingly, this claim should be dismissed.

## III.    The SEC Has Put Forward Nothing New to Salvage its Section 15(a) Claim

With regard to the unregistered broker claim, the SEC's opposition merely rehashes arguments that it made and the Court rejected during the last round of motion to dismiss briefing. The SEC still has not alleged facts demonstrating that "assets were entrusted to Paxton or that he was authorized to transact for the account of others," Order at 28, nor does the SEC argue otherwise in its Opposition. Instead, the SEC persists in its view that "'control' or 'authority over the accounts of others' . . . [is] a factor," and not a statutorily required element, Opp. at 23, notwithstanding the plain language of the statute and this Court's prior ruling, Order at 28. The SEC's claim that this Court's decision on this issue "does not comport with the law," Opp. at 23, is inaccurate and contrary both to the statute and the cases cited in the Court's Order, *see* Order at 28. Indeed, as the SEC itself notes, a person who is acting as a broker is distinguishable from one who acts as a dealer in part because a dealer is *purchasing* securities for his own account, whereas a broker is *purchasing* securities for the accounts of others. Opp. at 24 n.7. Mr. Paxton was doing nothing of the latter sort here.

## CONCLUSION

For the foregoing reasons, Mr. Paxton respectfully requests that this Court dismiss with prejudice the SEC's Amended Complaint.

Dated: November 28, 2016

Respectfully submitted,

/s/ Matthew T. Martens
Matthew T. Martens (*pro hac vice*)
(Lead Counsel)
D.C. Bar No. 1019099
Jaclyn N. Moyer (*pro hac vice*)
D.C. Bar No. 492284
Alyssa DaCunha (*pro hac vice*)
D.C. Bar No. 1003687
Kevin Gallagher (*pro hac vice*)
D.C. Bar No. 1031415
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
Matthew.Martens@wilmerhale.com

William B. Mateja
Texas Bar No. 13185350
Polsinelli LLP
2950 N. Harwood
Suite 2100
Dallas, TX 75201
Tel: (214) 754-5751
Fax: (214) 397-0033
Mateja@polsinelli.com

J. Mitchell Little
Texas Bar No. 24043788
Scheef & Stone, LLP
2600 Network Blvd., Ste. 400
Frisco, TX 75034

          Tel: (214) 472-2140
          Fax: (214) 472-2150
          Mitch.Little@solidcounsel.com

*Attorneys for Defendant Warren K. Paxton, Jr.*

## CERTIFICATE OF SERVICE

    I hereby certify that on November 28, 2016, I electronically filed the foregoing with the Clerk of the Court through the CM/ECF system, which will send notices of electronic filing to all counsel of record.

/s/ Matthew T. Martens
Attorney