# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** § § § | |
| Plaintiff, § § | |
| v. § § § | CIVIL ACTION NO. 4:16-cv-00246 |
| **WILLIAM E. MAPP, III; WARREN K. PAXTON, JR.; CALEB J. WHITE; and SERVERGY, INC.,** § § § § § | |
| Defendants. § | |

## REPLY BRIEF IN SUPPORT OF MOTION TO QUASH OR MODIFY SUBPOENAS OR FOR PROTECTIVE ORDER

Respectfully submitted,

*/s/ Neal J. Suit*
**Terry Jacobson**
  Texas State Bar No. 10528000
  Email: tljacobson@sbcglobal.net
**JACOBSON LAW FIRM, P.C.**
733 West Second Avenue
Corsicana, Texas 75110
903-874-7117 (telephone)
903-874-7321 (fax)
–&–
**Neal J. Suit**
  Texas State Bar No. 24041988
  Email: nsuit@ccsb.com
**Alex More**
  Texas State Bar No. 24065789
  E-mail: amore@ccsb.com
**CARRINGTON, COLEMAN,**
  **SLOMAN & BLUMENTHAL, L.L.P.**
901 Main Street, Suite 5500
Dallas, Texas 75202
214-855-3000 (telephone)
214-855-1333 (fax)

*Counsel for Nonparties*
*Byron C. Cook and Joel Hochberg*

Nonparties Byron C. Cook and Joel Hochberg (together, the "Witnesses") file this Reply Brief in support of their Motion to Quash or Modify Subpoenas or for Protective Order (ECF No. 81, the "Motion," hereby incorporated by reference), responding to the issues raised in Defendant Warren K. Paxton, Jr.'s Opposition to the Motion (ECF No. 90, the "Opposition").

## I. PURPORTED PROCEDURAL DEFECTS DO NOT BAR THE RELIEF REQUESTED

1. Paxton devotes the majority of his Opposition to picking at alleged procedural defects in the Motion, ignoring the broader context of the ongoing discovery disputes in this case. As an initial matter, "[c]ontrol of discovery is committed to the sound discretion of the trial court," and this Court has the power to order the relief requested whether pursuant to the Motion or *sua sponte*. *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 373 (5th Cir. 1987). Under Federal Rule of Civil Procedure 45(d), as amended December 2015, "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the Court "must enforce this duty." The Court must therefore address the objections raised by the Witnesses' Motion even if there were a lack of standing regarding specific objections, and Paxton's cited authority confirms this. *See Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 815 (N.D. Ill. 2015) ("Where, as here, the proposed discovery 'outweighs its likely benefit,'—where the book is not worth the candle—it ought not be allowed, and a court can *sua sponte* raise the issue.").

2. These principles make particular sense in the context of this case—Paxton has subpoenaed and moved to compel the production of all documents concerning the Witnesses' investments for the past 25 years. *See generally* ECF Nos. 75 & 83. Rightfully met with resistance at the front door, Paxton has attempted an end-run around the Witnesses' valid objections by subpoenaing every entity he can identify with whom the Witnesses have done

business. Paxton's Opposition arguments highlight the impropriety of this discovery strategy—as he alleges, the Witnesses purportedly lack standing to raise relevance, undue burden, and disproportionality objections to his back-door subpoenas. But the proper scope of discovery, relevance, and proportionality do not vary from subpoena to subpoena. If it were not so, then Paxton's strategy of circumventing the usual channels of discovery by asking third parties about irrelevant subjects of discovery—without fear of the target being able to object—would undermine the entire framework of the discovery process outlined by the Federal Rules. Not only can the Court grant the relief requested for the reasons explained above, but also Paxton's Opposition misstates the law regarding standing.

   3. Paxton claims that the Witnesses lack standing to make objections to subpoenas on nonparties other than assertions of personal rights and privileges. *See* Opposition at 6–8. But as Paxton's authority acknowledges, standing concerns whether a party can object to discovery requests categorically, and because the Subpoenas seek broad discovery of nonparty records of the Witnesses' financial affairs, the Witnesses have standing to raise any and all applicable objections. *See KeyBank Nat. Ass'n v. Perkins Rowe Associates, L.L.C.*, CIV.A. 09-497-JJB-SR, 2011 WL 338470, at *3 (M.D. La. Jan. 31, 2011) ("the Court also finds that Defendants do have standing to challenge the subpoenas issued to BancorpSouth.") (citing *Old Towne Dev. Group, L.L.C. v. Matthews*, CIV. A. 09-224-B-M2, 2009 WL 2021723, at *2–3 (M.D. La. July 9, 2009) ("The Court agrees with Matthews that the second portion of the subject subpoena is 'nothing more than a 'fishing expedition' designed to elicit confidential information regarding [Matthews'] personal and corporate finances."); *Terwillegar v. Offshore Energy Services, Inc.*, CIV.A. 07-01376, 2008 WL 2277879, at *3 (E.D. La. May 29, 2008) ("while Tonya is not the person to whom which the subpoena was directed, the Court finds that she has standing to

challenge the subpoenas because she has a personal right regarding her financial information that is in the possession of Rayne and Iberia Banks. . . . any requested financial information regarding Tonya from those periods are irrelevant to proving Joshua's finances or economic situation, and . . . . subjects Tonya to annoyance, embarrassment, oppression, and undue burden to warrant the Court's issuance of a protective order, shielding Tonya from these discovery inquiries.")).

4. As noted in *Terwillegar*, the fact that the Subpoenas seek discovery of the Witnesses' private financial information in the possession of other nonparties gives the Witnesses standing to move to quash the subpoenas pursuant to Rule 45 *and* to move for a protective order pursuant to Rule 26(c). *See* 2008 WL 2277879 at *3; *see also Bounds v. Capital Area Family Violence Intervention Ctr., Inc.*, 314 F.R.D. 214, 218 (M.D. La. 2016) (finding "a party has standing to move for a protective order pursuant to Rule 26(c) seeking to limit the scope of discovery" as to subpoenas served on third parties.) (citations omitted). Here, the Subpoenas seek "Any documents related to financial transactions or arrangements" with the Witnesses, and "Documents sufficient to identify any payments to" the Witnesses. *See, e.g.,* Motion Ex. E, More Decl. at 12, 13. Because these requests concern private financial information of the Witnesses in the possession of the subpoena recipients, the Witnesses have standing to raise any and all objections, and their objections should be sustained.

## II. PAXTON'S SUBPOENAS SEEK IRRELEVANT, UNDULY BURDENSOME, AND DISPROPORTIONATE DISCOVERY

5. Paxton does not attempt to and cannot defend the facial overbreadth of his subpoena requests, but instead argues that the requests are necessary to discover alleged "side deals"[1] between the Witnesses and the companies in which they invested. Under Paxton's

---

[1] Witnesses do not have any understanding of how Paxton defines a "side deal," and Witnesses note that nowhere in the First Amended Petition does the phrase "side deal" appear. (ECF No. 40)

tortured logic, the Court should order a lifetime audit of the Witnesses' financial dealings because, if Paxton can manufacture some evidence of alleged side deals, this could make it less likely that he owed a fiduciary duty to disclose or refrain from taking the cash and equity kickback that Servergy paid him in exchange for soliciting the Witnesses' investments. But Paxton has not tailored his subpoena requests to the claims and defenses in this case,[2] and the alleged "side deals" to which he cites as examples of pertinent discovery have no relevance at all.

6. Although Paxton claims he "is more than willing to narrow his requests, including by removing categories of documents that would be irrelevant or burdensome to produce," (Opposition at 14–15), Paxton's counsel has articulated the exact opposite in conferring on this Motion. Every time counsel have discussed the prospect of limiting the scope of discovery regarding this discovery dispute (for instance, by taking discovery only as to certain transactions during a limited scope of time), Paxton has hedged and qualified such limitations as a bridge to broader discovery of *any potential "side deal" or "financial transaction or arrangements" with anyone, at any time*. Paxton can assert that this request does not intend to include, for example, receipts for business lunches, but he cannot and will not qualify his subpoena requests—as is his obligation—in any way that would distinguish between a vast array of irrelevant but responsive transactions and the questionably relevant side deals about which he seeks discovery.

7. As his sole example of relevant discovery, Paxton claims that his "defense team uncovered evidence of self-dealing . . . with regard to Unity Resources, LLC." Opposition at 9.

---

[2] Paxton attempts to sugarcoat the overbreadth of his subpoena requests by citing to a Northern District of Iowa case for the proposition that reasonable efforts to narrow the scope of a broad subpoena mitigate undue burden. Opposition at 15; *Progressive Cas. Ins. Co. v. FDIC*, 302 F.R.D. 497, 505 (N.D. Iowa 2014). But the Fifth Circuit and Eastern District of Texas authority cited by the Witnesses establishes that the Court must look first to the face of the subpoena requests, and in light of the December 2015 amendments to Rule 45, Paxton's half-hearted attempts to "narrow" the scope of his requests do not forgive the facial overbreadth of the requests as phrased. *See* Motion at 7-9.

But Paxton in no way alleges or explains a colorable theory of self-dealing—he merely observes that the Witnesses engaged in mineral rights purchases and sales with Unity Resources, and infers "self-dealing" by conclusory assertion. Paxton cannot connect the logical gap between these independent mineral rights transactions and "put[ting] the lie to the SEC's allegation that there was an investment group with the policies and practices it has alleged." *Id*.

8. Indeed, Paxton's arguments preview the trial-within-a-trial that he intends to present as a defense in this case. In Paxton's Opposition to Unity Resources' Motion for Protective Order, referenced in his Opposition to this Motion, Paxton puts no meat on the bare bones of his self-dealing allegations, and instead argues in a footnote that one of the Witnesses' defenses in the Collin County Lawsuit—fabricated by Paxton's agents to cast aspersions on the Witnesses—would apply equally to Paxton here. *See* ECF No. 57 at 10–11 n.2.

9. But the SEC's allegations against Paxton do not rise and fall on the baseless Collin County Lawsuit. Indeed, there is no relevance whatsoever. As Paxton correctly observes, the Unity Resources Company Agreement provides for disclosure of interested party transactions. *See* ECF No. 57-3 at 17–18, § 6.04. Unlike Paxton, the Witnesses did disclose such transactions to the officers of Unity Resources, the transactions were in fact facilitated by the majority of disinterested officers, and the transactions have been approved and ratified by a majority of the disinterested and officers. More importantly, none of these alleged transactions involve Witnesses soliciting anyone to invest or receiving any undisclosed benefits based upon others' investments. The Court should not permit Paxton's fishing expedition into the Witnesses' irrelevant financial affairs based on sham self-dealing claims, and the Witnesses respectfully request that the Court grant their Motion.

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2017, I electronically filed the foregoing document with the Clerk of the Court through the CM/ECF system, which will send notices of electronic filing to all counsel of record.

                                                */s/ Neal J. Suit*
                                                Neal J. Suit