SEC-DC-EPROD-000559174



**Private Placement**

*LEADERSHIP*

## LEADERSHIP AND CORPORATE GOVERNANCE

Servergy, Inc. has a seasoned executive leadership team, Board of Directors, and Corporate Board of Advisors with a proven international Fortune 500 and entrepreneurial track-record of technology innovation and success in bringing award-winning new products and services to market -- helping companies drive sales, profits and customer satisfaction – which accelerate the growth of business, brand and stockholder value *fast-forward*, globally. Additionally, we intend to deploy a portion of the proceeds from the Offering to expand our leadership team to selectively add proven industry professionals.

## ORGANIZATIONAL STRUCTURE

We intend for our organizational structure to be organic and capable of evolving as the Company grows and the design variables listed above change. The initial design structure for Servergy will employ a classic vertical functional grouping, which we believe has benefits because: 1) it allows economies of scale within functional departments, 2) it enables in-depth knowledge and skill development, 3) it enables organizations to accomplish functional goals, and 4) we plan to initially develop only a few products. As the Company grows, we plan to take on more of a horizontal functional grouping structure to create an infrastructure capable of optimally supporting global growth encompassing specific product managers, vertical market industry managers, country managers, etc.

## STAFFING PLAN

The Company has adopted a strategy of supplementing its full-time employees with leading consultants/vendors in various functional areas on an on-going and/or part-time basis to bolster its management capabilities without unnecessarily incurring the costs of employing such people on a full-time basis. The Company has a detailed staffing plan, which would include the hiring of approximately 65 employees over a 2-3 year period.

The founder, Bill Mapp, Chairman and CEO, is responsible for driving the overall vision, profitability and success of the Company. Leadership team members, reporting to the CEO, include Lance Smith, COO; Jack Smith, Vice President of Technology; Vihar Rai, Vice President of Engineering; and Wade Cramer, Vice President of Manufacturing Operations. These top seasoned executive team reporting to the CEO are responsible for leading the development of their own respective leadership teams as well as for the development and execution of sound strategy in their respective areas that support Servergy's corporate vision and goals.

Our Board of Directors and Board of Advisors augment the resources of our highly experienced corporate leadership team and are actively engaged in supporting the Company. One of the important uses of the proceeds from this Offering will be to hire high additional high caliber server industry executives with solid track records and proven leadership.

## EMPLOYEE STOCK OPTIONS AND BENEFITS

In addition to having market competitive salaries for employees, management feels it is critical that all employees have a vested interest and ownership in the Company. Accordingly, we have adopted the Servergy Inc. 2011 Stock Incentive Plan. We plan to offer stock options to all of our employees, subject to suitable vesting periods and other terms and conditions. All employees are planned to be offered a competitive benefits package, including vacation, performance bonuses and health insurance benefits.

**CONFIDENTIAL**                                                                **HB-SVG-00547290**

SEC-DC-EPROD-000559175

 **Servergy**
Save Energy Work Smart

Private Placement

*LEADERSHIP*

## OFFICERS AND DIRECTORS

The Servergy veteran leadership team brings a proven Fortune 500 and Entrepreneurial track-record of innovation and success in driving award-winning new technologies, products and services to market. This will help accelerate Servergy's business, brand & stockholder value across the globe.



## Bill Mapp, Chief Executive Officer, Chairman & Founder

Mr. Mapp is a BSCS/MBA Exec with 30+ Years of experience.   Seasoned Business, Strategy, Sales, Marketing, Technology and Operations Exec/Entrepreneur with proven CEO, COO, CMO, and CTO skill sets in helping companies of all sizes, from Fortune 1000/Global 2000 to new start-ups, accelerate their business and brand velocity fast-forward... As Principal with the IBM Global Services Consulting Group, put together the largest e-Business deal in IBM history at the time, valued at $3.8 billion. Mr. Mapp was also a GM/Global Exec for a Fortune 500 Company's new division, which he took from not one penny to well on its way to a billion dollar a year enterprise in a little over 36 months.

For a more detailed online bio complete with references please see: http://www.linkedin.com/in/billmapp



## Lance A. Smith, Chief Operating Officer

Mr. Smith is a seasoned Exec with 18+ Years of Global 1000/start-up experience. A serial entrepreneur with proven CXO skill sets in Revenue Enablement, Capital Strategies, Data Security, Supply Chain Operations and Real Estate Management, Mr. Smith helps capitalize go-to-market strategies that increase market share and competitive advantage. Mr. Smith has lead large global data center operations teams for Atos and ACS/Xerox Global 100 customers. Most recently Mr. Smith was the CEO & Founder of two data center companies, Eagle DevCo and Horizon Data Center Solutions (rebranded as VZATA), both venture financed B2B companies offering flexible collocation and managed services with an innovative cloud computing/IaaS platform. Mr. Smith led each company to build a robust $100M sales pipeline and secured over $75 million in contracts, respectively. Mr. Smith has his Bachelor of Arts degree in Economics from Austin College, and he completed a Master's in Public Administration from the University of North Texas.

**CONFIDENTIAL**                HB-SVG-00547291

SEC-DC-EPROD-000559176



### LEADERSHIP



## Vihar R. Rai, Vice President, Engineering

Mr. Rai is an industry expert in embedded and firmware systems architecture and design with over 15+ years of experience that include some of the top companies in the field, such as HP and Agilent Technologies. Mr. Rai, formerly with a leading enterprise server storage chip vendor company for the last 8 years, has led several high profile enterprise companies through full-scale production ramp up for System-on-a-Chip (SOC) and application specific integrated circuits (ASIC) storage chips. Prior to that, he worked at HP in the networking division on advanced embedded SOC designs working on the basic input/output system (BIOS) and porting operating systems (OSes) and drivers. Mr. Rai has completed his coursework for his MS in Computer Science from California State University and has his BS in Electrical Engineering from Bangalore University.



## Townsend J. Smith, Vice President, Technology

Mr. Smith is an industry expert in computer and embedded system architecture and design. He brings 15+ years of experience implementing and productizing hardware and software projects. Most recently, Mr. Smith comes from a 5 year stint in the enterprise storage industry, where he successfully supported customer designs from inception to production ramps of $100M+ in the server based storage market. Prior to that, he has a 10 year background at Intel, working on processor technology innovations, including extensive parallel processing achievements, and Intel's early efforts to reduce processor power requirements. Mr. Smith received a double major in BS, Computer Engineering, for hardware and a BS, Computer Science, for Software; both with top honors from Virginia Polytech Institute and State University.



## Wade Cramer, Vice President, Manufacturing Operations

Mr. Cramer brings a broad background in Manufacturing Operations and Engineering Management of high tech products. In his 28 year career at Texas Instruments Defense Systems (now part of Raytheon Systems) he had key management responsibilities for several high technology product lines managing both engineering and test organizations. Mr. Cramer was a champion for implementing processes that promoted systematic, programmatic methods for improving product quality and reducing product cost, such as the Six Sigma Black Belt program. Mr. Cramer participated in the development of the Integrated Product Development Process utilized by TI Defense Systems to transition products from design to production more effectively. This process was a key factor in TI Defense Systems obtaining the Malcolm Baldrige National Quality Award in 1992, as well as Raytheon purchasing the TI Defense Systems and Electronics Group. Mr. Cramer will oversee Producibility, Reliability, Quality, Logistics and Support for the Company.

---

Copyright © 2013 by Servergy, Inc.   Private and Confidential

**CONFIDENTIAL**  **HB-SVG-00547292**

SEC-DC-EPROD-000559177



**Private Placement**

## *LEADERSHIP*

### VISION, MISSION, MANTRA AND GOALS

Servergy, Inc. has an overarching corporate Vision of leveraging the power and potential of our innovative new green/clean computing technology, to make our world and planet a better place to live in. With rising energy costs and the threat of global warming, businesses are now recognizing the benefits of using green technology to significantly reduce their carbon footprint, minimize waste and lower costs.

Our Mission is to be a worldwide leader in the ultra-low-power/high-performance new class of green and cleantech computing, for global "smart planet" applications, including servers in the data center. The Company's Mantra is intended to be inspiring and help everyone that comes in contact with the Company understand why the Company exists. Simply stated, the mantra is the Company's *brand promise* to help all of our customers *Save Energy. Work Smart.* ®

Operationally, the company is locked-in on target with laser focus to achieve its top Goals -- to get just as quickly as prudently possible to production and profitability -- in order to accelerate the Servergy business velocity, valuation and stockholder value, globally.

### CORE VALUES AND CULTURE

In this ever-increasing competitive environment, one thing is clear: it takes a winning team to stay ahead of the pack and establish a sustainable competitive advantage. Values affect Beliefs affects Attitudes affects Behavior affects Results affects Success. Culture is the Company's value system and one of its keys to success. The leadership of a company has the ability to shape its core beliefs, as long as it finds great people of like values and vision. The Servergy core values listed below act as a compass to creating a great product and company, which all starts with a great T.E.A.M. that Together Each Achieves More. An important part that the Servergy "Servant Leadership" culture embraces -- in addition to the basics that take a company from "Good-to-Great" and turn it into a truly world class enterprise, i.e., Honesty, Integrity and Excellence, Customer Focus, Employee Involvement and Continuous Improvement -- is the classic Jack Welch "3-Ss" of Simplicity (keep it simple), Speed (move fast) and Self-confidence (get it done.) Another way of looking at what makes a world class culture, focused on shared vision and values, are really driving the basics home: Passion, Purpose, People, Productivity, Product, Partnerships and Profitability.

---

**CONFIDENTIAL**                                                                                    **HB-SVG-00547293**

SEC-DC-EPROD-000559178



Private Placement

## *LEADERSHIP*

### CORPORATE BOARD OF ADVISORS

⊞ **Mark Bluhm, Corporate Advisor** – 25 years of high-end microprocessor silicon design and management. Founded Navarro Networks in 2000, and with 22 engineers from Cyrix, designed a leading edge network processor. Navarro was acquired by Cisco Systems in 2002 for $85 million. Previous to Navarro, he was Vice President of Engineering at Cyrix which designed X86 microprocessors for the PC market. Mark was a founding team member at Cyrix and their original microprocessor designs were manufactured at Texas Instruments and TSMC and later at IBM. National Semiconductor acquired Cyrix in 1997 for $550 million. Early in his career, Mark as one of the designers of the Motorola 68020, which was used in the early Apple PC's and SUN workstations.

⊞ **Gary Duncanson, Corporate Advisor** – Gary is CEO of No Magic -- an award winning, industry leading software and the top Unified Modeling Language (UML) company according to Top Industry Research Firms – Please see client list at http://www.nomagic.com/text.php?lang=2&item=229&arg=203 for more information. Gary is a renowned thought leader in the software industry pushing for Standards Compliant software solution and interoperability. Mr. Duncanson is on the Board of Directors of the Object Management Group (OMG). He has held numerous positions within No Magic including Project Manager, Lead Architect, CTO, and Sr. Executive Vice President of Sales and Marketing, growing the revenue and client base many fold over the last 14 years. He is currently Member of No Magic's Board of Directors. Mr. Duncanson holds a B.S.E.E. from Purdue University and has over 27 years of technical consulting experience developing object-oriented projects since the mid 1980s. He has over 25 years of technical project management experience for both the U.S. military and private industry. Companies and organizations such as NASA's Jet Propulsion Laboratory (ASAS/Ence), Hughes Aircraft Company (Air Defense Systems), Texas Instruments (HARM MISSLE), Magnavox (AFATDS), Motorola, Eaton Corporation (USAF CATIS/SID 88), Contel Federal Systems (USAFE UTAIN/MAIS), Bridge Medical, Alcatel, and Naval Warfare Assessment Center/Division (Battle Force Tactical Trainer) have called upon Mr. Duncanson's talents to make their projects successful. These projects include Command Control Systems, Networking and Communication Systems, Air-Defense Consoles, Cellular Telephones, Medical Devices, Missile Systems, User Interfaces, 2-D and 3-D Computer Graphics, Systems Modeling, Architecture, Data Modeling, War Gaming, and (Air, Sea, and Land) Battle Simulations. Gary is a recipient of the U.S. American Patriot Award.

⊞ **Henry Exall IV, Corporate Advisor** – Attorney, Exall & Wood, PLLC. Henry Exall is an accomplished transactions attorney with more than two decades of experience in corporate and securities law. His practice encompasses corporate negotiations, public and private equity financings, and debt financings. Mr. Exall works closely with entrepreneurial and high-growth clients to develop effective financial and operational strategies. He also assists clients in a variety of acquisitions matters, including identifying acquisitions, establishing valuations, structuring and negotiating acquisition terms, and conducting due diligence reviews. Washington and Lee University, B.A., Economics, 1986, Summa Cum Laude; The University of Texas School of Law, JD, 1989. Mr. Exall serves on the Board of Directors and Membership Committee for the North Texas Chapter of the Young Presidents' Organization. He is a former member of the Board of Directors of the Episcopal School of Dallas and the Thanksgiving Square Foundation Board of Directors. http://www.exallwood.com

---

Copyright © 2013 by Servergy, Inc.     51     Private and Confidential

CONFIDENTIAL     HB-SVG-00547294

SEC-DC-EPROD-000559179

 **Servergy**
Save Energy Work Smart

### *LEADERSHIP*

✠ **General William E. "Bill" Harmon (Ret.), Corporate Advisor** -- Bill Harmon, a retired Major General of the Army, has over 32 years of experience in all facets of military operations, including combat, research and development, and procurement. A Vietnam veteran, Bill had commanded tactical intelligence units from company to brigade. As a Program Manager and later as a Program Executive Officer, he provided tactical intelligence systems as well as command and control equipment used in combat operations during Desert Storm. His last assignment was as Program Executive for the Army's Command and Control Systems (PEO-CCS). He has been inducted into the Military Intelligence Hall of Fame. Following his retirement from the military, Bill spent five years at Perot Systems Corporation, where he was the CTO/CIO. He returned to Arkansas Tech University to serve as the University CIO for two years and bring online the $12M Pendergraft Library and Technology Center. Following the completion of the Library and Technology Center, he was asked to be the first occupant of the Lemley Endowed Chair in the School of Business and served as a visiting Professor for five years. He has recently served as the technical coordinator for the new College of Business $14M building, which seats 835 students in classes, has an active Trading Room, and houses all offices of the Business faculty. He continues at Arkansas Tech University as Technical Consultant to the President of the University. http://www.linkedin.com/pub/bill-harmon/5/900/951

✠ **Michael B. Holder, MBA** -- Mr. Holder is an experienced executive with over 25 years of demonstrated success in strategic, fund-raising, operational and corporate directorship capacities in various industries, including healthcare and information technology. Mr. Holder is Chairman and CEO of Organ Transport Systems, Inc. a leading medical technology company sold in 2010. Prior to his previous role, Mr. Holder ran the Information Technology Solutions business for Premier Inc., an $18 billion Group Purchasing Organization and hospital supply company. During Mr. Holder's career, he has served as an executive with both a leading healthcare technology company, BeaconEye Inc., where he completed an IPO and strategic sale of the company and with a leading information technology consulting firm, Clarkston Consulting. Mr. Holder was also an executive with the Sam Walton family private equity fund, Heartland Capital Partners L.P. and transacted mergers and acquisitions with AMR Corporation. Mr. Holder received his MBA from the Wharton School of Business, his B.S. in Business Administration from the University of North Carolina, and previously earned his CPA designation.

✠ **Jeff Joyner, Corporate Advisor** – Partner, Greenberg Traurig, Los Angeles Office. Jeff Joyner's experience includes patent, trademark, and copyright litigation, trials, appeals, enforcement, protection and licensing. He also focuses on technology, including green technologies, entertainment, Internet and new media law.

Jeff has represented major international and domestic alternative energy and clean technology projects, electronics companies, technology companies, semi-conductor companies, medical companies, fashion designers, sports organizations, entertainment companies, media companies, consumer products companies, artists and photographers in litigation involving substantial damage claims and the development and execution of worldwide intellectual property development, acquisition, protection, compliance, enforcement, branding and licensing programs for patents, famous trademarks, trade dress and copyrighted works.

Jeff advises and is a limited partner of one of the first clean technology venture funds that includes a portfolio of solar, carbon credit management, water purification and bio pesticide companies. He

---

CONFIDENTIAL HB-SVG-00547295

SEC-DC-EPROD-000559180



Servergy® · Save Energy. Work Smart.                          **Private Placement**

## *LEADERSHIP*

also advises other ventures and companies using technologies for solar, wind, biomass, solar thermal, waste-to-energy, green building material, transportation, infrastructure and smart grid projects, among others. Jeff participates on the Green Task Force for the Los Angeles Economic Development Corporation.

In particular, he has been very active in litigating lawsuits throughout the United States involving patent infringement, trademark infringement, trade dress infringement, copyright infringement, anti-counterfeiting, reverse confusion, dilution, unfair competition, contractual disputes, licensing disputes, domain name disputes and right of publicity. By drawing on his wide-ranging experience in intellectual property litigation and trials, Jeff has enforced such judgments against both U.S. and foreign defendants, , including, but not limited to, judgments reaching nine figures by way of settlement, jury verdict, default judgment and summary judgment.

He also represents individuals and companies before the U.S. Patent and Trademark Office in the enforcement and protection of their trademark rights. Jeff has advised companies in connection with the drafting of license agreements and marketing agreements. Jeff's online Bio Internet address is http://www.gtlaw.com/People/JeffJoyner

- **Roger Klotz, Corporate Advisor** – Chief Operating Officer and Board of Directors for No Magic, Inc. http://www.nomagic.com/text.php?lang=2&item=229&arg=203 As a seasoned and dynamic Senior Executive with over 40 years of experience, Mr. Klotz creates value for companies through leadership in sales, operations, customer service and P&L management. His specific expertise includes: General Management, Leadership & Team Building, Global P&L Management, Product Development/Introduction, Sales & Customer Satisfaction, Customer Service & Support, Supply Chain Management, Repair & Return, Logistics & Distribution and Professional Services. Before GenuTech, Mr. Klotz was President and CEO of Skyport Global Communications before retiring in 2007. Earlier to that, he worked at Nortel Networks for nearly 20 years and served as Vice-President as well as General Manager. Mr. Klotz received an Associate of Science Degree - Electronic Communications Technology from Mt. San Antonio College, Walnut, California. http://www.linkedin.com/pub/roger-l-klotz/0/17b/691

- **Henri Richard, Corporate Advisor** -- Senior Vice President, Chief Sales and Marketing Officer, Freescale Semiconductor. Prior to joining Freescale in September 2007, Henri was executive vice president and Chief Sales and Marketing Officer at AMD. He oversaw AMD's international sales force, corporate marketing and field marketing initiatives.Henri joined AMD in 2002 as group vice president of worldwide sales. Previously, Henri was executive vice president of worldwide field operations at WebGain, Inc., a privately held provider of Java software for Fortune 500 companies. Prior to that, he was president of the Computer Products Group at Bell Microproducts and vice president, worldwide sales and support for IBM's Technology Group. He also held senior executive positions with Seagate Technology, Karma International and Metrologie International. Henri brings a global perspective to Freescale, having led worldwide sales and marketing efforts in the Asian, European and American markets for more than 30 years.Henri holds a bachelor's degree in science and technology from Ecole Nationale de Radiotechnique et Electronique Appliquee in France.

- **General John W. "Jack" Woodmansee (Ret.), Corporate** Advisor – General Woodmansee, a retired Lieutenant General of the Army, has over 33 years of experience in all facets of military operations, including combat, research and development and procurement. A Vietnam veteran, General Woodmansee led air cavalry units flying over 1,500 hours of combat missions. He's been one of the Army's visionaries and a key contributor to the design of the organizations, tactics, and equipment used in Desert Storm. As Director of Army Requirements, he was responsible for prioritizing the Army's then $25 billion Research, Development, and Acquisition budget. His last

**CONFIDENTIAL**                                                        **HB-SVG-00547296**

SEC-DC-EPROD-000559181



**Private Placement**

### *LEADERSHIP*

assignment was as commander of the 62,000 soldiers in the U.S. V Corps in Germany. Following his retirement from the military, General Woodmansee consulted for top defense contractors including Texas Instruments, Bell Helicopter, and LTV. He is a former member of the Board of Directors of Perot Systems Corporation, where he was the leader of North America Sales and Operations. He also founded and is currently the Chief Executive Officer of TR Gear, Ltd., a tactical and rescue gear company.   http://www.trgear.com/osc/eshop/aboutus.php

⊹ **Mike Woster, Corporate Advisor** – COO & Vice President, Business Development Mike Woster is the head of worldwide business development for the Linux Foundation expanding industry and corporate end user participation in the Linux platform and community. Woster most recently served as global account executive at Intel. Prior to that, he held a variety of roles in product marketing, customer marketing, and channels sales in the US and Europe. Both on the job and in his free time as a long time Linux user and advocate, Woster has helped major corporations, schools and small business migrate from proprietary operating systems to Linux. He holds an MBA from the Kellogg School of Management at Northwestern University and a B.S. in Computer Science from Texas A&M University. In his spare time, he serves as a director on a non-profit financial endowment board. See http://www.linkedin.com/in/mikewoster

---

**CONFIDENTIAL**                **HB-SVG-00547297**



# Servergy, Inc.

1700 N. Redbud Blvd., Suite 410
McKinney, Texas 75069
www.Servergy.com
www.twitter.com/servergy

# APPENDIX 1 – INDUSTRY RESEARCH SOURCES

CONFIDENTIAL                                                          HB-SVG-00547298

SEC-DC-EPROD-000559183



**Private Placement**

| SAMPLE PERIODICALS | SAMPLE TRADE GROUPS/MARKET RESEARCH | SAMPLE ONLINE RESOURCES |
|---|---|---|
| http://www.computerworld.com | http://www.451Research.com | http://www.b-dyd-network.com |
| http://www.crn.com | http://www.forrester.com | http://www.bsa.org |
| http://www.eweek.com | http://www.gartner.com | http://www.news.com |
| http://www.informationweek.com | http://ww.idc.com | http://wwwcrm2day.com |
| http://www.infoworld.com | http://www.standardandpoors.com | http://ww.domaintools.com |
| http://www.cio.com | http://www.clenatech.com | http://www.internetworldstats.com |
| http://www.softwaremag.com | Others | http://wwwnetapplications.com |
| Others | | http://www.techweb.com |
| | | Others |

**CONFIDENTIAL**                                                                 **HB-SVG-00547299**

SEC-DC-EPROD-000559184

## APPENDIX 2 – SUBSCRIPTION BOOKLET

**End of Private Placement Memorandum**

CONFIDENTIAL

HB-SVG-00547300

# EXHIBIT P

## SUBSCRIPTION BOOKLET

*Shares of Common Stock*
*of*
*SERVERGY, INC.*

**$0.25 per Share**

This Subscription Booklet relates to subscriptions for common stock ("Common Stock") of Servergy, Inc., a Nevada based clean technology company (the "Company"), which engages in the development of advanced low-power and energy-efficient computers and software.

The Offering relates to the sale of 2,000,000 shares of Common Stock (the "Shares") and shall expire on February 15, 2010, (the "Termination Date") unless the Company, in its sole discretion, shall extend the termination date. Subscriptions are payable upon completion and execution of this Subscription Booklet. A Subscriber must tender his Subscription payment together with his completed and executed Subscription Booklet. All Subscriptions are subject to acceptance by the Board of Directors, and the Board of Directors reserves the right to reject any Subscription for any reason or reduce the size of any Subscription. There is no minimum number of Shares which must be sold on or before the Termination Date. The maximum proceeds of this offering will be $500,000. While this offering is for $500,000, the Company may, in its sole discretion, allow for an oversubscription of this offering whereby additional $500,000 offerings may be raised through the sale of additional 2,000,000 shares of Common Stock. The Company shall be authorized to immediately deposit any funds relating to accepted Subscriptions in its general operating account and utilize such funds as stated in the Servergy Confidential Internal Memorandum. Funds relating to Subscriptions which are not accepted will be returned to person submitting the unaccepted Subscription.

**CONFIDENTIAL**

SEC-DC-EPROD-000701124

# SUBSCRIPTION AGREEMENT

## SERVERGY, INC.

Servergy, Inc.
2248 Meridian Blvd., Suite H
Minden, NV 89423

Ladies and Gentlemen:

1.    SUBSCRIPTION. The undersigned hereby makes application to acquire shares of common stock (the "Common Stock") of Servergy, Inc. (the "Company"). The undersigned hereby acknowledges that this Subscription may be rejected by the Board of Directors of the Company.

2.    REPRESENTATION BY THE UNDERSIGNED. The undersigned represents and warrants as follows:

(A)    The Servergy Confidential Information Memorandum, Dated November 1, 2009, relating to the offering of the Common Stock has been received and carefully read and the undersigned has relied only on the information contained therein, has not relied on any oral representations, has been given the opportunity to ask questions and receive answers from the Company, and has been given access to full and complete information regarding the Company;

(B)    The undersigned is purchasing the interest in the Company without being furnished any offering literature, prospectus, projections or other written information other than the Business Plan;

(C)    The undersigned recognizes that the Common Stock has not been registered under the Securities Act of 1933, as amended, nor under the securities laws of any state and the undersigned has no right to require such registration and no registration is contemplated; therefore, no public agency has passed upon the accuracy or adequacy of the information contained in the Business Plan, the amount of compensation to officers or affiliates of the Company, or the fairness of the terms of the offering;

(D)    The undersigned believes that an investment in the Company is suitable based upon the undersigned's investment objectives and financial needs, and the undersigned has no need for liquidity of this investment with respect to the Common Stock;

(E)    The undersigned has the requisite knowledge and experience in financial and business matters to assess the relative merits and risks, is capable of interpreting financial statements, or has relied upon the advice of counsel, accountants and/or purchaser representative(s) with regard to tax aspects, risks and other considerations

**CONFIDENTIAL**

**HB-SVG-00688892**

involved in the investment, and fully understands that he must look to and consult with his own advisors with respect to the tax consequences, risks and other considerations of investing in the Common Stock;

(F)     The undersigned is acquiring the Common Stock for long-term investment and not with a view toward resale, fractionalization or division or distribution thereof;

(G)     The undersigned recognizes that the Company has been solely involved in research and development and has no financial or operating history and that the Common Stock, as an investment, involves substantial risks;

(H)     The undersigned must bear the economic risk of loss of the investment in the Common Stock for an indefinite period of time because the Common Stock has not been registered under the Securities Act of 1933, as amended, or under applicable state securities laws;

(I)     The undersigned realizes that the Common Stock cannot readily be sold as there is no public market for the Common Stock and it is extremely unlikely that any market for the Common Stock will develop; and, therefore, the Common Stock must not be purchased unless the undersigned has liquid assets sufficient to assure that such purchase will cause no undue financial difficulties and the undersigned can provide for current needs and possible personal contingencies;

(J)     The undersigned understands that the ability to transfer the Common Stock will be restricted against transfers unless the transfer is not in violation of the Securities Act of 1933, as amended (the "Securities Act"), the Securities Exchange Act of 1934, as amended, or applicable state securities laws (including investment suitability standards), and that a legend will be placed on documents evidencing the restrictions against transfer;

(K)     All information which the undersigned has provided to the Company concerning the undersigned's financial position and knowledge of financial business matters is correct and complete as of the date hereof, and if there should be any material change in such information prior to acceptance of this Subscription Agreement by the Board of Directors, the undersigned will immediately provide the Board of Directors with such information;

(L)     The undersigned understands that the books and records of the Company will be available upon reasonable notice for inspection during reasonable business hours at the Company's place of business;

(M)     The undersigned has been provided access to all information requested in addition to the Business Plan in evaluating his purchase of Common Stock;

(N)     The undersigned is a natural person, is a bona fide resident of the State of _Texas_, and the Common Stock being purchased by the undersigned in the

2

CONFIDENTIAL                                                        HB-SVG-00688893

undersigned's name solely for the undersigned's own beneficial interest and not as nominee for, or on behalf of, or for the beneficial interest of, or with the intention to transfer to, any other person, trust or organization.

(O)     The Company is making the offer and sale of Common Stock to the purchasers in reliance on the representations by the undersigned and all other investors that each and every investor is an "accredited investor", as set forth in the accompanying Offeree Questionnaire, and the undersigned so acknowledges and reaffirms;

(P)     The undersigned is willing and able to bear the economic risk and loss of an investment in the Company in an amount equal to the total subscription amount. In making this statement, consideration has been given to whether the undersigned could afford a complete loss; and

(Q)     The undersigned will immediately notify the Company if there is any material change in any information contained in this Subscription Agreement.

3.     INDEMNIFICATION. The undersigned acknowledges that he understands the meaning and legal consequences of the representations, warranties, and covenants in this Subscription Agreement and the Offeree Questionnaire, and that the Company has relied upon such representations, warranties, and covenants, and he hereby agrees to indemnify, defend and hold harmless the Company and its representatives, directors, officers, shareholders, controlling persons, agents, and employees from and against any and all loss, damage or liability, cost or expense due to or arising out of a breach of any such representation, warranty, or covenant. All representations, warranties, and covenants in this Subscription Agreement and the Offeree Questionnaire, and the indemnification contained in this Section 3 shall survive the acceptance of this Subscription Agreement and the issuance of the Common Stock to the undersigned.

4.     LIMITATIONS ON TRANSFER OF CONSIDERATION. The undersigned acknowledges that he is aware that there are substantial restrictions on the transferability of the Common Stock. The undersigned agrees that the Common Stock shall not be sold unless (a) such sale is pursuant to an effective registration statement under the Securities Act and all relevant state securities laws or (b) the Company shall have been advised by its counsel that such registration is not required and that such sale is exempt from registration under the Securities Act and any other applicable state securities laws or regulations. The undersigned further acknowledges that the Company is under no obligation to aid him in obtaining any exemption from the registration requirements. The undersigned also acknowledges that he shall be responsible for compliance with all conditions on transfer imposed by any federal or state securities administrator and for any expenses incurred by the Company for legal or accounting services in connection with reviewing such proposed transfer and issuing opinions in connection therewith, and the undersigned agrees that he will give appropriate notice of these restrictions to each person to whom he transfers such Common Stock.

5.     COMPLIANCE WITH SECURITIES LAWS. The undersigned understands and agrees that the following restrictions and limitations are applicable to his purchase and resales, pledges, hypothecations, or other transfers of the Common Stock pursuant to the Securities Act:

3

CONFIDENTIAL                                                   HB-SVG-00688894

(a)   The undersigned agrees that the Common Stock shall not be sold, pledged, assigned, hypothecated, or otherwise transferred unless registered under the Securities Act and all applicable state securities laws or exempted therefrom.

(b)   A legend in substantially the following form has been or will be placed on certificates representing shares of the Common Stock:

> THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR THE SECURITIES LAWS OF ANY STATE.   THE SHARES HAVE BEEN ACQUIRED FOR INVESTMENT AND MAY NOT BE SOLD, TRANSFERRED OR ASSIGNED, AT ANY TIME, IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT FOR THESE SHARES UNDER THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR AN OPINION OF THE COMPANY'S COUNSEL THAT SUCH REGISTRATION IS NOT REQUIRED.

6.   AMOUNT OF INVESTMENT.  The undersigned hereby subscribes for the following amount of Common Stock:

Amount of investment $ ___78,000___ .

Total number of Shares subscribed ___312,000___ .

EXECUTED this the _13_ day of ___April___, 2010.

4

CONFIDENTIAL

HB-SVG-00688895

THE UNDERSIGNED REPRESENTS IT HAS READ THE BUSINESS PLAN AND THIS SUBSCRIPTION AGREEMENT AND FULLY UNDERSTANDS THE TERMS CONTAINED THEREIN AND HEREIN.

Roy Westbrook
Subscriber Printed Name

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
Social Security or
Taxpayer ID#

107 Dickard Trail
Address (Street)

USA
Country

_____
Signature

903-663-2133
Telephone Number

Longview, TX 75605
City        State        Zip

_____
Second Subscriber Printed Name

_____
Social Security or
Taxpayer ID#

_____
Address (Street)

_____
Country

_____
Signature

_____
Telephone Number

_____
City        State        Zip

ACCEPTED BY THE BOARD OF DIRECTORS this the _____ day of _____, 2010.

SERVERGY, INC.

By:_____

Title:_____

[A copy of this Accepted Subscription Agreement Execution Page will be returned to the Subscriber.]

5

CONFIDENTIAL

HB-SVG-00688896

TYPE OF OWNERSHIP (CHECK ONE)

_____ INDIVIDUAL OWNERSHIP (one signature required)

_____ COMMUNITY PROPERTY (one signature if Interest is in one name, i.e. managing spouse; two signatures required if Interest is held in both names)

_____ JOINT TENANTS WITH RIGHT OF SURVIVORSHIP (Both parties must sign)

_____ TENANTS IN COMMON (both parties must sign)

_____ TRUST (Please include name of trust, name of trustee, date trust was formed and copy of the Trust Agreement or other authorization)

_____ CORPORATION (Please include certified corporate resolution authorizing signature)

__✓__ PARTNERSHIP (Please indicate type and include a copy of the Statement of Partnership or Partnership Agreement authorizing signature)


_Dominion Joint Venture Group_

Please print here the exact name (registration) Subscriber desires on records of the Company.

6

CONFIDENTIAL

HB-SVG-00688897

## ALL INFORMATION WILL BE TREATED CONFIDENTIALLY

## SERVERGY, INC.

### OFFEREE QUESTIONNAIRE

Servergy, Inc.
2248 Meridian Blvd., Suite H
Minden, NV 89423

Ladies and Gentlemen:

The information contained herein is being furnished to you in order for you to determine whether the undersigned's Subscription Agreement to purchase shares of common stock (the "Common Stock") of Servergy, Inc. (the "Company") may be accepted by you pursuant to Section 4(2) of the Securities Act of 1933, as amended (the "Act"), and Regulation D promulgated thereunder. I understand that (a) the Company will rely upon the information contained herein for purposes of determining the availability of said exemptions and (b) the Common Stock will not be registered under the Act in reliance upon the exemption from registration afforded by Section 4(2) of the Act and Regulation D thereunder.

All information furnished is for the sole use of you on behalf of the Company and will be held in confidence by you, except that this Questionnaire may be furnished to such parties as you deem desirable to establish compliance with federal or state securities laws.

In accordance with the foregoing, the following representations and information are hereby made:

1. The undersigned has knowledge and experience in financial and business matters so as to be capable of evaluating the relative merits and risks of an investment in the Company; the undersigned is not utilizing the services of a representative ("Purchaser Representative") in connection with evaluating such merits and risks. The undersigned offers as evidence of knowledge and experience in these matters the information requested below on this Offeree Questionnaire.

2. The undersigned is willing and able to bear the economic risk of an investment in the Company in an amount equal to the total subscription amount. In making this statement, consideration has been given to whether the undersigned could afford a complete loss. The undersigned offers, as evidence of ability to bear the economic risk, the information below on this Offeree Questionnaire.

7

**CONFIDENTIAL**

**HB-SVG-00688898**

3.  Except as indicated below, any purchase of the Common Stock will be solely for the account of the undersigned, and not for the account of any other person or with a view to any resale, fractionalization, division, or distribution thereof.

    (State "No Exceptions" or set forth exceptions and give details. Attach additional pages if necessary.)

    _I am doing this on behalf of Dominion Joint Venture Group_

4.  The undersigned represents to you that (a) the information contained herein is complete and accurate and may be relied upon by you and (b) the undersigned will notify you immediately of any material change in any of such information occurring prior to acceptance of the Subscription Agreement for the purchase of Common Stock by the undersigned.

8

CONFIDENTIAL

HB-SVG-00688899

<u>INFORMATION REQUIRED OF EACH PROSPECTIVE PURCHASER</u>:

**A.    GENERAL INFORMATION**

1.    Name: _Roy Westbrook_

2.    Address, Telephone Number and Facsimile Number: _____

_107 Dickard Trail, Longview, TX 75605_

_903-663-2133_

3.    Address for notice purposes: _Same As Above_

_____

4.    If applicable, employer or business association and position: _____

_Sum Certain Investment Group_

5.    If applicable, U.S. Taxpayer Identification Number or Social Security Number:

_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_

6.    Email address for communication purposes:

_Roy westbrook @ sum certain. com_

**B.    ACCREDITED INVESTOR STATUS**

PLEASE CHECK APPROPRIATE BOX. THIS INFORMATION IS SOLELY FOR BOARD OF DIRECTOR'S RECORDS AND CONSTITUTES A MATERIAL PART OF THESE EXECUTION DOCUMENTS. FAILURE TO COMPLETE WILL DISQUALIFY A PROSPECTIVE PURCHASER FROM BECOMING A STOCKHOLDER IN THE COMPANY.

_____ 1.    A natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000.

__✓__ 2.    A natural person who had individual income in excess of $200,000 in each of the two most recent years and who reasonably expects individual income in excess of $200,000 in the current year or joint income with that person's spouse in excess of $300,000 in each of these years and expects to have at least that much in the current year.

_____ 3.    A director or executive officer of the issuer of the securities being offered or sold, or any director, executive officer, general partner of a general partner or manager of a manager of that issuer.

9

**CONFIDENTIAL**                                    **HB-SVG-00688900**

4.  A bank as defined in Section 3(a)(2) of the Securities Act, or a savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act, whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended; an insurance company defined in Section 2 (13) of the Securities Act; an investment company registered under the Investment Company Act of 1940, as amended; or a business development company as defined in Section 2(a)(48) of the Securities Act; a Small Business Investment Company licensed by the United States Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958, as amended; an employee benefit plan within the meanings of Title I of the Employee Retirement Income Security Act of 1974, as amended, if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such act, which is either a bank, insurance company or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000, or if a self-directed Plan, with investment decisions made solely by persons who are accredited investors.

5.  A private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940, as amended.

6.  An organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or other business trust, or partnership with total assets in excess of $5,000,000 and not formed for the specific purpose of acquiring the Common Stock.

7.  A trust with total assets in excess of $5,000,000 not formed for the specific purpose of acquiring the Common Stock, whose purchase is directed by a person with such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of an investment in the Company.

8.  An entity in which all of the equity owners of which are "accredited investors".

9.  None of the above.

## C. EDUCATION BACKGROUND

School(s) and Degrees:_____

_____
_____
_____
_____

10

**CONFIDENTIAL**

**HB-SVG-00688901**

SEC-DC-EPROD-000701134

**D.   BUSINESS AND EMPLOYMENT INFORMATION**

Name of Employer or Business: _Sum Certain Investment Group_
Nature of Business: _Investmen + Financial Business_
Position and Duties: _Owner_

Prior occupations during past five years: _Same As Above_

1.   I have personally invested in excess of $ _300,000_ over the past five years, including investments during such periods in excess of $ _100,000_ , in investments not registered for sale to the public under applicable federal and state securities laws.

2.   I consider myself to be an experienced and sophisticated investor and I have such knowledge and experience in financial and business matters that I am capable of evaluating the merits and risks of an investment in the Common Stock offered by the Company:

      [ ✓ ] Yes                          [ ] No

3.   I understand the full nature and risk of investment in the Common Stock offered by the Company, and I feel I can afford the complete loss of the investment:

      [ ✓ ] Yes                          [ ] No

4.   Set forth below are the types of private investments I have made in the past five years, with particular attention to investments in nonmarketable investment participations:

_Offshore Funds, Gold mines, Start up companies, Conversy Stocks, Options, Distressed Paper, Merit Mortgage Fast_

_Roy Westbrook_
Signature

_Kay Westbrook_
Printed Name

_4/18/~~2102~~ 2010_
Date

11

CONFIDENTIAL                                                                    HB-SVG-00688902

# EXHIBIT Q

## MINUTES OF SPECIAL MEETING OF BOARD OF DIRECTORS

### OF

**SERVERGY, INC.**
**Corporate Offices, McKinney, Texas**
**Wednesday, September 28, 2011**
**3:00 PM CST**

The special meeting of the Board of Directors of the above-captioned Corporation was held on the date and at the time and place set forth.

Present in person or telephonically were the following directors:

**William E. Mapp, III**

**Michael B. Holder**

**Caleb White**

**Also present was Garrett Sutton, guest**

**Call to Order**

The Chairman, Mr. Mapp, called the meeting to order at 3:00 p.m. and it was noted that a quorum was present.  It was announced that the meeting was held pursuant to a written Waiver of Notice and Consent to the holding thereof.   The waiver and consent was then presented and upon motion duly made, seconded and unanimously carried, was made a part of the records of the meeting and ordered inserted in the minute book immediately preceding the records of the minutes of this meeting.

**Approval of Minutes**

The first item of business was adoption of the Minutes of the previous board meeting held on ~~May 26, 2001~~.  Mr. Holder moved that the minutes be adopted as written and Mr. Mapp

s/B  6/3/11

          HB-SVG-00688432

seconded the motion and the minutes were adopted.

**Board Election**

The next order of business was to discuss appointing a third member to the Board.  Caleb White was discussed as a candidate for the Board of Directors.   His qualifications were favorably reviewed.   Mr. Holder moved that Mr. White be approved as a Board Director and Mr. Mapp seconded the motion. Mr. Mapp welcomed Mr. White as an outside director of the Company.

**Chairman's Remarks**

The next order of business was the Chairman's remarks.   Mr. Mapp discussed his recent attendance at the Silicon Valley Green Tech Conference.  At the conference, he found that there was interest in the Company and it further confirmed the importance of getting the Servergy product launched as soon as possible.  He reported that Servergy had conducted an exhaustive RFP for its contract manufacturer leading to the selection of Interphase, thus constituting a huge corporate milestone.  Mr. Mapp also noted that the Company was relatively low on funds and needs to continue to be judicious with funds.   The Company is focusing on fundraising efforts from both accredited individual and institutional investors.  Mr. Mapp is optimistic even though the Company still has challenges ahead.

**Financial Report**

Mr. Holder then provided a financial report.  The financial update included current cash balances; a short term financial forecast; review of monthly and year-to-date financial statements including income statement, balance sheet and cash flow statements; a review of the Company's financial forecast model; as well as a review of and progress towards audit findings from the most recent

HB-SVG-00688433

annual audit.

Servergy has roughly $450,000 in the bank.   The current cash burn rate was $200,000 per month.  Mr. Holder explained that expenditures had been lowered to a minimum and that there were contingency plans for reduced compensation and other expenses if balances drop below $250,000.  Mr. Holder discussed the detailed budgeting and financial forecasting model that had been developed.    Mr. Mapp praised Mr. Holder's efforts to monitor cash balances and contingency plan for potential cash shortfalls.

Mr. Mapp then discussed final results for the Company's B round of financing as well as plans and progress towards the Company's C round of financing.  Specifically, the B round resulted in 3,582,130 shares issued for investment and 478,578 shares issued for services.  A motion was made by Mr. White to ratify the results of the B round of financing and the motion  was seconded by Mr. Holder and unanimously approved by the Board.  Mr. Mapp discussed plans for the C round of financing which included plans for raising $3,000,000 targeted at $2.00 per share to be formally be initiated on October 1, 2011.  A motion to approve the C round of financing was made by Mr. Holder and was seconded by Mr. White and unanimously approved by the Board.

**Department Updates**

At this point, departmental executives joined the meeting.  Jack Smith, VP Product Development and Vihar Rai, VP of Engineering presented an update on the research and development activities of the Company as well as status and progress report with the Company's Server product and technology platform since the last Director's meeting.

The next board item was a presentation by Wade Cramer, VP Manufacturing Operations on progress in the Manufacturing area with particular focus on the comprehensive RFP process

                                                      HB-SVG-00688434

that had been conducted and which resulted in the selection of Interphase as our contract manufacturer and resource for certain product development activities.   At this point, Mr. Smith, Mr. Rai and Mr. Cramer left the meeting.

**Intellectual Property**

The board then followed with a discussion on intellectual property activities conducted with the assistance of Greenberg Traurig.  Mr. Mapp was pleased to announce that the Company had filed its first provisional patent which was focused on the proprietary methods the Company had developed relative to lower power computing technology.   Mr. Mapp also discussed the Company's IP strategy and future patent plans including the Company's plans to seek a European trademark for the Cleantech Server.

**Other Legal Considerations**

Mr. Mapp also provided the board with a thorough update on the Jon Lawrence matter including a discussion of all of the material issues and considerations that had developed with Mr. Lawrence as discussed in the Greenberg Traurig correspondence that had been previously circulated to the Board.  Greenberg Traurig had prepared a complaint against Mr. Lawrence.  It has been filed locally but not yet served on him.   Greenberg Traurig has required a $50,000 retainer to proceed further with the litigation.  The consensus of the board was that Mr. Mapp should continue to protect the Company's interests while dealing with Mr. Lawrence, but not pursue formal legal action that would trigger payment of the $50,000 retainer until the company was better funded and/or the potential litigation was self-funded.

**Administrative Matters**

Mr. Holder then discussed various administrative matters including an update on service providers.   The board then discussed several human resources and compensation related matters.   Mr. Mapp discussed the Company's performance review and planning strategies and plans. A Business Code of Ethics had been drafted and was close to being finalized.

Finally, there was a thorough conversation about the Company's compensation structure both in terms of salary, bonus as well as the Servergy 2011 Stock Option Plan which had been drafted by the law firm of Locke, Lord & Bissell and implemented.   A previously circulated summary compensation chart that provided salary, target bonus, target option awards and other benefits was discussed by the board.  Additionally, employment agreements for Mr. Mapp and Mr. Holder that had been executed on January 1, 2011 and since modified were reviewed and discussed. The board also reviewed the Servergy 2011 Stock Option Plan documents including the Restoration Unit documents and the major assumptions with the plan. After thoroughly reviewing all compensation documents a motion was made by Mr. White, seconded by Mr. Holder and so unanimously approved by the board that the 2011 Stock Option Plan and other related compensation structure be ratified.  Further, Mr. White made a motion and Mr. Holder seconded that Mr. Mapp's employment agreement including the revisions be ratified (Mr. Mapp recused himself from the vote to avoid the appearance of a conflict).  Mr. White made a motion and  Mr. Mapp seconded the motion that Mr. Holder's employment agreement including the revisions be ratified (Mr. Holder recused himself from the vote to avoid the appearance of a conflict).    Mr. Mapp then discussed the Beta Customer Program strategy, status and plans.

**Other Business Matters**

Mr. Mapp asked if there was any other business matters the board wanted to discuss.  There

HB-SVG-00688436

was no further business to discuss

There being no other business, the meeting was adjourned at 5:47PM.

Secretary,

*Michael Holder*

Michael Holder

CONFIDENTIAL

HB-SVG-00688437

# EXHIBIT R

# SUBSCRIPTION BOOKLET

### *Shares of Common Stock*
### *of*
### *SERVERGY, INC.*

### $1.00 per Share

This Subscription Booklet relates to subscriptions for common stock ("Common Stock") of Servergy, Inc., a Nevada based clean technology company (the "Company"), which engages in the development of advanced low-power and energy-efficient computers and software.

The Offering relates to the sale of 1,000,000 shares of Common Stock (the "Shares") and shall expire on July 22, 2011, (the "Termination Date") unless the Company, in its sole discretion, shall extend the termination date. Subscriptions are payable upon completion and execution of this Subscription Booklet. A Subscriber must tender his Subscription payment together with his completed and executed Subscription Booklet. All Subscriptions are subject to acceptance by the Board of Directors, and the Board of Directors reserves the right to reject any Subscription for any reason or reduce the size of any Subscription. There is no minimum number of Shares which must be sold on or before the Termination Date. The maximum proceeds of this offering will be $1,000,000. While this offering is for $1,000,000, the Company may, in its sole discretion, allow for an oversubscription of this offering whereby additional $1,000,000 offerings may be raised through the sale of additional 1,000,000 shares of Common Stock. The Company shall be authorized to immediately deposit any funds relating to accepted Subscriptions in its general operating account and utilize such funds as stated in the Servergy Confidential Internal Memorandum. Funds relating to Subscriptions which are not accepted will be returned to person submitting the unaccepted Subscription.

**HB-SVG-00687031**

SEC-DC-EPROD-000699257

## INSTRUCTIONS TO INVESTORS

Persons wishing to subscribe for Common Stock of Servergy, Inc. should complete and execute this Subscription Booklet, including the Subscription Agreement and the Offeree Questionnaire, pursuant to the instructions provided below:

1.      On page 3, complete Item N of the Subscription Agreement.

2.      On page 4, complete Item 6 of the Subscription Agreement, being certain to indicate the total dollar amount and number of shares you wish to purchase. Please fill in the date.

3.      Please complete all information on page 5 and sign the Subscription Agreement on Page 5.

4.      Indicate on page 6 the type of person or entity which will be making an investment in the Offering and the name of said person or entity.

5.      Complete, execute and date the Offeree Questionnaire on pages 7 through 11.

6.      Please make your check payable to: Servergy, Inc.

**CONFIDENTIAL**                                                      **HB-SVG-00687032**

## SUBSCRIPTION AGREEMENT

## SERVERGY, INC.

Servergy, Inc.
2248 Meridian Blvd., Suite H
Minden, NV 89423

Ladies and Gentlemen:

1.    SUBSCRIPTION. The undersigned hereby makes application to acquire shares of common stock (the "Common Stock") of Servergy, Inc. (the "Company"). The undersigned hereby acknowledges that this Subscription may be rejected by the Board of Directors of the Company.

2.    REPRESENTATION BY THE UNDERSIGNED. The undersigned represents and warrants as follows:

(A)    The Servergy Confidential Information Memorandum, Dated December 1st, 2010, relating to the offering of the Common Stock has been received and carefully read and the undersigned has relied only on the information contained therein, has not relied on any oral representations, has been given the opportunity to ask questions and receive answers from the Company, and has been given access to full and complete information regarding the Company;

(B)    The undersigned is purchasing the interest in the Company without being furnished any offering literature, prospectus, projections or other written information other than the Business Plan;

(C)    The undersigned recognizes that the Common Stock has not been registered under the Securities Act of 1933, as amended, nor under the securities laws of any state and the undersigned has no right to require such registration and no registration is contemplated; therefore, no public agency has passed upon the accuracy or adequacy of the information contained in the Business Plan, the amount of compensation to officers or affiliates of the Company, or the fairness of the terms of the offering;

(D)    The undersigned believes that an investment in the Company is suitable based upon the undersigned's investment objectives and financial needs, and the undersigned has no need for liquidity of this investment with respect to the Common Stock;

(E)    The undersigned has the requisite knowledge and experience in financial and business matters to assess the relative merits and risks, is capable of interpreting financial statements, or has relied upon the advice of counsel, accountants and/or purchaser representative(s) with regard to tax aspects, risks and other considerations

**CONFIDENTIAL**

SEC-DC-EPROD-000699259

involved in the investment, and fully understands that he must look to and consult with his own advisors with respect to the tax consequences, risks and other considerations of investing in the Common Stock;

(F) The undersigned is acquiring the Common Stock for long-term investment and not with a view toward resale, fractionalization or division or distribution thereof;

(G) The undersigned recognizes that the Company has been solely involved in research and development and has no financial or operating history and that the Common Stock, as an investment, involves substantial risks;

(H) The undersigned must bear the economic risk of loss of the investment in the Common Stock for an indefinite period of time because the Common Stock has not been registered under the Securities Act of 1933, as amended, or under applicable state securities laws;

(I) The undersigned realizes that the Common Stock cannot readily be sold as there is no public market for the Common Stock and it is extremely unlikely that any market for the Common Stock will develop; and, therefore, the Common Stock must not be purchased unless the undersigned has liquid assets sufficient to assure that such purchase will cause no undue financial difficulties and the undersigned can provide for current needs and possible personal contingencies;

(J) The undersigned understands that the ability to transfer the Common Stock will be restricted against transfers unless the transfer is not in violation of the Securities Act of 1933, as amended (the "Securities Act"), the Securities Exchange Act of 1934, as amended, or applicable state securities laws (including investment suitability standards), and that a legend will be placed on documents evidencing the restrictions against transfer;

(K) All information which the undersigned has provided to the Company concerning the undersigned's financial position and knowledge of financial business matters is correct and complete as of the date hereof, and if there should be any material change in such information prior to acceptance of this Subscription Agreement by the Board of Directors, the undersigned will immediately provide the Board of Directors with such information;

(L) The undersigned understands that the books and records of the Company will be available upon reasonable notice for inspection during reasonable business hours at the Company's place of business;

(M) The undersigned has been provided access to all information requested in addition to the Business Plan in evaluating his purchase of Common Stock;

(N) The undersigned is a natural person, is a bona fide resident of the State of _____, and the Common Stock being purchased by the undersigned in the

2

SEC-DC-EPROD-000699260

undersigned's name solely for the undersigned's own beneficial interest and not as nominee for, or on behalf of, or for the beneficial interest of, or with the intention to transfer to, any other person, trust or organization.

(O) The Company is making the offer and sale of Common Stock to the purchasers in reliance on the representations by the undersigned and all other investors that each and every investor is an "accredited investor", as set forth in the accompanying Offeree Questionnaire, and the undersigned so acknowledges and reaffirms;

(P) The undersigned is willing and able to bear the economic risk and loss of an investment in the Company in an amount equal to the total subscription amount. In making this statement, consideration has been given to whether the undersigned could afford a complete loss; and

(Q) The undersigned will immediately notify the Company if there is any material change in any information contained in this Subscription Agreement.

3. INDEMNIFICATION. The undersigned acknowledges that he understands the meaning and legal consequences of the representations, warranties, and covenants in this Subscription Agreement and the Offeree Questionnaire, and that the Company has relied upon such representations, warranties, and covenants, and he hereby agrees to indemnify, defend and hold harmless the Company and its representatives, directors, officers, shareholders, controlling persons, agents, and employees from and against any and all loss, damage or liability, cost or expense due to or arising out of a breach of any such representation, warranty, or covenant. All representations, warranties, and covenants in this Subscription Agreement and the Offeree Questionnaire, and the indemnification contained in this Section 3 shall survive the acceptance of this Subscription Agreement and the issuance of the Common Stock to the undersigned.

4. LIMITATIONS ON TRANSFER OF CONSIDERATION. The undersigned acknowledges that he is aware that there are substantial restrictions on the transferability of the Common Stock. The undersigned agrees that the Common Stock shall not be sold unless (a) such sale is pursuant to an effective registration statement under the Securities Act and all relevant state securities laws or (b) the Company shall have been advised by its counsel that such registration is not required and that such sale is exempt from registration under the Securities Act and any other applicable state securities laws or regulations. The undersigned further acknowledges that the Company is under no obligation to aid him in obtaining any exemption from the registration requirements. The undersigned also acknowledges that he shall be responsible for compliance with all conditions on transfer imposed by any federal or state securities administrator and for any expenses incurred by the Company for legal or accounting services in connection with reviewing such proposed transfer and issuing opinions in connection therewith, and the undersigned agrees that he will give appropriate notice of these restrictions to each person to whom he transfers such Common Stock.

5. COMPLIANCE WITH SECURITIES LAWS. The undersigned understands and agrees that the following restrictions and limitations are applicable to his purchase and resales, pledges, hypothecations, or other transfers of the Common Stock pursuant to the Securities Act:

3

SEC-DC-EPROD-000699261

(a)     The undersigned agrees that the Common Stock shall not be sold, pledged, assigned, hypothecated, or otherwise transferred unless registered under the Securities Act and all applicable state securities laws or exempted therefrom.

(b)     A legend in substantially the following form has been or will be placed on certificates representing shares of the Common Stock:

> **THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR THE SECURITIES LAWS OF ANY STATE.    THE SHARES HAVE BEEN ACQUIRED FOR INVESTMENT AND MAY NOT BE SOLD, TRANSFERRED OR ASSIGNED, AT ANY TIME, IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT FOR THESE SHARES UNDER THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR AN OPINION OF THE COMPANY'S COUNSEL THAT SUCH REGISTRATION IS NOT REQUIRED.**

6.     AMOUNT OF INVESTMENT.  The undersigned hereby subscribes for the following amount of Common Stock:

Amount of investment $_____.

Total number of Shares subscribed _____.

EXECUTED this the _____ day of _____, 2011.

4

**CONFIDENTIAL**

**HB-SVG-00687036**

**THE UNDERSIGNED REPRESENTS IT HAS READ THE BUSINESS PLAN AND THIS SUBSCRIPTION AGREEMENT AND FULLY UNDERSTANDS THE TERMS CONTAINED THEREIN AND HEREIN.**

| | |
|---|---|
| _____ | _____ |
| Subscriber Printed Name | Signature |
| _____ | _____ |
| Social Security or<br>Taxpayer ID# | Telephone Number |
| _____ | _____ |
| Address (Street) | City      State      Zip |
| _____ | |
| Country | |

| | |
|---|---|
| _____ | _____ |
| Second Subscriber Printed Name | Signature |
| _____ | _____ |
| Social Security or<br>Taxpayer ID# | Telephone Number |
| _____ | _____ |
| Address (Street) | City      State      Zip |
| _____ | |
| Country | |

ACCEPTED BY THE BOARD OF DIRECTORS this the _____ day of _____, 2011.

SERVERGY, INC.

By:_____

Title:_____

[A copy of this Accepted Subscription Agreement Execution Page will be returned to the Subscriber.]

5

**CONFIDENTIAL**

TYPE OF OWNERSHIP (CHECK ONE)

_____ INDIVIDUAL OWNERSHIP (one signature required)

_____ COMMUNITY PROPERTY (one signature if Interest is in one name, i.e. managing spouse; two signatures required if Interest is held in both names)

_____ JOINT TENANTS WITH RIGHT OF SURVIVORSHIP (Both parties must sign)

_____ TENANTS IN COMMON (both parties must sign)

_____ TRUST (Please include name of trust, name of trustee, date trust was formed and copy of the Trust Agreement or other authorization)

_____ CORPORATION (Please include certified corporate resolution authorizing signature)

_____ PARTNERSHIP (Please indicate type and include a copy of the Statement of Partnership or Partnership Agreement authorizing signature)

_____

Please print here the exact name (registration) Subscriber desires on records of the Company.

6

CONFIDENTIAL                    HB-SVG-00687038

## ALL INFORMATION WILL BE TREATED CONFIDENTIALLY

## SERVERGY, INC.

## *OFFEREE QUESTIONNAIRE*

Servergy, Inc.
2248 Meridian Blvd., Suite H
Minden, NV 89423

Ladies and Gentlemen:

The information contained herein is being furnished to you in order for you to determine whether the undersigned's Subscription Agreement to purchase shares of common stock (the "Common Stock") of Servergy, Inc. (the "Company") may be accepted by you pursuant to Section 4(2) of the Securities Act of 1933, as amended (the "Act"), and Regulation D promulgated thereunder. I understand that (a) the Company will rely upon the information contained herein for purposes of determining the availability of said exemptions and (b) the Common Stock will not be registered under the Act in reliance upon the exemption from registration afforded by Section 4(2) of the Act and Regulation D thereunder.

All information furnished is for the sole use of you on behalf of the Company and will be held in confidence by you, except that this Questionnaire may be furnished to such parties as you deem desirable to establish compliance with federal or state securities laws.

In accordance with the foregoing, the following representations and information are hereby made:

1.   The undersigned has knowledge and experience in financial and business matters so as to be capable of evaluating the relative merits and risks of an investment in the Company; the undersigned is not utilizing the services of a representative ("Purchaser Representative") in connection with evaluating such merits and risks. The undersigned offers as evidence of knowledge and experience in these matters the information requested below on this Offeree Questionnaire.

2.   The undersigned is willing and able to bear the economic risk of an investment in the Company in an amount equal to the total subscription amount. In making this statement, consideration has been given to whether the undersigned could afford a complete loss. The undersigned offers, as evidence of ability to bear the economic risk, the information below on this Offeree Questionnaire.

7

CONFIDENTIAL

3.      Except as indicated below, any purchase of the Common Stock will be solely for the account of the undersigned, and not for the account of any other person or with a view to any resale, fractionalization, division, or distribution thereof.

(State "No Exceptions" or set forth exceptions and give details.  Attach additional pages if necessary.)

_____

_____

4.      The undersigned represents to you that (a) the information contained herein is complete and accurate and may be relied upon by you and (b) the undersigned will notify you immediately of any material change in any of such information occurring prior to acceptance of the Subscription Agreement for the purchase of Common Stock by the undersigned.

8

**CONFIDENTIAL**

INFORMATION REQUIRED OF EACH PROSPECTIVE PURCHASER:

**A.    GENERAL INFORMATION**

1.    Name: _____

2.    Address, Telephone Number and Facsimile Number: _____

_____

_____

3.    Address for notice purposes: _____

_____

4.    If applicable, employer or business association and position: _____

_____

5.    If applicable, U.S. Taxpayer Identification Number or Social Security Number:

_____

6.    Email address for communication purposes:

_____

**B.    ACCREDITED INVESTOR STATUS**

PLEASE CHECK APPROPRIATE BOX.  THIS INFORMATION IS SOLELY FOR BOARD OF DIRECTOR'S RECORDS AND CONSTITUTES A MATERIAL PART OF THESE EXECUTION DOCUMENTS.      FAILURE TO COMPLETE WILL DISQUALIFY A PROSPECTIVE PURCHASER FROM BECOMING A STOCKHOLDER IN THE COMPANY.

____    1.    A natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000.

____    2.    A natural person who had individual income in excess of $200,000 in each of the two most recent years and who reasonably expects individual income in excess of $200,000 in the current year or joint income with that person's spouse in excess of $300,000 in each of these years and expects to have at least that much in the current year.

____    3.    A director or executive officer of the issuer of the securities being offered or sold, or any director, executive officer, general partner of a general partner or manager of a manager of that issuer.

9

**CONFIDENTIAL**                                                                                         **HB-SVG-00687041**

_____ 4. A bank as defined in Section 3(a)(2) of the Securities Act, or a savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act, whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended; an insurance company defined in Section 2 (13) of the Securities Act; an investment company registered under the Investment Company Act of 1940, as amended; or a business development company as defined in Section 2(a)(48) of the Securities Act; a Small Business Investment Company licensed by the United States Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958, as amended; an employee benefit plan within the meanings of Title I of the Employee Retirement Income Security Act of 1974, as amended, if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such act, which is either a bank, insurance company or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000, or if a self-directed Plan, with investment decisions made solely by persons who are accredited investors.

_____ 5. A private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940, as amended.

_____ 6. An organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or other business trust, or partnership with total assets in excess of $5,000,000 and not formed for the specific purpose of acquiring the Common Stock.

_____ 7. A trust with total assets in excess of $5,000,000 not formed for the specific purpose of acquiring the Common Stock, whose purchase is directed by a person with such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of an investment in the Company.

_____ 8. An entity in which all of the equity owners of which are "accredited investors".

_____ 9. None of the above.

## C. EDUCATION BACKGROUND

School(s) and Degrees:_____

_____
_____
_____
_____
_____

10

CONFIDENTIAL

**D.    BUSINESS AND EMPLOYMENT INFORMATION**

Name of Employer or Business:_____

Nature of Business:_____

Position and Duties:_____

_____

Prior occupations during past five years:_____

_____

_____

_____

_____

1.    I have personally invested in excess of $_____ over the past five years, including investments during such periods in excess of $_____, in investments not registered for sale to the public under applicable federal and state securities laws.

2.    I consider myself to be an experienced and sophisticated investor and I have such knowledge and experience in financial and business matters that I am capable of evaluating the merits and risks of an investment in the Common Stock offered by the Company:

[   ] Yes                        [   ] No

3.    I understand the full nature and risk of investment in the Common Stock offered by the Company, and I feel I can afford the complete loss of the investment:

[   ] Yes                        [   ] No

4.    Set forth below are the types of private investments I have made in the past five years, with particular attention to investments in nonmarketable investment participations:

_____

_____

_____


_____

Signature


_____

Printed Name


_____

Date


11

**CONFIDENTIAL**                                                          HB-SVG-00687043

# EXHIBIT S

# SUBSCRIPTION BOOKLET

## Shares of Common Stock
### of
### SERVERGY, INC.

#### $1.00 per Share

This Subscription Booklet relates to subscriptions for common stock ("Common Stock") of Servergy, Inc., a Nevada based clean technology company (the "Company"), which engages in the development of advanced low-power and energy-efficient computers and software.

The Offering relates to the sale of 1,000,000 shares of Common Stock (the "Shares") and shall expire on December 31th, 2010, (the "Termination Date") unless the Company, in its sole discretion, shall extend the termination date. Subscriptions are payable upon completion and execution of this Subscription Booklet. A Subscriber must tender his Subscription payment together with his completed and executed Subscription Booklet. All Subscriptions are subject to acceptance by the Board of Directors, and the Board of Directors reserves the right to reject any Subscription for any reason or reduce the size of any Subscription. There is no minimum number of Shares which must be sold on or before the Termination Date. The maximum proceeds of this offering will be $1,000,000. While this offering is for $1,000,000, the Company may, in its sole discretion, allow for an oversubscription of this offering whereby additional $1,000,000 offerings may be raised through the sale of additional 1,000,000 shares of Common Stock. The Company shall be authorized to immediately deposit any funds relating to accepted Subscriptions in its general operating account and utilize such funds as stated in the Servergy Confidential Internal Memorandum. Funds relating to Subscriptions which are not accepted will be returned to person submitting the unaccepted Subscription.

## INSTRUCTIONS TO INVESTORS

Persons wishing to subscribe for Common Stock of Servergy, Inc. should complete and execute this Subscription Booklet, including the Subscription Agreement and the Offeree Questionnaire, pursuant to the instructions provided below.

1.  On page 3, complete Item N of the Subscription Agreement.

2.  On page 4, complete Item 6 of the Subscription Agreement, being certain to indicate the total dollar amount and number of shares you wish to purchase. Please fill in the date.

3.  Please complete all information on page 5 and sign the Subscription Agreement on Page 5.

4.  Indicate on page 6 the type of person or entity which will be making an investment in the Offering and the name of said person or entity.

5.  Complete, execute and date the Offeree Questionnaire on pages 7 through 11.

6.  Please make your check payable to: Servergy, Inc.

## SUBSCRIPTION AGREEMENT

## SERVERGY, INC.

Servergy, Inc.
2248 Meridian Blvd., Suite H
Minden, NV 89423

Ladies and Gentlemen:

1.    SUBSCRIPTION.  The undersigned hereby makes application to acquire shares of common stock (the "Common Stock") of Servergy, Inc. (the "Company").  The undersigned hereby acknowledges that this Subscription may be rejected by the Board of Directors of the Company.

2.    REPRESENTATION BY THE UNDERSIGNED.  The undersigned represents and warrants as follows:

    (A)    The Servergy Confidential Information Memorandum, Dated September 1, 2010, relating to the offering of the Common Stock has been received and carefully read and the undersigned has relied only on the information contained therein, has not relied on any oral representations, has been given the opportunity to ask questions and receive answers from the Company, and has been given access to full and complete information regarding the Company;

    (B)    The undersigned is purchasing the interest in the Company without being furnished any offering literature, prospectus, projections or other written information other than the Business Plan;

    (C)    The undersigned recognizes that the Common Stock has not been registered under the Securities Act of 1933, as amended, nor under the securities laws of any state and the undersigned has no right to require such registration and no registration is contemplated; therefore, no public agency has passed upon the accuracy or adequacy of the information contained in the Business Plan, the amount of compensation to officers or affiliates of the Company, or the fairness of the terms of the offering;

    (D)    The undersigned believes that an investment in the Company is suitable based upon the undersigned's investment objectives and financial needs, and the undersigned has no need for liquidity of this investment with respect to the Common Stock;

    (E)    The undersigned has the requisite knowledge and experience in financial and business matters to assess the relative merits and risks, is capable of interpreting financial statements, or has relied upon the advice of counsel, accountants and/or purchaser representative(s) with regard to tax aspects, risks and other considerations

**CONFIDENTIAL**        **HB-SVG-00688866**

SEC-DC-EPROD-000701099

involved in the investment, and fully understands that he must look to and consult with his own advisors with respect to the tax consequences, risks and other considerations of investing in the Common Stock;

(F)  The undersigned is acquiring the Common Stock for long-term investment and not with a view toward resale, fractionalization or division or distribution thereof;

(G)  The undersigned recognizes that the Company has been solely involved in research and development and has no financial or operating history and that the Common Stock, as an investment, involves substantial risks;

(H)  The undersigned must bear the economic risk of loss of the investment in the Common Stock for an indefinite period of time because the Common Stock has not been registered under the Securities Act of 1933, as amended, or under applicable state securities laws;

(I)  The undersigned realizes that the Common Stock cannot readily be sold as there is no public market for the Common Stock and it is extremely unlikely that any market for the Common Stock will develop; and, therefore, the Common Stock must not be purchased unless the undersigned has liquid assets sufficient to assure that such purchase will cause no undue financial difficulties and the undersigned can provide for current needs and possible personal contingencies;

(J)  The undersigned understands that the ability to transfer the Common Stock will be restricted against transfers unless the transfer is not in violation of the Securities Act of 1933, as amended (the "Securities Act"), the Securities Exchange Act of 1934, as amended, or applicable state securities laws (including investment suitability standards), and that a legend will be placed on documents evidencing the restrictions against transfer;

(K)  All information which the undersigned has provided to the Company concerning the undersigned's financial position and knowledge of financial business matters is correct and complete as of the date hereof, and if there should be any material change in such information prior to acceptance of this Subscription Agreement by the Board of Directors, the undersigned will immediately provide the Board of Directors with such information;

(L)  The undersigned understands that the books and records of the Company will be available upon reasonable notice for inspection during reasonable business hours at the Company's place of business;

(M)  The undersigned has been provided access to all information requested in addition to the Business Plan in evaluating his purchase of Common Stock;

(N)  The undersigned is a natural person, is a bona fide resident of the State of ___TX___, and the Common Stock being purchased by the undersigned in the

2

HB-SVG-00688867

undersigned's name solely for the undersigned's own beneficial interest and not as nominee for, or on behalf of, or for the beneficial interest of, or with the intention to transfer to, any other person, trust or organization.

(O) The Company is making the offer and sale of Common Stock to the purchasers in reliance on the representations by the undersigned and all other investors that each and every investor is an "accredited investor", as set forth in the accompanying Offeree Questionnaire, and the undersigned so acknowledges and reaffirms;

(P) The undersigned is willing and able to bear the economic risk and loss of an investment in the Company in an amount equal to the total subscription amount. In making this statement, consideration has been given to whether the undersigned could afford a complete loss; and

(Q) The undersigned will immediately notify the Company if there is any material change in any information contained in this Subscription Agreement.

3.     INDEMNIFICATION. The undersigned acknowledges that he understands the meaning and legal consequences of the representations, warranties, and covenants in this Subscription Agreement and the Offeree Questionnaire, and that the Company has relied upon such representations, warranties, and covenants, and he hereby agrees to indemnify, defend and hold harmless the Company and its representatives, directors, officers, shareholders, controlling persons, agents, and employees from and against any and all loss, damage or liability, cost or expense due to or arising out of a breach of any such representation, warranty, or covenant. All representations, warranties, and covenants in this Subscription Agreement and the Offeree Questionnaire, and the indemnification contained in this Section 3 shall survive the acceptance of this Subscription Agreement and the issuance of the Common Stock to the undersigned.

4.     LIMITATIONS ON TRANSFER OF CONSIDERATION. The undersigned acknowledges that he is aware that there are substantial restrictions on the transferability of the Common Stock. The undersigned agrees that the Common Stock shall not be sold unless (a) such sale is pursuant to an effective registration statement under the Securities Act and all relevant state securities laws or (b) the Company shall have been advised by its counsel that such registration is not required and that such sale is exempt from registration under the Securities Act and any other applicable state securities laws or regulations. The undersigned further acknowledges that the Company is under no obligation to aid him in obtaining any exemption from the registration requirements. The undersigned also acknowledges that he shall be responsible for compliance with all conditions on transfer imposed by any federal or state securities administrator and for any expenses incurred by the Company for legal or accounting services in connection with reviewing such proposed transfer and issuing opinions in connection therewith, and the undersigned agrees that he will give appropriate notice of these restrictions to each person to whom he transfers such Common Stock.

5.     COMPLIANCE WITH SECURITIES LAWS. The undersigned understands and agrees that the following restrictions and limitations are applicable to his purchase and resales, pledges, hypothecations, or other transfers of the Common Stock pursuant to the Securities Act:

3

(a)    The undersigned agrees that the Common Stock shall not be sold, pledged, assigned, hypothecated, or otherwise transferred unless registered under the Securities Act and all applicable state securities laws or exempted therefrom.

(b)    A legend in substantially the following form has been or will be placed on certificates representing shares of the Common Stock:

> THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR THE SECURITIES LAWS OF ANY STATE.    THE SHARES HAVE BEEN ACQUIRED FOR INVESTMENT AND MAY NOT BE SOLD, TRANSFERRED OR ASSIGNED, AT ANY TIME, IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT FOR THESE SHARES UNDER THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR AN OPINION OF THE COMPANY'S COUNSEL THAT SUCH REGISTRATION IS NOT REQUIRED.

6.    AMOUNT OF INVESTMENT.  The undersigned hereby subscribes for the following amount of Common Stock:

Amount of investment $ 1,149,130

Total number of Shares subscribed 1, 149, 130

EXECUTED this the          day of                    , 2011.

4

**THE UNDERSIGNED REPRESENTS IT HAS READ THE BUSINESS PLAN AND THIS SUBSCRIPTION AGREEMENT AND FULLY UNDERSTANDS THE TERMS CONTAINED THEREIN AND HEREIN.**

Dominion Joint Venture Fund No 2         *Celebrite*
_____          _____
Subscriber Printed Name                  Signature

                                         903-316-3083
_____          _____
Social Security or                       Telephone Number
Taxpayer ID#

14005 C.K. 311, Edgewater Texas 75697
_____          _____
Address (Street)                         City    State    Zip

USA
_____
Country


_____          _____
Second Subscriber Printed Name           Signature


_____          _____
Social Security or                       Telephone Number
Taxpayer ID#


_____          _____
Address (Street)                         City    State    Zip


_____
Country


ACCEPTED BY THE BOARD OF DIRECTORS this the _____ day of _____, 2010.

                        SERVERGY, INC.

                        By: _____

                        Title: _____

[A copy of this Accepted Subscription Agreement Execution Page will be returned to the Subscriber.]

5

SEC-DC-EPROD-00070110

HB-SVG-00688871

CONFIDENTIAL

TYPE OF OWNERSHIP (CHECK ONE)

INDIVIDUAL OWNERSHIP (one signature required)

COMMUNITY PROPERTY (one signature if Interest is in one name, i.e. managing spouse; two signatures required if Interest is held in both names)

JOINT TENANTS WITH RIGHT OF SURVIVORSHIP (Both parties must sign)

TENANTS IN COMMON (both parties must sign)

TRUST (Please include name of trust, name of trustee, date trust was formed and copy of the Trust Agreement or other authorization)

CORPORATION (Please include certified corporate resolution authorizing signature)

X   PARTNERSHIP (Please indicate type and include a copy of the Statement of Partnership or Partnership Agreement authorizing signature)

Dominion Joint Venture Group  No. 2

Please print here the exact name (registration) Subscriber desires on records of the Company.

# ALL INFORMATION WILL BE TREATED CONFIDENTIALLY

## SERVERGY, INC.

### OFFEREE QUESTIONNAIRE

Servergy, Inc.
2248 Meridian Blvd., Suite H
Minden, NV 89423

Ladies and Gentlemen:

The information contained herein is being furnished to you in order for you to determine whether the undersigned's Subscription Agreement to purchase shares of common stock (the "Common Stock") of Servergy, Inc. (the "Company") may be accepted by you pursuant to Section 4(2) of the Securities Act of 1933, as amended (the "Act"), and Regulation D promulgated thereunder. I understand that (a) the Company will rely upon the information contained herein for purposes of determining the availability of said exemptions and (b) the Common Stock will not be registered under the Act in reliance upon the exemption from registration afforded by Section 4(2) of the Act and Regulation D thereunder.

All information furnished is for the sole use of you on behalf of the Company and will be held in confidence by you, except that this Questionnaire may be furnished to such parties as you deem desirable to establish compliance with federal or state securities laws.

In accordance with the foregoing, the following representations and information are hereby made:

1.      The undersigned has knowledge and experience in financial and business matters so as to be capable of evaluating the relative merits and risks of an investment in the Company; the undersigned is not utilizing the services of a representative ("Purchaser Representative") in connection with evaluating such merits and risks. The undersigned offers as evidence of knowledge and experience in these matters the information requested below on this Offeree Questionnaire.

2.      The undersigned is willing and able to bear the economic risk of an investment in the Company in an amount equal to the total subscription amount. In making this statement, consideration has been given to whether the undersigned could afford a complete loss. The undersigned offers, as evidence of ability to bear the economic risk, the information below on this Offeree Questionnaire.

7

CONFIDENTIAL                                                    HB-SVG-00688872

SEC-DC-EPROD-000701105

3.   Except as indicated below, any purchase of the Common Stock will be solely for the account of the undersigned, and not for the account of any other person or with a view to any resale, fractionalization, division, or distribution thereof.

(State "No Exceptions" or set forth exceptions and give details.  Attach additional pages if necessary.)

No Exceptions

4.   The undersigned represents to you that (a) the information contained herein is complete and accurate and may be relied upon by you and (b) the undersigned will notify you immediately of any material change in any of such information occurring prior to acceptance of the Subscription Agreement for the purchase of Common Stock by the undersigned.

8

HB-SVG-00688873

INFORMATION REQUIRED OF EACH PROSPECTIVE PURCHASER:

## A.   GENERAL INFORMATION

1.   Name:  _Dominion Joint Venture Group No. 2_

2.   Address, Telephone Number and Facsimile Number.

_14006 C.R. 311, Gladewater, TX 75647_
_903 316-3085_

3.   Address for notice purposes: _Same as above_

4.   If applicable, employer or business association and position: _N/A_

5.   If applicable, U.S. Taxpayer Identification Number or Social Security Number:
_N/A_

6.   Email address for communication purposes:
_sales@dominionbusinessfinancial.com_

## B.   ACCREDITED INVESTOR STATUS

PLEASE CHECK APPROPRIATE BOX.  THIS INFORMATION IS SOLELY FOR
BOARD OF DIRECTOR'S RECORDS AND CONSTITUTES A MATERIAL PART OF THESE
EXECUTION DOCUMENTS.   FAILURE TO COMPLETE WILL DISQUALIFY A
PROSPECTIVE PURCHASER FROM BECOMING A STOCKHOLDER IN THE COMPANY.

_____   1.   A natural person whose individual net worth, or joint net worth with that person's
spouse, at the time of his purchase exceeds $1,000,000.

_____   2.   A natural person who had individual income in excess of $200,000 in each of the two
most recent years and who reasonably expects individual income in excess of
$200,000 in the current year or joint income with that person's spouse in excess of
$300,000 in each of these years and expects to have at least that much in the current
year.

_____   3.   A director or executive officer of the issuer of the securities being offered or sold, or
any director, executive officer, general partner of a general partner or manager of a
manager of that issuer.

9

___ 4.   A bank as defined in Section 3(a)(2) of the Securities Act, or a savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act, whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended; an insurance company defined in Section 2 (13) of the Securities Act; an investment company registered under the Investment Company Act of 1940, as amended; or a business development company as defined in Section 2(a)(48) of the Securities Act; a Small Business Investment Company licensed by the United States Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958, as amended; an employee benefit plan within the meanings of Title 1 of the Employee Retirement Income Security Act of 1974, as amended, if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such act, which is either a bank, insurance company or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000, or if a self-directed Plan, with investment decisions made solely by persons who are accredited investors.

___ 5.   A private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940, as amended.

___ 6.   An organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or other business trust, or partnership with total assets in excess of $5,000,000 and not formed for the specific purpose of acquiring the Common Stock.

___ 7.   A trust with total assets in excess of $5,000,000 not formed for the specific purpose of acquiring the Common Stock, whose purchase is directed by a person with such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of an investment in the Company.

___ 8.   An entity in which all of the equity owners of which are "accredited investors".

___ 9    None of the above.

C.   **EDUCATION BACKGROUND**

School(s) and Degrees:   N/A

_____

_____

_____

_____

10

**CONFIDENTIAL**

**HB-SVG-00688875**

D. **BUSINESS AND EMPLOYMENT INFORMATION**

Name of Employer or Business: Dominion Joint Venture Group, No 2
Nature of Business: Investment Partnership
Position and Duties: N/A

Prior occupations during past five years: N/A

1. The subscriber has invested in excess of $ 1,000,000 over the past five years, including investments during such periods in excess of $ 100,000 , in investments not registered for sale to the public under applicable federal and state securities laws.

2. I consider myself to be an experienced and sophisticated investor and I have such knowledge and experience in financial and business matters that I am capable of evaluating the merits and risks of an investment in the Common Stock offered by the Company:

    [X] Yes                    [ ] No

3. I understand the full nature and risk of investment in the Common Stock offered by the Company, and I feel I can afford the complete loss of the investment:

    [X] Yes                    [ ] No

4. Set forth below are the types of private investments I have made in the past five years, with particular attention to investments in nonmarketable investment participations:

Caleb White
Signature

Caleb White   President
Printed Name    Dominion Joint Venture Group no 2

July 29, 2011
Date

Ray Dostdyk
Signature

Ray Dostdyk   Treasurer Dominion
Printed Name    Joint Venture Group no 2

July 29, 2011
Date

11

CONFIDENTIAL                    HB-SVG-00688876

# EXHIBIT T

## SUBSCRIPTION BOOKLET

### *Shares of Common Stock*
### *of*
### *SERVERGY, INC.*

**$2.00 per Share**

This Subscription Booklet relates to subscriptions ("Subscriptions") for common stock, $.001 par value per share ("Common Stock"), of Servergy, Inc., a Nevada-domiciled, technology company (the "Company") that engages in the development of advanced, low-power and energy-efficient computers and software.

The offering ("Offering") relates to the sale of 1,500,000 shares of Common Stock (the "Shares"), subject to the right of the Company, in its sole discretion, to offer and sell additional shares of Common Stock. The Offering shall expire on February 28th 2013, provided that the Company, in its sole discretion, may elect to extend the offering for such additional periods as it deems appropriate. Subscriptions are payable upon completion and execution of this Subscription Booklet, and a Subscriber must tender his Subscription payment together with his completed and executed Subscription Booklet. All Subscriptions are subject to acceptance by the Company, and the Company reserves the right to reject any Subscription for any reason or reduce the size of any Subscription. Funds relating to Subscriptions that are not accepted will be returned to person submitting the unaccepted Subscription. There is no minimum number of Shares that must be sold in connection with the Offering, and the Company shall be authorized to immediately deposit any funds relating to accepted Subscriptions in its general operating account and utilize such funds as stated in the Servergy Confidential Information Memorandum No. SI-CIM-C

**CONFIDENTIAL**

SEC-DC-EPROD-000559083

## INSTRUCTIONS TO INVESTORS

Persons wishing to subscribe for Common Stock of Servergy, Inc. should complete and execute this Subscription Booklet, including the Subscription Agreement and the Offeree Questionnaire, pursuant to the instructions provided below:

1. On page 3, complete Item N of the Subscription Agreement.

2. On page 4, complete Item 6 of the Subscription Agreement, being certain to indicate the total dollar amount and number of shares you wish to purchase. Please fill in the date.

3. Please complete all information on page 5 and sign the Subscription Agreement on Page 5.

4. Indicate on page 6 the type of person or entity which will be making an investment in the Offering and the name of said person or entity.

5. Complete, execute and date the Offeree Questionnaire on pages 7 through 11.

6. Please make your check payable to: Servergy, Inc.

**CONFIDENTIAL**                                                                                    **HB-SVG-00547199**

SEC-DC-EPROD-000559084

## SUBSCRIPTION AGREEMENT

## SERVERGY, INC.

Servergy, Inc.
1700 N. Redbud Blvd., Suite 410
McKinney, TX 75069

Ladies and Gentlemen:

1.      SUBSCRIPTION.  The undersigned hereby makes application to acquire shares of common stock, $.001 par value per share (the "Common Stock"), of Servergy, Inc., a Nevada corporation (the "Company").  The undersigned hereby acknowledges that this Subscription may be rejected by the Company, in its sole discretion.

2.      REPRESENTATION BY THE UNDERSIGNED.  The undersigned represents and warrants as follows:

(A)     The Servergy Confidential Information Memorandum No. SI-CIM-C, relating to the offering of the Common Stock ("the "Business Plan") has been received and carefully read and the undersigned has relied only on the information contained therein, has not relied on any oral representations, has been given the opportunity to ask questions and receive answers from the Company, and has been given access to full and complete information regarding the Company;

(B)     The undersigned is purchasing the interest in the Company without being furnished any offering literature, prospectus, projections or other written information other than the Business Plan;

(C)     The undersigned recognizes that the Common Stock has not been registered under the Securities Act of 1933, as amended, nor under the securities laws of any state and the undersigned has no right to require such registration and no registration is contemplated; therefore, no public agency has passed upon the accuracy or adequacy of the information contained in the Business Plan, the amount of compensation to officers or affiliates of the Company, or the fairness of the terms of the offering;

(D)     The undersigned believes that an investment in the Company is suitable based upon the undersigned's investment objectives and financial needs, and the undersigned has no need for liquidity of this investment with respect to the Common Stock;

(E)     The undersigned has the requisite knowledge and experience in financial and business matters to assess the relative merits and risks, is capable of interpreting financial statements, or has relied upon the advice of counsel, accountants and/or

**CONFIDENTIAL**                                                              **HB-SVG-00547200**

SEC-DC-EPROD-000559085

purchaser representative(s) with regard to tax aspects, risks and other considerations involved in the investment, and fully understands that he must look to and consult with his own advisors with respect to the tax consequences, risks and other considerations of investing in the Common Stock;

(F) The undersigned is acquiring the Common Stock for long-term investment and not with a view toward resale, fractionalization or division or distribution thereof;

(G) The undersigned recognizes that the Company has been solely involved in research and development and has no financial or operating history and that the Common Stock, as an investment, involves substantial risks;

(H) The undersigned acknowledges that he must bear the economic risk of loss of the investment in the Common Stock for an indefinite period of time because the Common Stock has not been registered under the Securities Act of 1933, as amended, or under applicable state securities laws;

(I) The undersigned realizes that the Common Stock cannot readily be sold as there is no public market for the Common Stock and it is extremely unlikely that any market for the Common Stock will develop; and, therefore, the Common Stock must not be purchased unless the undersigned has liquid assets sufficient to assure that such purchase will cause no undue financial difficulties and the undersigned can provide for current needs and possible personal contingencies;

(J) The undersigned understands that the ability to transfer the Common Stock will be restricted against transfers unless the transfer is not in violation of the Securities Act of 1933, as amended (the "Securities Act"), the Securities Exchange Act of 1934, as amended, or applicable state securities laws (including investment suitability standards), and that a legend will be placed on documents evidencing the restrictions against transfer;

(K) All information which the undersigned has provided to the Company concerning the undersigned's financial position and knowledge of financial business matters is correct and complete as of the date hereof, and if there should be any material change in such information prior to acceptance of this Subscription Agreement by the Company, the undersigned will immediately provide the Company with such information;

(L) The undersigned understands that the books and records of the Company will be available upon reasonable notice for inspection during reasonable business hours at the Company's place of business;

(M) The undersigned has been provided access to all information requested in addition to the Business Plan in evaluating his purchase of Common Stock;

2

SEC-DC-EPROD-000559086

(N)     The undersigned is a natural person and a bona fide resident of, or is an entity all of whose legal and beneficial owners are resident of, the State of _____, and the Common Stock being purchased by the undersigned in the undersigned's name solely for the undersigned's own beneficial interest and not as nominee for, or on behalf of, or for the beneficial interest of, or with the intention to transfer to, any other person, trust or organization.

(O)     The Company is making the offer and sale of Common Stock to the purchasers in reliance on the representations by the undersigned and all other investors that each and every investor is an "accredited investor", as set forth in the accompanying Offeree Questionnaire, and the undersigned so acknowledges and reaffirms;

(P)     The undersigned is willing and able to bear the economic risk and loss of an investment in the Company in an amount equal to the total Subscription amount. In making this statement, consideration has been given to whether the undersigned could afford a complete loss; and

(Q)     The undersigned will immediately notify the Company if there is any material change in any information contained in this Subscription Agreement.

3.     INDEMNIFICATION.  The undersigned acknowledges that he understands the meaning and legal consequences of the representations, warranties, and covenants in this Subscription Agreement and the Offeree Questionnaire, and that the Company has relied upon such representations, warranties, and covenants, and he hereby agrees to indemnify, defend and hold harmless the Company and its representatives, directors, officers, shareholders, controlling persons, agents, and employees from and against any and all loss, damage or liability, cost or expense due to or arising out of a breach of any such representation, warranty, or covenant. All representations, warranties, and covenants in this Subscription Agreement and the Offeree Questionnaire, and the indemnification contained in this Section 3 shall survive the acceptance of this Subscription Agreement and the issuance of the Common Stock to the undersigned.

4.     LIMITATIONS ON TRANSFER OF CONSIDERATION.  The undersigned acknowledges that he is aware that there are substantial restrictions on the transferability of the Common Stock. The undersigned agrees that the Common Stock shall not be sold unless (a) such sale is pursuant to an effective registration statement under the Securities Act and all relevant state securities laws or (b) the Company shall have been advised by its counsel that such registration is not required and that such sale is exempt from registration under the Securities Act and any other applicable state securities laws or regulations. The undersigned further acknowledges that the Company is under no obligation to aid him in obtaining any exemption from the registration requirements. The undersigned also acknowledges that he shall be responsible for compliance with all conditions on transfer imposed by any federal or state securities administrator and for any expenses incurred by the Company for legal or accounting services in connection with reviewing such proposed transfer and issuing opinions in connection therewith, and the undersigned agrees that he will give appropriate notice of these restrictions to each person to whom he transfers such Common Stock.

3

CONFIDENTIAL

HB-SVG-00547202

SEC-DC-EPROD-000559087

5.      COMPLIANCE WITH SECURITIES LAWS.  The undersigned understands and agrees that the following restrictions and limitations are applicable to his purchase and resales, pledges, hypothecations, or other transfers of the Common Stock pursuant to the Securities Act:

(a)      The undersigned agrees that the Common Stock shall not be sold, pledged, assigned, hypothecated, or otherwise transferred unless registered under the Securities Act and all applicable state securities laws or exempted therefrom.

(b)      A legend in substantially the following form has been or will be placed on certificates representing shares of the Common Stock:

**THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR THE SECURITIES LAWS OF ANY STATE.      THE SHARES HAVE BEEN ACQUIRED FOR INVESTMENT AND MAY NOT BE SOLD, TRANSFERRED OR ASSIGNED, AT ANY TIME, IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT FOR THESE SHARES UNDER THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR AN OPINION OF THE COMPANY'S COUNSEL THAT SUCH REGISTRATION IS NOT REQUIRED.**

6.      AMOUNT OF INVESTMENT.  The undersigned hereby subscribes for the following amount of Common Stock:

Amount of investment $_____.

Total number of Shares subscribed _____.

EXECUTED this the _____ day of _____, 2013.

4

**THE UNDERSIGNED REPRESENTS IT HAS READ THE BUSINESS PLAN AND THIS SUBSCRIPTION AGREEMENT AND FULLY UNDERSTANDS THE TERMS CONTAINED THEREIN AND HEREIN.**

_____          _____
Subscriber Printed Name                  Signature

_____          _____
Social Security or                       Telephone Number
Taxpayer ID#

_____          _____
Address (Street)                         City        State        Zip

_____
Country

_____          _____
Second Subscriber Printed Name           Signature

_____          _____
Social Security or                       Telephone Number
Taxpayer ID#

_____          _____
Address (Street)                         City        State        Zip

_____
Country

ACCEPTED BY THE COMPANY this the _____ day of _____, 2013.

                                 SERVERGY, INC.

                                 By:_____

                                 Title:_____

[A copy of this Accepted Subscription Agreement Execution Page will be returned to the Subscriber.]

5

**CONFIDENTIAL**                                          **HB-SVG-00547204**

TYPE OF OWNERSHIP (CHECK ONE)

\_\_\_\_\_   INDIVIDUAL OWNERSHIP (one signature required)

\_\_\_\_\_   COMMUNITY PROPERTY (one signature if Interest is in one name, i.e. managing spouse; two signatures required if Interest is held in both names)

\_\_\_\_\_   JOINT TENANTS WITH RIGHT OF SURVIVORSHIP (Both parties must sign)

\_\_\_\_\_   TENANTS IN COMMON (both parties must sign)

\_\_\_\_\_   TRUST (Please include name of trust, name of trustee, date trust was formed and copy of the Trust Agreement or other authorization)

\_\_\_\_\_   CORPORATION (Please include certified corporate resolution authorizing signature)

\_\_\_\_\_   PARTNERSHIP (Please indicate type and include a copy of the Statement of Partnership or Partnership Agreement authorizing signature)

\_\_\_\_\_   LIMITED LIABILITY COMPANY (Please provide a copy of the LLC Operating Agreement authorizing signature)

_____
Please print here the exact name (registration) Subscriber desires on records of the Company.

6

**CONFIDENTIAL**                                                      **HB-SVG-00547205**

# ALL INFORMATION WILL BE TREATED CONFIDENTIALLY

# SERVERGY, INC.

## *OFFEREE QUESTIONNAIRE*

Servergy, Inc.
1700 N. Redbud Blvd., Suite 410
McKinney, TX 75069

Ladies and Gentlemen:

The information contained herein is being furnished to you in order for you to determine whether the undersigned's Subscription Agreement to purchase shares of common stock, $.001 par value per share (the "Common Stock"), of Servergy, Inc., a Nevada corporation (the "Company"), may be accepted by you pursuant to Section 4(2) of the Securities Act of 1933, as amended (the "Act"), and Regulation D promulgated thereunder. I understand that (a) the Company will rely upon the information contained herein for purposes of determining the availability of said exemptions and (b) the Common Stock will not be registered under the Act in reliance upon the exemption from registration afforded by Section 4(2) of the Act and Regulation D thereunder.

All information furnished is for the sole use of you on behalf of the Company and will be held in confidence by you, except that this Questionnaire may be furnished to such parties as you deem desirable to establish compliance with federal or state securities laws.

In accordance with the foregoing, the following representations and information are hereby made:

1.  The undersigned has knowledge and experience in financial and business matters so as to be capable of evaluating the relative merits and risks of an investment in the Company; the undersigned is not utilizing the services of a representative ("Purchaser Representative") in connection with evaluating such merits and risks. The undersigned offers as evidence of knowledge and experience in these matters the information requested below on this Offeree Questionnaire.

2.  The undersigned is willing and able to bear the economic risk of an investment in the Company in an amount equal to the total subscription amount. In making this statement, consideration has been given to whether the undersigned could afford a complete loss. The undersigned offers, as evidence of ability to bear the economic risk, the information below on this Offeree Questionnaire.

7

CONFIDENTIAL

SEC-DC-EPROD-000559091

3.    Except as indicated below, any purchase of the Common Stock will be solely for the account of the undersigned, and not for the account of any other person or with a view to any resale, fractionalization, division, or distribution thereof.

(State "No Exceptions" or set forth exceptions and give details. Attach additional pages if necessary.)

_____

_____

4.    The undersigned represents to you that (a) the information contained herein is complete and accurate and may be relied upon by you and (b) the undersigned will notify you immediately of any material change in any of such information occurring prior to acceptance of the Subscription Agreement for the purchase of Common Stock by the undersigned.

8

CONFIDENTIAL

HB-SVG-00547207

SEC-DC-EPROD-000559092

INFORMATION REQUIRED OF EACH PROSPECTIVE PURCHASER:

## A. GENERAL INFORMATION

1. Name: _____

2. Address, Telephone Number and Facsimile Number: _____

_____

_____

3. Address for notice purposes: _____

_____

4. If applicable, employer or business association and position: _____

_____

5. If applicable, U.S. Taxpayer Identification Number or Social Security Number:

_____

6. Email address for communication purposes:

_____

## B. ACCREDITED INVESTOR STATUS

PLEASE CHECK APPROPRIATE BOX. THIS INFORMATION IS SOLELY FOR COMPANY'S RECORDS AND CONSTITUTES A MATERIAL PART OF THESE EXECUTION DOCUMENTS. FAILURE TO COMPLETE WILL DISQUALIFY A PROSPECTIVE PURCHASER FROM BECOMING A STOCKHOLDER IN THE COMPANY.

____ 1. A natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000. In calculating "net worth" such a person must exclude any value attributed to his primary residence as an asset (however, in the event any mortgages, liens, encumbrances or indebtedness on such a person's primary residence are in excess of the value of such primary residence, the person must reduce his "net worth" by the amount of such excess).

____ 2. A natural person who had individual income in excess of $200,000 in each of the two most recent years and who reasonably expects individual income in excess of $200,000 in the current year or joint income with that person's spouse in excess of $300,000 in each of these years and expects to have at least that much in the current year.

9

HB-SVG-00547208

A natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000. In calculating "net worth" such a person must exclude any value attributed to his primary residence as an asset (however, in the event any mortgages, liens, encumbrances or indebtedness on such a person's primary residence are in excess of the value of such primary residence, the person must reduce his "net worth" by the amount of such excess.

___ 3. A director or executive officer of the issuer of the securities being offered or sold, or any director, executive officer, general partner of a general partner or manager of a manager of that issuer.

___ 4. A bank as defined in Section 3(a)(2) of the Securities Act, or a savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act, whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended; an insurance company defined in Section 2 (13) of the Securities Act; an investment company registered under the Investment Company Act of 1940, as amended; or a business development company as defined in Section 2(a)(48) of the Securities Act; a Small Business Investment Company licensed by the United States Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958, as amended; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; an employee benefit plan within the meanings of Title I of the Employee Retirement Income Security Act of 1974, as amended, if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such act, which is either a bank, insurance company or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000, or if a self-directed Plan, with investment decisions made solely by persons who are accredited investors.

___ 5. A private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940, as amended.

___ 6. An organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or other business trust, or partnership with total assets in excess of $5,000,000 and not formed for the specific purpose of acquiring the Common Stock.

___ 7. A trust with total assets in excess of $5,000,000 not formed for the specific purpose of acquiring the Common Stock, whose purchase is directed by a person with such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of an investment in the Company.

___ 8. An entity in which all of the equity owners of which are "accredited investors".

___ 9. None of the above.

10

CONFIDENTIAL

## C.   EDUCATION BACKGROUND

School(s) and Degrees:_____

_____

_____

_____

_____

_____

## D.   BUSINESS AND EMPLOYMENT INFORMATION

Name of Employer or Business:_____

Nature of Business:_____

Position and Duties:_____

_____

Prior occupations during past five years:_____

_____

_____

_____

_____

_____

1.   I have personally invested in excess of $_____ over the past five years, including investments during such periods in excess of $_____, in investments not registered for sale to the public under applicable federal and state securities laws.

2.   I consider myself to be an experienced and sophisticated investor and I have such knowledge and experience in financial and business matters that I am capable of evaluating the merits and risks of an investment in the Common Stock offered by the Company:

        [   ] Yes             [   ] No

3.   I understand the full nature and risk of investment in the Common Stock offered by the Company, and I feel I can afford the complete loss of the investment:

        [   ] Yes             [   ] No

4.   Set forth below are the types of private investments I have made in the past five years, with particular attention to investments in nonmarketable investment participations:

_____

_____

_____

11

CONFIDENTIAL

SEC-DC-EPROD-000559095

_____
Signature

_____
Printed Name

_____
Date

12

CONFIDENTIAL
HB-SVG-00547211

# EXHIBIT "U"

| | |
|---|---|
| **From:** | Ken Paxton <ken@ppnclaw.com> |
| **Sent:** | Wednesday, July 13, 2011 2:35 PM |
| **To:** | bill@servergy.com |
| **Subject:** | RE: Private and Confidential. Ken Rasner Investor Materials. Copyright (C) 2011 by Servergy, Inc. All Rights Reserved. Do Not Forward. |

Thanks Bill. It was pleasure to meet you. I will get to work.

Ken

ken@ppnclaw.com

W. Kenneth Paxton, Jr.
201 W. Virginia Street
McKinney, Texas 75069
Phone (469) 742-0100
Fax (214) 544-9007

**From:** Bill Mapp [mailto:bill@servergy.com]
**Sent:** Tuesday, July 12, 2011 11:59 PM
**To:** ken@kenpaxtonlaw.com
**Subject:** Private and Confidential. Ken Rasner Investor Materials. Copyright (C) 2011 by Servergy, Inc. All Rights Reserved. Do Not Forward.

Dear Ken,

It was a real pleasure meeting you...

I sure appreciate your valuable time, prayers and support.  It would be a real honor (not to mention a whole lot of fun) to have you climb on-board with us on this exciting rocket ride and global ground floor play with us as we get ready to close the hatch, buckle-up and blast-off!

I have included the new SI-CIM-C PPM Draft for our upcoming Series C $2/share $3M round that we are preparing to launch here very quickly, which includes an updated copy of the Series C Executive Summary on page one. (I have also attached a copy of the Series B Executive Summary that I left with you today.)  You will find a copy of the "Compelling Customer Benefits" matrix, that I left with you, on page 26 of the attached Series C SI-CIM-C PPM Draft.

As you could see today, the server footprint is the size of a legal writing pad, allowing us to put 4 of our servers where the industry leaders normally put just 1 of their servers; thus increasing standard server density by 400%. In addition to using a power meter to demonstrate live for you our ground breaking low power consumption with all 8 processor cores firing at 100% max load -- I have also included the confidential third party independent technology report from http://www.elliotlabs.com, a world class Silicon Valley testing lab, confirming our dramatic  power consumption and thermal claims of operating on 80% less power and cooling. Moreover, using industry standard benchmark testing, our ground-breaking industry leading performance tests achieves an incredible 4X increases in power and performance per watt over the industry leaders.

I have also included an pre-NDA "Stealth Company Executive Snapshot" below so that you can cut/paste/forward to other prospective investors without mentioning our name until they sign/forward me the attached NDA.  (If you and Ben would, please scan and email back the NDAs you both signed today, since we got to talking today and I forgot to collect the NDAs from you both.) As soon as prospective investors sign/forward me an NDA, we can then set up a meeting together, at our new offices or online via gotomeeting, to share more with them.

As discussed, any investors you bring to the table for Series B $1/share round before we close it out here very shortly, I will give you 5% cash and 5% shares in consulting fees of any monies received that you helped bring to the table for the Series B $1/share round. Additionally, you can take all your consulting fees in shares if you would prefer, which is what most people have been doing, but again, it's entirely your preference either way. Moreover, I also will give you 2.5% cash and 2.5% shares in consulting fees for any monies received that you help bring to the table for the Series C $2/share $3M "Production Ready" round or the institutional $10-$20M "Production" funding Series D round.  Clearly, anyone that you decide to invite to this very unique global opportunity we have, I know will be good people and I would certainly be excited to talk with and have join us.

Clearly your timing couldn't be more perfect to get ownership in Servergy with the 2X bump in share price you would getting here as soon as we open the Series B $2/share $3M "Production ready" round to start firming up pre-orders; and start teeing up our $10M-20M Series D "production round" with institutional investors...

---

**STEALTH COMPANY EXECUTIVE SNAPSHOT:**

COMPANY HISTORY: Silicon Valley Stealth-mode C Corp formed in 2009 -- recently moved corporate HQ to North Texas
LEADERSHIP TEAM: Proven Fortune 500 and Entrepreneurial Leadership Team with global track-record of innovation and success
FOUNDER, CHAIRMAN & CEO: http://www.linkedin.com/in/billmapp
GOVERNANCE: Seasoned Board of Directors & top Corporate Advisors, including formerly Walton Equity Fund, CTO/CIO for Perot Systems, et al.
ECOSYSTEM: Rapidly growing ecosystem of world class multi-billion dollar technology, ISO manufacturing & distribution partners
MEMBER: Cleantech Global Innovation Network, see http://cleantech.com/about/sponsors.cfm
TECHNOLOGY:  Proven Green/Clean Technology that has been 3rd party validated by world class Silicon Valley testing lab -- http://www.elliotlabs.com
GOVERNMENT SUBSIDIES TO BE EFFECTIVE:  No, unlike other clean technologies, it literally starts paying for itself from the moment power hits it
APPLICATION: B2B Data Center Energy Efficiency category -- see http://www.sustainablebusiness.com/index.cfm/gc/news.display/id/21716
TECHNOLOGY TRANSFERABLE AND SCALABLE: Yes, to many other products/markets/applications, globally
TARGET MARKET: Huge power-hungry data centers for the Global 2000/Fortune 1000 and Massive Government Data Centers
TOP INDUSTRY PROBLEMS: Power, cooling and space costs
COMPANY SOLUTION: 80% savings for power, cooling and space costs
MARKET GROWTH: Hyper-growth driven by projected Internet growth of 4X over next 24 months alone, skyrocketing global demand for data centers/servers --
http://www.pikeresearch.com/newsroom/energy-efficient-data-center-technologies-to-represent-28-of-total-market-investment-by-2015
M&A: Buyout blitz is on, and will only increase as whole world goes online -- http://www.datacenterknowledge.com/archives/2011/02/01/time-warner-buys-navisite-for-230-million/
SCOPE: Universal, like light bulbs, touches all companies and industries, worldwide
LEGAL: Top IP lawfirm in the world -- http://www.gtlaw.com
DISTRIBUTION: One of the largest electronics distributors in the world, among others
MANUFACTURING: World class ISO certified manufacturers in place

**HB-SVG-00686209**

PR: Leading Cleantech PR firm in the space -- http://www.sterlingpr.com
INVESTED TODATE: $3M+
FINANCING SOUGHT: Very *Private and Limited Family & Friends Round*, $2M @ $1/Share with $50K minimum investment (NOTE: ALREADY OVERSUBSCRIBED -- IN PROCESS OF QUICKLY SHUTTING DOWN THE $1/ROUND TO OPEN THE $2/SHARE ROUND.)
USE OF FUNDS: Get Beta customer units in place and start preparing for production; Secure pre-orders; Complete filing IP; Complete Top Exec team
EXTERNAL AUDITORS: Top regional CPA/accounting firm (EXTERNAL AUDIT AVAILABLE UPON REQUEST.)
TIMING: Start reference account customers beta testing and firming up initial orders end of 2011 with roll out and ramp-up starting first part of 2012
EXIT STRATEGY: IPO/Acquisition within 3-5 years

As the Servergy opportunity continues to quickly take on a life of its own, there are lots of ways to participate with us in this by bringing the 3Cs (i.e., Contacts, Capital and Contracts) to bear with this very unique blessing and global ground floor venture/adventure, together.

Please don't hesitate to call me if you have any questions, Ken. I look forward to hearing back from you, shortly...

Best regards & blessings!

*Bill*

Bill Mapp, Founder & CEO
Servergy, Inc.
5760 Legacy Dr, Ste B3353
Plano, TX 75024

Save Energy. Work Smart. ®
bill@servergy.com
http://www.linkedin.com/in/billmapp
Mobile: (408) 981-MAPP (6277)

Member, Global Cleantech Innovation Network: http://www.cleantech.com

**Powerful Quotes/Stats:**

[ ] Data Centers have become as vital to the functioning of society as power stations. -- The Economist

[ ] Data centers have become the nerve centers of business and society. -- NY Times

[ ] http://www.pikeresearch.com/newsroom/energy-efficient-data-center-technologies-to-represent-28-of-total-market-investment-by-2015

[ ] http://www.fastcompany.com/1683653/green-data-center-market-to-more-than-triple-over-next-five-years

[ ] There's no mistaking it: The data center industry is hot. Data center stocks are outpacing the broader market, with a flurry of acquisitions and IPOs amid strong interest from private equity investors. -- Data Center Knowledge

[ ] Energy-efficiency is the top reason cited by Data Centers for their need to expand. – Digital Realty Trust 2011 Report "What is Driving the US Market?"

[] 40% of data center operational costs are attributable to power alone.  By 2014, it will be more expensive to power a data center than to buy and manage the hardware in it. Today's data center managers are plagued with skyrocketing energy costs... -- July '11, Data Center Journal

--

**CONFIDENTIALITY NOTICE:** This communication contains privileged and/or confidential information to be maintained with the strictest confidence. It is intended solely for the use of the person or entity in which it is addressed. If you are not the intended recipient, you are STRICTLY PROHIBITED from disclosing, copying, distributing or using any of this information. If you received this communication in error, please contact the sender immediately and destroy the material in its entirety, whether electronic or hard copy.  For information only. Not an offer, or solicitation of any offer to buy or sell any security, investment or other product.

# EXHIBIT "V"

**To:**        ken[ken@kenpaxtonlaw.com]
**From:**     Bill Mapp
**Sent:**      Tue 10/4/2011 6:39:29 PM
**Importance:**       **Normal**
**Subject:**   Your Private Invitation: Join us this Thursday at 7PM CDT for "Servergy Special LIVE Presentation/Broadcast with "Big" Announcement & Very Exciting New Demo!"

 Private & Limited. By Invitation Only. Special  LIVE Exec
Presentation/Broadcast with "Big" Announcement & Very Exciting New
Demo!...  Join
us for a Webinar This Thursday, Oct 6 at 7PM CDT TH OCT 6, 2011, 7PM CDT

THE SERVERGY EXECUTIVE TEAM IS PROUD TO ANNOUNCE OUR SERIES-C $2/SHARE, $3M
"PRODUCTION READY" ROUND  BROADCAST WITH A BIG ANNOUNCEMENT AND EXCITING NEW
DEMO THIS WEEK FOR EVERYBODY...

NOTICE: PRIVATE AND LIMITED. BY INVITATION ONLY. (MAY INVITE CLOSE,
 ACCREDITED INVESTOR, FAMILY & FRIENDS IF THEY SIGN NDA.) EVERYONE MUST HAVE
SIGNED/RETURNED SERVERGY NDA TO ATTEND.  IF HAVE NOT ALREADY DONE SO,
SIGN/FAX ATTACHED NDA TO #972-584-9845.)

You are hereby cordially invited to join the entire Servergy Executive
Leadership Team this Thursday evening at 7PM Central for a very special LIVE
program and broadcast...

Host for the evenings program will be Bill Mapp, Servergy Founder, Chairman
and CEO.  Joining him will be Michael Holder, Company CFO and
Director;  Townsend J. Smith, VP Product Development;  Vihar R. Rai, VP
Engineering; and Wade Cramer, VP of  Manufacturing Operations.

The Servergy Executive Team will be sharing with everyone the very latest
exciting new materials and updates from the Servergy Business, Finance,
Technology and Manufacturing fronts.  Additionally, the Servergy Executive
Team will be taking LIVE questions from the audience throughout the evenings
broadcast and program.

Be sure and mark your calendars this week and come join us for this very
special LIVE broadcast with some very exciting new announcements that you
won't want to miss!

CONFIDENTIALITY NOTICE: This communication contains privileged and/or
confidential information to be maintained with the strictest confidence. It
is intended solely for the use of the person or entity in which it is
addressed. If you are not the intended recipient, you are STRICTLY
PROHIBITED from disclosing, copying, distributing or using any of this
information. If you received this communication in error, please contact the
sender immediately and destroy the material in its entirety, whether
electronic or hard copy.  Email may contain forward looking comments that
are based on managements best-faith estimates which are subject to change.
For information only. Not an offer, or solicitation of any offer to buy or
sell any security, investment or other product. *Title:* Private & Limited.
By Invitation Only. Servergy LIVE Exec Presentation & Broadcast with a "BIG"
Announcement and Exciting New Demo this Week! *Date:* Thursday, October 6,
2011 *Time:* 7:00 PM - 8:30 PM CDT After registering you will receive a
confirmation email containing information about joining the Webinar. *System
Requirements*

PC-based attendees
Required: Windows® 7, Vista, XP or 2003 Server Macintosh®-based attendees
Required: Mac OS® X 10.5 or newer *Space is limited.*
Reserve your Webinar seat now at:
https://www1.gotomeeting.com/register/353079641
<https://www1.gotomeeting.com/register/353079641>

*CONFIDENTIALITY NOTICE:* This communication contains privileged and/or
confidential information to be maintained with the strictest confidence. It
is intended solely for the use of the person or entity in which it is
addressed. If you are not the intended recipient, you are *STRICTLY
PROHIBITED* from disclosing, copying, distributing or using any of this
information. If you received this communication in error, please contact the
sender immediately and destroy the material in its entirety, whether
electronic or hard copy.  Email may contain forward looking comments that
are based on managements best-faith estimates which are subject to change.
For information only. Not an offer, or solicitation of any offer to buy or
sell any security, investment or other product.

# EXHIBIT "W"