# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>v.<br><br>WILLIAM E. MAPP, III | § § § § § § § § § Civil Action No. 4:16-CV-00246<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant William E. Mapp, III's Corrected Motion to Strike Plaintiff's Expert (Dkt. #111). After reviewing the relevant pleadings, the Court finds that Defendant's motion should be granted in part and denied in part.

## BACKGROUND

Servergy, Inc. ("Servergy") is a computer hardware company that develops secure, cloud-based data storage servers. From November 2009 to September 2013, Servergy raised approximately $26 million in private securities offerings to develop what it claimed was a revolutionary new server, the CTS-1000. William E. Mapp, III ("Mapp"), Servergy's co-founder and then-CEO, was responsible for the fundraising campaign. The Securities and Exchange Commission ("SEC") claims that Mapp violated Sections 5(a) and 5(c), 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, based, in part, on representations made to potential investors in Servergy's offering materials.

On March 28, 2017, the SEC served Mapp with its designation of Charles Marler as a non-retained expert witness pursuant to Rule 26(a)(2)(C), stating the subject matter on which Marler would testify and a summary of the facts and opinions to which he would testify (Dkt. #111, Exhibit A).

On September 13, 2017, Mapp filed his Motion to Strike Plaintiff's Expert (Dkt. #110). On September 15, 2017, the motion was found to be deficient and required refiling. The same day, Mapp filed his Corrected Motion to Strike Plaintiff's Expert (Dkt. #111). In his motion, Mapp argued that Marler is a retained expert and the SEC's designation was insufficient because Marler's designation did not contain a written expert report required by Rule 26(a)(2)(B).

On September 29, 2017, the SEC filed its response (Dkt. #115). In its response, the SEC conceded that Marler is a retained expert and, thus, was required to provide an expert report pursuant to Rule 26(a)(2)(B). The SEC attached a Supplemental Expert's Report as an exhibit to its response (Dkt. #115, Exhibit 1). Contemporaneously with its response, the SEC filed an Unopposed Motion for Leave to Supplement Marler's Expert Report (Dkt. #114). The Court granted the motion on October 2, 2017 (Dkt. #117). Accordingly, Mapp's argument regarding the timeliness of Marler's disclosure is moot, and the Court need only address the admissibility and scope of Marler's testimony.

On October 27, 2017, Mapp filed his reply (Dkt. #127). On November 3, 2017, the SEC filed its sur-reply (Dkt. #138).

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. A district court must make a preliminary determination, when requested, as to whether the requirements of Rule 702 are satisfied with regard to a particular expert's proposed testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592−93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that

characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove by a preponderance of the evidence that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590−91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 590 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exhaustive list of factors that courts may use in evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593-94; *Pipitone*, 228 F. 3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert,* 509 at 594.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the

district court. *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 406 (5th Cir. 2000).

## ANALYSIS

Mapp moves to strike Marler's report in its entirety and his expert testimony at trial. Mapp argues that Marler's opinions are improper for the following reasons: (1) his opinions constitute impermissible legal conclusions; (2) his conclusions are not sufficiently reliable; and (3) he lacks the necessary qualifications. The SEC designated Marler to give his opinions on whether the representations in Servergy's offering materials, specifically the chart on page 27 of the Private Placement Memorandum ("PPM") regarding the relative power efficiency of the CTS-1000 as compared to other servers, were false and misleading (Dkt. #111, Exhibit A at p. 1).

Rule 702 requires that an expert witness be qualified. "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009); *see Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). However, Rule 702 does not demand that an expert be highly qualified in order to testify, and "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact[.]" *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

Marler is currently employed as an IT Specialist with the SEC as a data center energy manager. "In that role, he performs, implements, verifies, and manages the results of power and cooling designs for the SEC's data centers and server room." (Dkt. #115 at p. 3). Immediately before joining the SEC, Marler was a Senior Systems Engineer for American Power Conversion for nine years. In that role, he designed power, cooling, and rack infrastructure in data centers based on his evaluation of server, storage, and network equipment. He also designed system

specifications and measured power result testing for APC customers, including the Department of Energy and other federal agencies.

Mapp argues that Marler's position as an IT Specialist and his general knowledge about server technology and experience in designing, implementing, and managing data centers alone is insufficient to qualify him as an expert on whether a power consumption comparison chart is misleading to investors. The Court agrees.

Although Marler's expertise as an IT Specialist will assist the jury in understanding the chart's representations regarding the structure of certain servers, their power consumption, and heat output, that expertise does not extend to evaluating whether the truth or falsehood of those marketing statements would influence an investor's decision to invest. Marler does not have substantial experience in advising investors or recommending particular investments to the average person. Thus, he is not qualified to offer an opinion as to what facts would influence a reasonable investor's decision whether or not to make a certain investment. *See Aubrey v. Barlin*, No. 1:10-CV-076-DAE, 2015 WL 6002260, at *9 (W.D. Tex. Oct. 14, 2015); *MTV Capital Ltd. P'ship v. Quvis, Inc.,* No. CIV–07–0981–HE, 2008 WL 5516517, at *2 (W.D. Okla. Nov. 12, 2008) (excluding securities regulation lawyer without experience advising investors as an expert because he lacked qualifications to testify as to what a reasonable prospective investor would consider important in its making a decision to invest); *Koch v. Koch Indus., Inc.,* 2 F. Supp. 2d 1385, 1398 (D. Kan. 1998) (excluding accountant's testimony as to what might be material to a prudent investor because he was not qualified).

Even if Marler were somehow qualified to evaluate whether the marketing statements are misleading and could influence an investor's decision to invest, that expertise would not assist the jury in determining whether Servergy's marketing materials were misleading. *See Pipitone v.*

5

*Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002). The question of whether the chart is misleading is within the jury's competence. *See SEC v. Leslie,* 2010 WL 2991038 (N.D. Cal. July 29, 2010) (holding "it [was] for the jury to determine whether Defendants' statements in fact were misleading"). Marler also makes references to possible fraudulent conduct and the intentions of the parties. This determination is within the sole province of the jury. Moreover, Marler makes references to whether the investors were misled by the chart or whether certain statements were misleading (Dkt. #111, Exhibit A at p. 2) ("The 'watts per server' value is misrepresented, leading investors to believe the Servergy CTS1000 server is significantly more efficient than the selected competitors."). The investors may testify as to whether they were misled, and it is for the jury to determine whether Defendant's statements in fact were misleading. *See SEC v. Johnson*, 525 F. Supp. 2d 70, 79 (D.D.C. 2007) (excluding expert regarding the intent of the defendant and whether the auditors were misled).

However, the SEC is correct that Marler's testimony about Servergy's representations regarding the structure and utility of the various servers is appropriate expert testimony due to the complexity of the technology. The different servers are complex, and expert testimony about the power consumption of various servers, the maximum rated capacity of their power supplies, the calculation of heat output from servers, and the installation and configuration of various types of servers is technical knowledge necessary for the jury to understand the representations made by Servergy in its offering materials. To the extent Mapp's motion seeks the exclusion of testimony about Servergy's representations regarding the relative efficiency, structure, utility and performance of the various servers (i.e., that the Servergy server did not in fact perform as stated in the chart), Mapp's motion is denied. Thus, Marler is not precluded from testifying as to whether Servergy's representations were false.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Corrected Motion to Strike Plaintiff's Expert (Dkt. #111) is hereby **GRANTED** in part and **DENIED** in part.

Accordingly, the Court strikes Charles Marler from testifying as an expert witness on whether the chart and other statements referred to in Servergy's offering materials were misleading. However, the Court permits Charles Marler to testify as an expert regarding whether Servergy's representations were false.

**IT IS SO ORDERED**.
 SIGNED this 14th day of November, 2017.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE