# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | § <br> § <br> § Civil Action No.  4:16-CV-00246 <br> § Judge Mazzant |
| v. | § <br> § |
| WILLIAM E. MAPP, III | § <br> § |

## FINAL JURY CHARGE

**MEMBERS OF THE JURY**:

It is my duty and responsibility to instruct you on the law you are to apply in this case.  The law contained in these instructions is the only law you may follow.  It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression.  If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression.  You are the sole judges of the facts of this case.  Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments.  It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest.  What the lawyers say or do is not evidence.  You may, however, consider their arguments in

light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.

**Burden of Proof**

Plaintiff Securities and Exchange Commission ("SEC") has the burden of proving its case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Plaintiff has failed to prove any element of its claim by a preponderance of the evidence, then it may not recover on that claim.

Defendant William E. Mapp, III ("Mapp") has the burden of proving his defense that Servergy's securities were exempted from registration with the SEC. If you find that Mapp has failed to prove any element of his defense by a preponderance of the evidence, then he has not met that burden.

**Evidence**

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial

evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

**Demonstrative Evidence**

Some exhibits have been presented to you as illustrations. Demonstrative evidence can be used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

**Witnesses**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of

a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

**Instruction Regarding Juror Questions**

As I told you in my preliminary instructions, I have given you the opportunity to give me written questions anonymously after a witness testified when you had an important question of the witness that was strictly limited to the substance of the witness' testimony. Remember that I asked you not to be offended if I did not present your question to be answered by the witness. You should not speculate on the answer to any unasked question and you should not speculate on or consider any facts or events outside the testimony and exhibits you have heard and seen in this courtroom.

**Limiting Instruction**

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

**No Inference from Filing Suit**

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

**Bias—Corporate Party Involved**

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

**Stipulated Facts**

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

The parties stipulated to the following facts:

1. At all relevant times, Servergy was incorporated under the laws of Nevada.

2. Development of the CTS-1000 began in 2009 in California.

3. In 2011, Servergy moved its principal place of business to McKinney, Texas.

4. Bill Mapp served as the Chief Executive Officer and Chairman of Servergy from 2009 to 2014.

5. Series A was offered between approximately November 2009 and April 2010.

6. Investors in Series A purchased Servergy stock at $0.25 a share.

7. Series B was offered between approximately April 2010 and August 2011.

8. Investors Series B purchased Servergy stock at $1.00 a share.

9. Investors in Series C, which began in approximately October 2011, purchased Servergy stock at $2.00 a share.

10. From November 2009 through January 2013, Servergy sold common stock to 135 investors.

11. From November 2009 through March 2013, Servergy sold common stock to investors located across ten states.

12. From November 2009 through March 2013, Servergy raised approximately $6 million.

13. Servergy engaged Williams Financial Group in January 2013 (the "WFG Offering").

14. The WFG Offering commenced on or about February 14, 2013.

15. Investors in the WFG Offering purchased Servergy stock at $2.00 a share.

16. The WFG Offering closed in or about September 2013.

17. The WFG Offering raised approximately $19.4 million for the company.

18. Servergy's securities were not registered with the SEC.

19. Servergy filed Forms D disclosing its private offering, claiming exemption from registration under Regulation D § 506 (17 C.F.R. § 230.506) on March 18, 2011, November 17, 2011, May 10, 2012, February 14, 2013, and April 16, 2013.

20. On or about February 27, 2013, WFG recorded a conference call attended by WFG Financial Advisors (the "WFG Advisors Call").

21. During the WFG Advisors Call, Mapp gave a presentation about Servergy and the CTS-1000.

22. Lance Smith, Servergy's COO, attended the WFG Advisors Call.

23. On August 16, 2012, Dan Schell sent Bill Mapp a draft of the pre-order form, which Schell stated that he "based loosely on the Tesla agreement."

24. On October 19, 2012, Bill Mapp distributed a "Servergy Q3'12 Investor Update," including a copy of the Cleantech Server Pre-Order Agreement Form.

25. Koerr, Inc. was a Canadian company.

26. On or about October 18, 2012, Koerr signed a "Cleantech Server Pre-Order Agreement Form" for 1,000 CTS-1000 units.

27. On November 22, 2012, Koerr sent Servergy a signed quote which stated that Servergy was "loaning Koerr a quantity of two CTS-1000 pre-production demo engineering systems" with a purchase order number written on the signature line.

28. On March 10, 2013, Will Mapp emailed Bill Mapp, Jack Smith, and Vihar Rai stating as follows: "Just got off the phone with Kyle Chase CTO for Koerr, and that said they are in the final stages of developing the software stack. They are using Dell servers for there (sic) initial goto market platform, but they are still committed and excited to use a Servergy server once we have a 64-bit platform to sell."

29. Servergy's February 14, 2013 PPM stated:

"Servergy has received significant interest from various US Fortune 500 and Global 1000 companies for its Cleantech Server ®. Since announcing in fall of 2012 that Servergy is taking pre-orders the company has received over 25 orders totaling over 1,500 units with planned delivery in late 2013."

30. The "pre-orders" section of the February 14, 2013 PPM did not appear in Servergy's Confidential Information Memorandum ("CIMs") Servergy.

**Claims under the Securities Act and Securities Exchange Act**

The SEC has brought three sets of claims against Mapp for his alleged violations of the securities laws.

<u>First Set of Claims</u>: The SEC alleges that Mapp violated Section 10(b) of the Exchange Act (which I will refer to as "Section 10(b)") and Rule 10b-5, subparts (a) through (c) (which I will refer to as "Rule 10b-5"). Rule 10b-5(a) – (c) implements Section 10(b). The SEC alleges Mapp did this by employing a device, scheme, or artifice to defraud investors, by making material misstatements or omissions, or by engaging in an act, practice, or course of business which operated or would operate as a fraud or deceit, in connection with the purchase or sale of a security.

<u>Second Set of Claims</u>: The SEC alleges that Mapp violated Section 17(a) of the Securities Act (which I will refer to as "Section 17(a)"), subparts (1) through (3), by employing a device, scheme, or artifice to defraud investors, by obtaining money or property by means of material misstatements or omissions, or by engaging in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser, in the offer or sale of a security.

<u>Third Claim</u>: The SEC alleges that Mapp violated Sections 5(a) and (c) of the Securities Act. Section 5 of the Securities Act requires the offer or sale of certain securities to be registered. Registering securities ensures that companies file essential facts with the SEC, which then makes these facts public. It is unlawful, without an exemption from the Securities Act's registration requirements, for any person to use an instrumentality of interstate commerce to buy or sell or offer to buy or sell an unregistered security.

**Timing of the Conduct**

I am asking you to decide whether certain conduct occurred before or after April 11, 2011. You are to decide the facts as to when certain conduct occurred and you should not draw any conclusions from those facts.

**Section 10(b) and Rule 10b-5 of the Exchange Act**

The SEC claims that Defendant Mapp violated Section 10(b) and Rule 10b-5. In order to prevail on its claim, the SEC must prove each of the following elements by a preponderance of the evidence:

1. Mapp committed directly or indirectly one or more of the following acts:

    (a) Employed any device, scheme, or artifice to defraud; *or*

    (b) Made any untrue statement of a material fact or omitted to state a material fact necessary in order to make the statement not misleading; *or*

    (c) Engaged in any act, practice, or course of business that operates or would operate as a fraud or deceit on any person;

2. Mapp acted with an intent to deceive, manipulate, or defraud;

3. Mapp's conduct was in connection with the purchase or sale of a security; and

4. Mapp used an instrumentality of interstate commerce in connection with the securities transaction involved in this case.

For element 1(a) and (c) above, the SEC must prove that Mapp engaged in conduct that was by nature deceptive, depended on a fiction or had the effect of conveying a false impression to another person. Something beyond a misrepresentation or omission is required to show such conduct. The SEC alleges Mapp engaged in a scheme that defrauded investors that included live demonstrations and the Elliott Lab test.

For element 1(b), a "misrepresentation" is a statement that is not true. Forward looking statements, such as predictions or expressions of opinion, are not representations of material facts

so long as they are not worded as fact or guarantees and the person making the statements had a reasonable basis to believe them at the time they were made. An "omission" is actionable if it fails to state facts that would be necessary to make other statements by Mapp, in light of the circumstances under which they were made, not misleading. There is no general duty to disclose information. A "material" fact is one that a reasonable investor would consider significant in the decision whether to invest, a fact that alters the "total mix" of information available to a reasonable investor. A minor or trivial detail is not material.

In this case, the SEC alleges the following misstatements and omissions:

- Mapp made material misrepresentations and omissions regarding the amount of orders or pre-orders for Servergy's product, the CTS-1000, including
    - Servergy's 2013 Private Placement Memorandum (the "PPM") statement that "[s]ince announcing in fall of 2012 that Servergy is taking pre-orders the company has received over 25 orders totaling over 1,500 units with planned delivery in late 2013";
    - The WFG Advisors Call that Servergy had 2,000 pre-orders;
    - Mapp's failure to amend the amount of orders or pre-orders listed in the 2013 PPM.

- Mapp made material misrepresentations and omissions regarding the nature of the technology in Servergy's product, the CTS-1000, in the WFG Advisors' Call, and in Serverg's 2013 PPM, including on page 27 of the PPM.

- Mapp made material misrepresentations and omissions regarding the relative power efficiency of the server and the fact that the CTS-1000 was a 32-bit server, including Mapp's failure to disclose during the WFG raise that the CTS-1000 was based on a 32-bit processor.

For purposes of the SEC's claim under Rule 10b-5, it is not sufficient for the SEC to prove that Mapp may have been involved in the preparation of a document that may have contained a materially false statement. In order to find that Mapp violated Rule 10b-5 by making false statements, you must find that the false statements, if any, in question were made by Mapp himself

9

or Mapp was the person with ultimate authority over a false statement, including its content and how to communicate it.

One example that judges have used to describe this principle is to point to the relationship between a speechwriter and a speaker. Even though the speechwriter is the one who drafts a speech ahead of time, the person who delivers the speech—the speaker—is the one who has control over what is ultimately said. For the purposes of 1(b), it is the speaker who "makes" the statements in the speech.

For elements 1(a), 1(b), and 1(c), the SEC need not prove that any purchaser or seller of securities actually relied upon any alleged misrepresentations or omissions by the Defendant.

To establish the second element on page 8 above, that Mapp acted with an intent to deceive, manipulate, or defraud, the SEC must prove that Mapp acted knowingly or was severely reckless. The SEC does not satisfy this burden of proof merely by showing that Mapp acted accidentally or made a mistake, or even that he acted negligently.

Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care that presents a danger of misleading buyers or sellers that is so obvious that Mapp must have been aware of it.

Since an element of the SEC's case is intent to defraud or recklessness, it follows that good faith on the part of the defendant can negate that element. Mapp, however, has no burden to establish a defense of good faith. The burden is on the SEC to prove fraudulent intent and a consequent lack of good faith by a preponderance of the evidence.

When you determine whether Mapp acted knowingly or recklessly, you must do so based on the standards that existed in 2011–2013 and based on what was known in 2011–2013, not based on hindsight.

To establish the third element, the "in connection with" aspect of this element is satisfied if you find that there was some connection or relation between the allegedly fraudulent conduct and the purchase or sale of securities. It is not necessary that Mapp was the actual seller or offeror of the securities. It is necessary that Mapp participated in the scheme or fraudulent conduct involving the purchase or sale of the securities.

For the fourth element, the use of an "instrumentality of interstate commerce" means, for example, the use of the mail, telephone, internet, or bank wires. It is not necessary that a misrepresentation or omission occur during the use of the mail, telephones, internet, or bank wires. All that is required is that the mail, telephones, internet, or bank wires be used in some phase of the transaction. In other words, it is not necessary that the misrepresentation be communicated by mail, telephones, internet, or bank wires, only that the mail, telephones, internet, or bank wires be used at some stage of the events involved.

**Section 17(a) of the Securities Act**

The SEC claims that Defendant Mapp violated Section 17(a)(1), (2), and (3).

*Section 17(a)(1)*

In order to prevail on its Section 17(a)(1) claim, the SEC must prove each of the following elements by a preponderance of the evidence:

1. Mapp directly or indirectly employed any device, scheme, or artifice to defraud;
2. Mapp acted with an intent to deceive, manipulate, or defraud;
3. Mapp's conduct was in the offer or sale of a security; and

    4. Mapp used an instrumentality of interstate commerce in connection with the securities transaction involved in this case.

As you've probably noticed, the first, second, and fourth elements the SEC must prove by a preponderance of the evidence under Section 17(a) are substantially the same as the elements it must prove under Rule 10b-5. For that reason, the instructions I gave you when discussing those elements for Rule 10b-5 also apply to the Section 17(a) elements. If you found in considering the violation of Rule 10b-5 that the SEC proved those elements by a preponderance of the evidence, you also found those elements proven for the purposes of the Section 17(a) violation. Likewise, if you found in considering the violation of Rule 10b-5 that the SEC did *not* prove those elements by a preponderance of the evidence, you also found those elements *not* proven for purposes of the Section 17(a) violation.

There are some differences between Rule 10b-5 and Section 17(a). As to the third element, Section 17(a) covers fraud only in "offers" to sell and actual "sales" of a security. "Offer" includes any and every attempt to offer or dispose of a security, so it includes negotiations to sell, or attempts to produce a sale by urging or persuading another to act. "Sale" also is defined broadly, and includes every contract of sale or other disposition of a security or an interest in a security for value.

    *Sections 17(a)(2) and 17(a)(3)*

In order to prevail on these claims, the SEC must prove each of the following elements by a preponderance of the evidence:

    1. Mapp directly or indirectly

        17(a)(2) – Obtained money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

> 17(a)(3) – Engaged in any transaction, practice, or course of business that operates or would operate as a fraud or deceit upon the purchaser.

2. Mapp acted either negligently, recklessly, or with an intent to defraud;

3. Mapp's conduct was in the offer or sale of a security; and

4. Mapp used an instrumentality of interstate commerce in connection with the securities transaction involved in this case.

There are some differences between Rule 10b-5(b) and 10b-5(c) and Section 17(a)(2) and 17(a)(3). As to Section 17(a)(2), the SEC must prove that Mapp directly or indirectly obtained money or property by means of a misstatement or omission. Indirect means that the path by which money or property is obtained need not be direct; that is, there can be intervening people or entities to whom the money or property goes through or goes to first. Mapp must personally have obtained money or property; it is not enough that Servergy obtained investments.

Section 17(a)(2) does not require that Mapp personally made the statements, as in Rule 10b-5(b). In order to demonstrate that Mapp obtained money or property "by means of" one of more material misstatements or omissions, the SEC need not prove that Mapp himself made the particular misstatement or omission but only that he used the misstatement or omission to obtain money or property. "By means of" means, then, "to use."

As to Section 17(a)(3), the SEC must prove that Mapp engaged in conduct that was by nature deceptive, depended on a fiction or had the effect of conveying a false impression to another person. Something beyond a misrepresentation or omission is required to show such conduct.

The second element for Section 17(a)(2) and 17(a)(3) requires the SEC to prove that Mapp acted negligently. "Negligently" means the failure to use that degree of care which an ordinary person would use under the same or similar circumstances. Negligence may consist of either doing

something that a reasonable person would not do under the circumstances, or it may consist of failing to do something that a reasonable person would do under the circumstances.

As to the third element, as discussed above as to Section 17(a)(1), Section 17(a)(2) and 17(a)(3) cover fraud only in "offers" to sell and actual "sales" of a security.

**Section 5(a) and 5(c) of the Securities Act**

The SEC claims that Defendant Mapp violated Sections 5(a) and (c) of the Securities Act. Section 5(a) and (c) prohibit the unregistered offer or sale of securities in interstate commerce to the public. The purpose of the registration requirement is to protect investors by promoting full disclosure of information thought necessary to make informed investment decisions. To succeed on its claim that Mapp violated Securities Act Section 5, the SEC must prove each of the following three elements by a preponderance of the evidence:

1. Mapp directly or indirectly sold, or offered to sell securities;

2. Servergy used an instrumentality of interstate commerce in connection with the offer to sell or sale of securities; and

3. No registration statement for the securities was in effect.

There is no dispute that Servergy offered securities using interstate commerce between November 2009 and September 2013 and that the securities being offered were not registered with the SEC. Thus, elements 2 and 3 are met.

The first element requires that Mapp have "directly or indirectly" sold securities. Section 5 does not limit liability only to persons who actually sell a security. Rather, a person who is not a seller is liable for the distribution of unregistered securities if that person was a "necessary participant" and a "substantial factor" in the sale, and has not shown a valid exemption for such sale. Being a "necessary participant" and a "substantial factor" means that the person's acts were necessary to, and a substantial factor in, the sales transaction.

In order to prove a violation of Section 5, the SEC need not prove that Mapp acted knowingly, or in reckless disregard of the facts, or even negligently. Unlike the fraud claims that I described earlier, state of mind is not relevant to a Section 5 violation.

If the SEC proves that Mapp was a necessary participant and substantial factor in Servergy's sales and offers by a preponderance of the evidence, the burden shifts to Mapp to prove, by a preponderance of the evidence, that Servergy's sales were exempt from the registration requirements.

### *Rule 506(b) of Regulation D*

Mapp claims that Servergy's offering and sales were exempt under Rule 506(b) of Regulation D. Rule 506(b) applies if the securities are sold to accredited investors and no more than 35 non-accredited investors, as long as the non-accredited investors are sophisticated enough to understand the merits and risks of the offering and certain information is furnished to the investors. The number of accredited investors that can purchase under Rule 506(b) is unlimited.

An accredited investor includes any person who came within any of the following categories, or who Servergy reasonably believed came within any of the following categories, at the time of the sale of the securities to that person:

1. Any director, executive officer, or general partner of Servergy;

2. Any person whose individual net worth, or joint net worth with that person's spouse, exceeds $1,000,000;

3. Any person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

4. Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person, meaning someone who either alone or with his purchaser representative has such

      knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment; or

5. Any entity in which all of the equity owners are accredited investors.

A non-accredited investor is any person who did not come within one of the above categories and Servergy also did not reasonably believe came within one of the above categories at the time of the sale. For purposes of calculating the number of investors under Rule 506(b), a corporation, partnership or other entity shall be counted as one purchaser. If, however, that entity is organized for the specific purpose of acquiring the securities offered and is not an accredited investor under category 5 listed above—which states that any entity in which all the owners are accredited investors is itself an accredited investor—then each beneficial owner of equity securities or equity interests in the entity shall count as a separate purchaser for all provisions of Regulation D.

For Mapp to prevail on his claimed exemption under Rule 506(b), he must first prove by a preponderance of the evidence that either:

1. There were no more than 35 non-accredited investors; or
2. Servergy reasonably believed that there were no more than 35 non-accredited investors.

If Mapp cannot meet this burden, then the Rule 506(b) exemption cannot apply. If Mapp proves all of the investors were accredited investors, these elements are met and the Rule 506(b) exemption does apply.

If there were 35 or fewer non-accredited investors, Mapp must then prove by a preponderance of the evidence that:

1. Each non-accredited investor was sophisticated; and
2. Servergy provided each non-accredited investor with certain items prior to the sale, including:

   a. Audited financial statements; and

   b. A brief description in writing of any material written information concerning the offering that was provided by Servergy to any accredited investor; and

   c. An opportunity to ask questions and receive answers concerning the terms and conditions of the offering and to obtain any additional information which Servergy possessed or could acquire without unreasonable effort or expense that is necessary to verify the accuracy of the audited financial statement.

A non-accredited investor is considered sophisticated if Mapp proves by a preponderance of the evidence that the non-accredited investor had such knowledge and experience in financial and business matters that he or she was capable of evaluating the merits and risks of the prospective investment, or that Servergy reasonably believed immediately prior to making the sale that the investor came within this description.

### *Rule 508 of Regulation D*

Even if Servergy's offering did not fully comply with Rule 506(b), the offering may still be exempt from registration by Rule 508, a safe-harbor provision of Regulation D, if Mapp can prove by a preponderance of the evidence that each of the following conditions are met:

1. Servergy's failure to comply did not pertain to a term, condition, or requirement directly intended to protect that investor; and

2. Servergy's failure to comply was insignificant with respect to the offering as a whole; and

3. Servergy made a good faith and reasonable attempt to comply with the requirements of Regulation D.

Mapp cannot satisfy the second element unless he shows Servergy had or reasonably believed it had 35 or fewer non-accredited investors, because a failure to meet this requirement of Rule 506(b) is considered significant with respect to the offering as a whole.

**Duty to Deliberate; Notes**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict.  Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong.  But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts.  You have been allowed to take notes during this trial.  Any notes that you took during this trial are only aids to memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence.  If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors.  Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes.  You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous.  After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it.  After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer.  After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.  Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

**SIGNED this 13th day of December, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE