# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| **SECURITIES & EXCHANGE COMMISSION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 4:16-CV-00246** |
| **WILLIAM E. MAPP, III,** | § | |
| **Defendant.** | § | |
| | § | |

---

## DEFENDANT WILLIAM E. MAPP, III'S OPPOSITION TO PLAINTIFF'S MOTION FOR REMEDIES AND TO ENTER FINAL JUDGMENT

---

**GREENBERG TRAURIG, LLP**

Jason S. Lewis
  Texas Bar No. 24007551
  lewisjs@gtlaw.com
David W. Klaudt
  Texas Bar No. 00796073
  klaudtd@gtlaw.com
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
(214) 665-3600 (Telephone)
(214) 665-3601 (Facsimile)

Natalie D. Thompson
  Texas Bar No. 24088529
  thompsonna@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
(512) 320-7200 (Telephone)
(512) 320-7210 (Facsimile)

**ATTORNEYS FOR
WILLIAM E. MAPP, III**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   ARGUMENT AND AUTHORITIES .................................................................... 2

    A.    An Injunction Ordering Mapp Not to Violate Section 17(a)(2) in the
          Future is Unnecessary Here. ............................................................... 2

          1.    The negligent conduct found by the jury weighs against an
                 injunction—this case does not involve egregious conduct. ....................... 3

          2.    The Section 17(a)(2) violation found by the jury was an isolated
                 violation of the securities laws—there is no recurrent conduct here. ......... 5

          3.    There is no scienter in this case—the jury rejected the
                 Commission's scienter theory. ................................................... 6

          4.    Mapp has always taken and continues to take the securities laws
                 seriously. ........................................................................... 6

          5.    Mapp is not in a position to violate the securities laws in the future. ......... 8

    B.    The Court Should Decline the Commission's Request for Disgorgement. ............ 9

          1.    Under historical principles, disgorgement in not an equitable
                 remedy........................................................................... 9

               a.    SEC disgorgement bears no relationship to compensation
                       and functions as a penalty. ........................................... 10

               b.    SEC disgorgement does not resemble traditional equitable
                         remedies. ........................................................... 11

               c.    SEC disgorgement—a monetary award in favor of the
                         government—has no precedent in courts of equity. ................... 12

           2.    The disgorgement award sought by the Commission is not
                 appropriate or necessary for the benefit of investors. ............................. 14

           3.    Pre-judgment interest should not be awarded here. ................................. 16

    C.    A Civil Penalty is Unnecessary to Impose Punishment on Mapp. ...................... 17

          1.    Third tier penalties are impermissible absent fraud, and the jury
                 roundly rejected the Commission's fraud theories. ................................. 17

2.    A draconian civil penalty is not necessary here, as Mapp has already suffered significantly in proportion to the negligent conduct found by the jury. ....................................................... 19

3.    Any civil penalty should be based on a single violation. .......................... 20

III.    CONCLUSION AND PRAYER ............................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Allstate v. Receivable Fin. Corp.*,
   501 F.3d 398 (5th Cir. 2007) ............................................................................15

*F.T.C. v. Bronson Partners, LLC*,
   654 F.3d 359 (2d Cir. 2011)..............................................................................14

*Gabelli v. SEC*,
   568 U.S. 442 (2013)...........................................................................................13

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002)...............................................................................9, 10, 12

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
   527 U.S. 308 (1999)...........................................................................................12

*Kansas v. Nebraska*,
   135 S. Ct. 1042 (2015) ......................................................................................13

*Kokesh v. SEC*,
   137 S. Ct. 1635 (2017)...........................................................................9, 10, 11

*Montanile v. Bd. of Trs. of Nat. Elevator Indus. Health Benefit Plan*,
   136 S. Ct. 651 (2016) ........................................................................................12

*Porter v. Warner Holding Co.*,
   328 U.S. 395 (1946)...........................................................................................13

*In re Reserve Fund Sec. & Derivative Litig.*,
   No. 09-4346, 2013 WL 5432334 (S.D.N.Y. Sept. 30, 2013) ..............................19

*Scripps-Howard Radio v. FCC*,
   316 U.S. 4 (1942)..............................................................................................14

*SEC v. AmeriFirst Funding, Inc.*,
   No. 307-CV-1188-D, 2008 WL 1959843 (N.D. Tex. May 5, 2008) ....................17

*SEC v. Arcturus Corp.*,
   171 F. Supp. 3d 512 (N.D. Tex. 2016) ..............................................................18

*SEC v. Banner Fund Intern.*,
   211 F.3d 602 (D.C. Cir. 2000) ..........................................................................12

*SEC v. Blatt*,
   583 F.2d 1325 (5th Cir. 1978) ......................................................................3, 15

*SEC v. Cavanagh*,
   445 F.3d 105 (2d Cir. 2006)..............................................................................13

*SEC v. Custable*,
   796 F.3d 653 (7th Cir. 2015) ............................................................................14

*SEC v. Druffner*,
    517 F. Supp. 2d 502 (D. Mass. 2007), *aff'd sub nom. S.E.C. v. Ficken*, 546
    F.3d 45 (1st Cir. 2008) ..................................................................................19

*SEC v. First City Fin. Corp., Ltd.*,
    890 F.2d 1215 (D.C. Cir. 1989) ..................................................................6, 7

*SEC v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996) ........................................................................16

*SEC v. Fischbach Corp.*,
    133 F.3d 170 (2d Cir. 1997) ..........................................................................14

*SEC v. Gann*,
    565 F.3d 932 (5th Cir. 2009) .......................................................................2, 3

*SEC v. Gentile*,
    No. CV 16-1619 (JLL), 2017 WL 6371301 (D.N.J. Dec. 13, 2017) ...................7, 8

*SEC v. Heart Tronics, Inc.*,
    No. 11-1962, 2016 WL 9049642 (C.D. Cal. Mar. 30, 2016)............................18

*SEC v. Life Partners Holdings, Inc.*,
    71 F. Supp. 3d 615 (W.D. Tex. 2014), *aff'd in relevant part* 854 F.3d 765 (5th
    Cir. 2017) ........................................................................................................5

*SEC v. Mannion*,
    28 F. Supp. 3d 1304 (N.D. Ga. 2014) ...........................................................17

*SEC v. Mattera*,
    No. 11 CIV. 8323 PKC, 2013 WL 6485949 (S.D.N.Y. Dec. 9, 2013).............17, 18

*SEC v. Microtune, Inc.*,
    783 F. Supp. 2d 867 (N.D. Tex. 2011), *aff'd sub nom. SEC v. Bartek*, 484 F.
    App'x 949 (5th Cir. 2012) ................................................................................8

*SEC v. Moran*,
    944 F. Supp. 286 (S.D.N.Y. 1996) ................................................................18

*SEC v. Novus Techs., LLC*,
    No. 2:07-CV-235-TC, 2010 WL 4180550 (D. Utah Oct. 20, 2010), *aff'd sub
    nom. SEC v. Thompson*, 732 F.3d 1151 (10th Cir. 2013) ...............................18

*SEC v. Rockwell Energy of Texas, LLC*,
    No. CIV.A. H-09-4080, 2012 WL 360191 (S.D. Tex. Feb. 1, 2012) .........16, 17, 19

*SEC v. Seghers*,
    298 F. App'x 319 (5th Cir. 2008) ..................................................................12

*SEC v. Sethi Petroleum, LLC*,
    No. 4:15-CV-00338, 2017 WL 3386047 (E.D. Tex. Aug. 7, 2017)..............5, 7, 15

*SEC v. Snyder*,
    No. CIVAH-03-04658, 2006 WL 6508273 (S.D. Tex. Aug. 22, 2006) ......3, 5, 6, 7

iv

*SEC v. Solow*,
  554 F. Supp. 2d 1356 (S.D. Fla. 2008), *aff'd*, 308 F. App'x 364 (11th Cir. 2009) ...............19

*SEC v. Zale Corp.*,
  650 F.2d 718 (5th Cir. 1981) .............................................................................................2

*United States v. Bernard*,
  202 F. 728 (9th Cir. 1913) ...............................................................................................11

*United States v. E. I. du Pont de Nemours & Co.*,
  366 U.S. 316 (1961) .........................................................................................................13

*United States v. Texas*,
  507 U.S. 529 (1993) .........................................................................................................10

**Statutes**

Securities Act of 1933 § 17(a)  .................................................................................... *passim*

15 U.S.C. § 77t(d)(2) .......................................................................................................2, 17

15 U.S.C. § 78u(d)(5) .....................................................................................................10, 14

**Other Authorities**

30A C.J.S. Equity §§ 67–68 (2017) ...............................................................................10, 11

Dan B. Dobbs, Handbook on the Law of Remedies (1973) ...................................................12

1 John Norton Pomeroy, Pomeroy's Equitable Remedies (3d ed. 1905) ................................13

2 John Norton Pomeroy, Pomeroy's Equitable Remedies (3d ed. 1905) ................................13

1 John Norton Pomeroy, Pomeroy's Equity Jurisprudence (3d ed. 1905) ......................11, 13

2 John Norton Pomeroy, Pomeroy's Equity Jurisprudence (3d ed. 1905) ............................11

4 John Norton Pomeroy, Pomeroy's Equity Jurisprudence (5th ed. 1941) ...........................12

Joseph Story, Commentaries on Equity Jurisprudence, As Administered in
  England and America § 923 (9th ed. 1866) ....................................................................13

Russel G. Ryan, *The Equity Façade of SEC Disgorgement*, 4 Harv. Bus. L. Rev.
  Online 1 (2013) ...............................................................................................................10

Defendant William E. Mapp, III ("Mapp") hereby respectfully submits his opposition to Plaintiff Securities and Exchange Commission (the "Commission")'s Motion for Remedies and to Enter Final Judgment [Dkt. 191], and shows as follows:

## I.    INTRODUCTION

The jury roundly rejected the Commission's sweeping accusations of fraud and scienter, finding Mapp not liable under Rule 10b-5 and Securities Act § 17(a)(1).  The jury's sole liability finding was a negligence-based violation of Securities Act § 17(a)(2) ("Section 17(a)(2)"). Undaunted, the Commission attempts to resurrect its fraud theory now, seeking draconian relief appropriate only in the most reprehensible cases of intentional deception.  The single negligence finding by the jury does not justify the permanent injunction, massive disgorgement, or civil penalties sought by the Commission. Moreover, in several respects, the Commission ignores the evidence presented to the jury, as its requests are premised on theories of which there is no evidence and that the Court determined not to submit to the jury.

*Injunctive Relief.* Forward-looking injunctive relief is unnecessary here, as Mapp, now age 59, has not worked in the corporate world since leaving Servergy in 2015 and has been driving for Uber part time for the past three years.  Not only is there no indication he would violate Section 17(a)(2) in the future, but he will have no opportunity to do so.

*Disgorgement*. The Commission's request for disgorgement should be rejected for two reasons.  First, the Court should examine the principles governing SEC disgorgement and revisit the assumption that SEC disgorgement is a viable remedy. Recent precedent shedding new light on SEC disgorgement makes clear that it is not a traditional equitable remedy, and therefore it is not available in this case or any other. Second, even if disgorgement were a permissible remedy in some cases, the disgorgement sought by the SEC—which reaches back *years before the conduct at issue* in the jury's sole liability finding—is overreaching and unwarranted here. The

Court should exercise its broad discretion to decline any disgorgement in this case.

*Civil Penalties*. Finally, despite the jury's complete rejection of all scienter-based claims, the Commission seeks third tier civil penalties. Third tier penalties are reserved for the most serious and harmful violations of the securities laws: those involving "fraud, deceit, manipulation, or reckless disregard of a regulatory requirement" that "resulted in substantial losses or risk." 15 U.S.C. § 77t(d)(2)(C).  The jury rejected the Commissions' theory of fraud and did not find scienter, and courts correctly refuse to presume scienter under these circumstances.  Thus, no penalty is warranted against Mapp. As civil penalties are awarded at the Court's discretion to punish violations of the securities laws, Mapp respectfully submits that he has been more than adequately punished for the negligence found, having endured severe financial, reputational, and career hardship over the last four years of investigation and litigation by the Commission. Since leaving his position as CEO at Servergy in 2015, Mapp has not been able to gain employment in the professional world, has been forced to live with his daughter and her family, and is barely able to support himself and his wife on earnings as an Uber driver. Accordingly, this Court should exercise its discretion to decline any civil penalty.

## II.    ARGUMENT AND AUTHORITIES

## A.    An Injunction Ordering Mapp Not to Violate Section 17(a)(2) in the Future is Unnecessary Here.

It is well established that "a defendant's past violation of the securities laws . . . is insufficient to support permanent injunctive relief."  *SEC v. Gann*, 565 F.3d 932, 940 (5th Cir. 2009) (citing *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981)). Rather, the Commission must show that "the defendant's past conduct gives rise to an inference that, in light of present circumstances, there is a 'reasonable likelihood' of future transgressions." *Id.* (quoting *Zale*, 650 F.2d at 720). In making this determination, a court must consider the following non-exhaustive

list of factors: (1) the "egregiousness of the defendant's conduct," (2) the "isolated or recurrent nature of the violation," (3) the "degree of scienter," (4) the "sincerity of [the] defendant's recognition of his transgression," and (5) the "likelihood of the defendant's job providing opportunities for future violations." *Id.* (citing *SEC v. Blatt*, 583 F.2d 1325, 1334 n. 29 (5th Cir. 1978)). The Commission must "offer positive proof of the likelihood that the wrongdoing will recur." *Blatt*, 583 F.2d at 1334 (citation omitted). Here, the Commission's request for an injunction is premised on revisionist history. It lacks even a passing resemblance to the facts actually adduced at trial, submitted in the jury charge, and found by the jury.

1. **The negligent conduct found by the jury weighs against an injunction—this case does not involve egregious conduct.**

A securities law violation is not egregious "by its very nature." *SEC v. Snyder*, No. CIVAH-03-04658, 2006 WL 6508273, at *2 (S.D. Tex. Aug. 22, 2006). In arguing egregiousness based on Mapp and Servergy "rais[ing] millions of dollars for a company that sold no units of the product," the Commission ignores investors' well-established knowledge of the risks of a startup investment. [Trial 12.12.2017 at 161:1–162:16, 166:5–20, 169:21–171:19; *see also* Trial 12.11.2017 at 138:14–17, 140:12–14.] Investor David Mayeux described his investments in Servergy as "a moon shot," or an investment that carries high risks in exchange for a potential high reward. [Trial 12.12.2017 at 152:3–153:20.] Attempting but failing to shoot the moon is not a violation of the securities laws.

And in any event, the testimony at trial makes clear that Servergy is still in business and is licensing its technology for cyber security applications. [Trial 12.6.2017 at 186:2–187:18, 190:18–24, 233:21–234:6.] The Commission has not put forward any evidence whatsoever regarding the amount of alleged loss to investors (if there is any). [*See* Dkt. 191 at 3.] The Commission did not call a single WFG investor to testify as to reliance on the PPM statements

and omission at issue, such that there is no evidence any investor was injured or even considered the issues presented by the Commission to be material to their investment decision.

The first four actions described by the Commission [Dkt. 191 at 4] as "egregious" conduct were submitted to the jury, which found that Mapp acted *negligently* in connection with either the PPM's omission of reference to the 32-bit processor used in the CTS-1000, the PPM's description of the number of pre-orders, the PPM Supplement's omission of the cancellation of the Koerr pre-order, or inaccuracies in the PPM's comparison chart. [*See id.*; Jury Charge (Dkt. 180) at 9]. The jury was given the opportunity to find that Mapp acted with scienter in connection with these same statements and omissions, and *did not do so*. [Verdict (Dkt. 182) at 1–2.] During the WFG offering, when the PPM was used, Mapp was not involved in day to day fundraising, and the jury heard his testimony that he was "cut out of the process." [Trial 12.12.2017 at 70:9–14.] The negligence found does not rise to the level of "egregious" conduct that might support injunctive relief.

Finally, the Commission's request for an injunction is also premised on two factual theories that that are unsupported by any evidence. [Dkt. 191 at 3, 4.] First, there is no evidence of any misrepresentation prior to April 11, 2011. The Commission's suggestion otherwise based on the jury's answers to questions pertinent to the statute of limitations is specious [Dkt. 191 at 3]—the Commission well knows it put on *no evidence* of pre-2011 misrepresentations and that the jury was not instructed regarding any such theory.[1] Second, in arguing that Mapp's "egregious conduct" includes "[t]elling an investor who 'helped bring big investors to the table' that Servergy had just received its first order from Amazon when Servergy had no orders from Amazon or anyone" [Dkt. 191 at 4], the Commission unbelievably disregards this Court's

---

[1]       Indeed, the Commission recognizes as much in its request for civil penalties, describing the three categories of misstatements or omissions as those that occurred in the PPM and Supplement in 2013. [Dkt. 191 at 18 n.6.]

determination not to submit this theory of liability to the jury [*see* Jury Charge (Dkt. 180) at 9]. This statement—which was *not*, contrary to the Commission's characterization, made to an investor—is not actionable. To even make this argument is perplexing, to say the least—the Commission inappropriately argues allegations that clearly did not underlie the jury's verdict.

In a recent case, this Court found egregious conduct where the defendant "violated the Preliminary Injunction just days after the Court entered it" and created an entity with the specific purpose of "evading the Court's order." *SEC v. Sethi Petroleum, LLC*, No. 4:15-CV-00338, 2017 WL 3386047, at *3 (E.D. Tex. Aug. 7, 2017). *That* is egregious conduct. Mapp's clearly is not.

### 2. The Section 17(a)(2) violation found by the jury was an isolated violation of the securities laws—there is no recurrent conduct here.

When determining whether conduct is "isolated or recurrent," courts consider whether the defendant has previously violated the securities laws.  *See, e.g.*, *SEC v. Life Partners Holdings, Inc.*, 71 F. Supp. 3d 615, 619 (W.D. Tex. 2014), *aff'd in relevant part* 854 F.3d 765 (5th Cir. 2017) (discussing company's settlement of past enforcement actions as a basis for injunctive relief); *Snyder*, 2006 WL 6508273, at *4 (concluding "while Defendant's status as a first-time offender does not preclude the issuance of an injunction against him, the isolated nature of his actions weigh against such a remedy"). The Commission certainly does not contend that Mapp ever violated the securities laws prior to the events at issue or that he has done so subsequently.

The Commission's sole argument on this factor is that "Mapp defrauded Servergy's investors beginning with the word-of-mouth fundraising effort that he spearheaded from 2009 to 2013." [Dkt. 191 at 5]. As discussed above, there is absolutely no evidence to support this theory. In fact, the Commission did not allege any such misrepresentations, did not prove any such misrepresentations at trial, and the jury was instructed regarding solely alleged misrepresentations and omissions made in the 2013 PPM and Supplement. [Jury Charge (Dkt.

180) at 9.] The conduct found by the jury to violate Section 17(a)(2) was not recurrent.

### 3. There is no scienter in this case—the jury rejected the Commission's scienter theory.

Courts "must accord due respect to the jury's verdict." *Snyder* 2006 WL 6508273, at *4. The Commission's contention that Mapp acted with scienter that justifies injunctive relief is not credible and in utter disregard of the jury's verdict. [Dkt. 191 at 5–9.] The jury was correctly instructed that negligence is sufficient for liability under Section 17(a)(2). [*See* Jury Charge (Dkt. 180) at 13–14 ("The second element for Section 17(a)(2) . . . requires the SEC to prove that Mapp acted negligently").][2] In re-arguing the evidence regarding the difference between a 32-bit and 64-bit server and the number of pre-orders in the PPM [Dkt. 191 at 6–7], the Commission asks this Court to eschew respect for the jury's verdict.[3] The jury heard all the Commission's evidence, along with the voluminous contrary evidence, and refused to find liability for misrepresentations under Rule 10b-5(b) (or any other scienter-based claim). Based upon the jury's single finding of negligence and rejection of all scienter-based violations, the "degree of scienter" factor is non-existent and thus weighs against injunctive relief.

### 4. Mapp has always taken and continues to take the securities laws seriously.

"Lack of remorse" is only a relevant factor where a defendant has "previously violated court orders" or "otherwise indicate[d] that" he does "not feel bound by the law." *SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1229 (D.C. Cir. 1989) (citations omitted). Mapp's exercise of his right to vigorously defend himself against the Commission's sweeping allegations of fraud and the registration violations that were rejected by the jury is entirely consistent with his

---

[2]     This argument is particularly misplaced in light of the Commission's earlier position, which framed Section 17(a)(2) as requiring "at most, a showing of negligence." [Dkt. 113 at 21.]

[3]     As is discussed *infra* as it pertains to civil penalties, courts do not presume that a jury's finding of liability on a negligence-based violation implies a finding of scienter; rather, courts only find scienter for such claims where it is otherwise supported in the verdict.

recognition that the negligence found by the jury is serious and that he takes the securities laws extremely seriously. A defendant's decision to take a case to trial does not itself justify injunctive relief. *See First City Fin. Corp.*, 890 F.2d at 1229 (explaining that defendants are "not to be punished because they vigorously contest the government's accusations"); *Snyder*, 2006 WL 6508273, at *5 (explaining that "[a]lthough Defendant maintains that he did not commit the violations of which the jury found him liable, he has consistently demonstrated an appreciation of the critical importance of the securities laws and regulations, as well as the seriousness of the charges and verdict against him."); *see also SEC v. Gentile*, No. CV 16-1619 (JLL), 2017 WL 6371301, at *4 (D.N.J. Dec. 13, 2017) (concluding defendant's statements that he "did nothing wrong" and public criticism of the SEC's action provide no support for the argument that he will violate the securities laws in the future); *Sethi Petroleum*, 2017 WL 3386047, at *5 (refusing to find the defendant's "willingness to contest the SEC's accusations as a lack of remorse").

Mapp's testimony reflects his respect for the securities laws. [*See, e.g.*, Trial 12.11.2017 at 135:7–136:7; Trial 12.12.2017 at 36:3–7, 39:22–24.] Certainly, he has vigorously denied any intentional fraud—and the jury agreed with him—but he acknowledged at trial that he relied on Servergy's officers, employees, and advisors to provide the information at issue in the PPM. [Trial 12.12.2017 at 18:2–20, 33:23–35:20, 36:11–37:24; *see also* Trial 12.6.2017 at 27:2–25.] Standing on his right to contest liability, particularly where the jury agreed with him as to all but one of the Commissions' claims, provides no justification for injunctive relief here.[4] As one Texas District Court has explained, "the kind of admission the SEC seeks would eliminate all of [a defendant's] appellate rights." *Snyder*, 2006 WL 6508273, at *5.

---

[4]     Mapp's counsel's statements are entirely consistent with Mapp's right to deny liability; these statements point out that the Commission failed to prove the fraud that Mapp has been denying all along.

### 5.      Mapp is not in a position to violate the securities laws in the future.

Injunctive relief is not appropriate as punishment; rather, it is forward-looking relief aimed at preventing future violations.  And where there is no likelihood of a future violation, an injunction would function solely as a penalty. *Cf. Gentile*, 2017 WL 6371301, at *4; *SEC v. Microtune, Inc.*, 783 F. Supp. 2d 867, 886 (N.D. Tex. 2011), *aff'd sub nom. SEC v. Bartek*, 484 F. App'x 949 (5th Cir. 2012). As one court recently explained, an obey-the-law injunction "would not [require the defendant] to do anything more than obey the law; a basic understanding of all citizens and those involved with securities." *Gentile*, 2017 WL 6371301, at *4.

Mapp is a 59 year old part-time Uber driver who has no realistic expectation of raising money or serving as an officer or director of a public company in the future. [Mapp Decl. ¶¶ 3–5.][5] Since leaving Servergy, he has not worked in the professional world; indeed, he and his wife are barely making ends meet and were forced to move in with their daughter and her family in Houston. [*Id.* ¶¶ 4, 7–8.] Though now cleared of the Commission's overreaching fraud charges, Mapp is still very unlikely to get a job in the technology space again, particularly given his age and due to the industry's well-known focus on young talent. In the months since trial, Mapp's efforts to gain professional employment have continued to yield no job prospects. [*Id.* ¶ 9.] As a result of the SEC's investigation, fraud allegations, and the trial, he has been forced into de facto retirement, albeit with no retirement savings. [*Id.* ¶¶ 8–9]

The Commission effectively acknowledges as much: it does not argue that Mapp has a current job or even prospects that might put him in a position to violate the securities laws. [Dkt. 191 at 10–11.] Instead, the Commission contends that because Mapp has worked in the technology space in the past he is likely to violate the securities laws in the future. [*Id.*] This argument not only disregards the forward-looking nature of injunctive relief, but also relies on a

---

[5]  *See* Attached Exhibit "A", Declaration of William E. Mapp, III.

strained interpretation of the facts. Mapp has not spent his "entire career in positions in which he could . . . violate the federal securities laws." [Dkt. 191 at 11.]  The question here is whether Mapp could violate Section 17(a)(2) in the future, *i.e.* obtain money or property by means of misrepresentations. Mapp's early career as an employee in the technology space certainly did not put him a position to speak for such employers as Texas Instruments or Continental Airlines, for whom he had no fundraising role, or relate to investors. He had never served as a CEO before co-founding Servergy in 2009, and his future prospects (as discussed above) are extremely remote. [Trial 12.11.2017 at 122:25–123:8.]

* * *

The Commission has not shown any "reasonable likelihood" that Mapp would violate Section 17(a)(2) in the future.  None of the governing factors counsel in favor of an injunction. Mapp respectfully requests that the Court deny the Commission's request for injunctive relief.

**B.      The Court Should Decline the Commission's Request for Disgorgement.**

Clearly disregarding the jury charge and the jury's verdict, the Commission seeks disgorgement of all money earned by Mapp for his work at Servergy between April 2011 and his departure from Servergy. The Commission's sole justification for such awards is as an equitable remedy. Its request in this case illustrates the fundamental problem with SEC disgorgement: the Commission's request is unrecognizable as a traditional equitable remedy that would have been available "in the days of the divided bench." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212–13 (2002). Moreover, such an award would provide no benefit to investors, as is required by statute. Thus, disgorgement is both inappropriate and unwarranted.

**1.      Under historical principles, disgorgement in not an equitable remedy.**

Since the 1970s, the SEC's position has been that it may obtain disgorgement under the theory that a monetary award ancillary to injunctive relief is a traditional equitable remedy. *See*

*Kokesh v. SEC*, 137 S. Ct. 1635, 1640 (2017). Congress recently codified the SEC's ability to seek equitable relief with an important limitation: the court may order "any equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5).[6]   The Supreme Court has made clear that the term "equitable relief" refers to relief available in the courts of equity "in the days of the divided bench." *Knudson*, 534 U.S. at 212–13. As such, disgorgement is *only available* to the Commission if it would have traditionally been available in a court of equity.  Though Mapp recognizes that federal courts have been awarding disgorgement to the Commission since the 1970s, he respectfully requests that the Court reexamine the principles behind such awards. SEC disgorgement would have been foreign in a court of equity because it (a) is punitive; (b) involves a money judgment, not access to a specific asset; and (c) has no historical precedent in courts of equity.

### a.    SEC disgorgement bears no relationship to compensation and functions as a penalty.

The Supreme Court held last term in *Kokesh* that SEC disgorgement is a "penalty." 137 S. Ct. at 1643–44.[7] The Court provided three explanations for this conclusion: First, SEC disgorgement is not "a liability imposed [solely] for the purpose of redressing a private injury"; rather, it is imposed "as a consequence for violating . . . public laws." *Id.* at 1643. (citation omitted). Second, "SEC disgorgement is imposed for punitive purposes." *Id.* Third, "SEC disgorgement is not compensatory." *Id.* at 1644; *see also* Russell G. Ryan, *The Equity Façade of SEC Disgorgement*, 4 HARV. BUS. L. REV. ONLINE 1, 2–5 & n.13 (2013) (observing that "any resemblance to a truly equitable remedy largely disappears in most cases" of SEC disgorgement).

---

[6]     Where a statute "speaks directly to the question addressed by the common law," the statutory scheme abrogates the common law principle. *United States v. Texas*, 507 U.S. 529, 534 (1993) (internal quotation omitted). Here, Congress's provision of guidelines for injunctive relief replaces prior federal common law regarding remedies ancillary to an injunction.

[7]     The *Kokesh* Court signaled its concerns regarding SEC disgorgement. 137 S. Ct. at 1642 n.3. Plainly the *Kokesh* Court's holding regarding the statute of limitations cannot be read as an endorsement of SEC disgorgement.

Courts of equity "refuse to aid in th[e] enforcement" of a penalty. 30A C.J.S. EQUITY §§ 67–68 (2017).  This principle has deep roots in equity jurisprudence. A comprehensive early–twentieth-century treatise explains that the fundamental aim of equity is to compensate, not to punish: "equity can and will relieve against legal penalties and forfeitures." 1 POMEROY'S EQUITY JURISPRUDENCE § 162 (3d ed. 1905); *see also id.* § 432; 30A C.J.S. EQUITY §§ 67–68; *United States v. Bernard*, 202 F. 728, 732 (9th Cir. 1913) (explaining that "[b]y applying to a court of equity for relief, the complainant waives all claim to vindictive damages"). And in another context pertaining to fraud (which is not at issue here due to the jury's rejection of the Commission's fraud claims), Pomeroy recognized the "fundamental" principle "that equity relieves against fraud on account of its effects upon the rights of the injured party, and not on account of the moral delinquency of the wrong-doer." 2 POMEROY'S EQUITY JURISPRUDENCE § 867 n.4 (3d ed. 1905). Equity does not impose punishment. Indeed, the Commission has not disputed this principle in prior briefing in this case. [*See* Dkt. 119 at 8–9.][8]

That SEC disgorgement is a penalty is dispositive. The *Kokesh* Court squarely rejected the Commission's contention that disgorgement is "remedial" (and thus not a penalty) because it "serves compensatory goals in some cases." 137 S. Ct. at 1645. That *Kokesh* was decided in the context of the statute of limitations does not undermine its logic, which was based on first principles regarding the characteristics of SEC disgorgement and interpreted the simple word "penalty" in the governing statute. *See id.* at 1643–44. No court of equity would impose or enforce a penalty, and consequently it is unavailable to the Commission here.

### b.    SEC disgorgement does not resemble traditional equitable remedies.

"Equitable remedies 'are, as a general rule, directed against some specific thing; they

---

[8]    The Commission has likewise agreed that SEC disgorgement cannot be justified under principles of restitution, either. [*See* Dkt. 119 at 6–7.] Thus, Mapp will not address that issue here.

give or enforce a right to or over some particular thing . . . rather than a right to recover a sum of money generally out of the defendant's assets.'" *Montanile v. Bd. of Trs. of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 658–59 (2016) (quoting 4 POMEROY'S EQUITY JURISPRUDENCE § 1234 (5th ed. 1941)); *see also Knudsen*, 534 U.S. at 213. For instance, a court of equity might impose a constructive trust over property held by the defendant. *Knudsen*, 534 U.S. at 213; *see* Dobbs § 4.3. SEC disgorgement lacks this fundamental characteristic of equitable relief. *See, e.g.*, *SEC v. Seghers*, 298 F. App'x 319, 336 (5th Cir. 2008) (explaining that whether the defendant actually has the "particular assets" is irrelevant to SEC disgorgement); *SEC v. Banner Fund Intern.*, 211 F.3d 602, 617 (D.C. Cir. 2000) (explaining that SEC "disgorgement is an equitable obligation to return a sum equal to the amount wrongfully obtained, rather than a requirement to replevy a specific asset," and is thus a "personal" liability).

In contrast, a monetary award of damages—such as the disgorgement order sought here—was traditionally available as a *legal* remedy "[i]n cases in which the plaintiff 'could *not* assert title or right to possession of particular property.'" *Knudsen*, 534 U.S. at 213 (quoting Dobbs § 4.2(1)). Here, the Commission seeks a money judgment against Mapp, which is "a quintessential action at law." *Montanile*, 136 S. Ct. at 659. The Commission has certainly not shown that Mapp still holds the monies he was paid for his work at Servergy, nor has it attempted to trace those funds to assets he still holds. In this way too, SEC disgorgement departs from remedies that would have been available in a court of equity.

### c.   SEC disgorgement—a monetary award in favor of the government—has no precedent in courts of equity.

The Supreme Court has made clear that, to qualify as "equitable relief," a remedy must be of the specific kind typically and traditionally available from a court of equity. *See, e.g.*, *Montanile*, 136 S. Ct. at 660–61; *Knudsen*, 534 U.S. at 712; *Grupo Mexicano de Desarrollo S.A.*

*v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999). Any inquiry into whether a court of equity could act turns on "whether the circumstances and relations presented by the particular case are fairly embraced within any of the settled principles and heads of jurisdiction which are generally acknowledged as constituting the department of equity." 1 POMEROY'S EQUITY JURISPRUDENCE § 62 (explaining, in 1905, that the system of equitable jurisprudence is well established and courts of equity no longer seek to create new law).

Because "the Government is . . . a different kind of plaintiff," the Commission may not rely on equitable doctrines simply because they may be available to private parties. *Gabelli v. SEC*, 568 U.S. 442, 451 (2013). Rather, the Commission's entitlement to a remedy turns on whether the government, as sovereign, could have been awarded that remedy by a court of equity. It could not: in courts of equity, there was no concept of a backwards-looking, punitive money judgment in favor of the government as sovereign. Instead, the only historical precedent for government enforcement in a court of equity is a suit to *enjoin* a public nuisance. *See* Joseph Story, COMMENTARIES ON EQUITY JURISPRUDENCE, AS ADMINISTERED IN ENGLAND AND AMERICA § 923 (9th ed. 1866); 1 POMEROY'S EQUITABLE REMEDIES §§ 479–80. Equitable remedies may in the abstract be available to vindicate the public interest, as is the case in the traditional remedy for a public nuisance, but there is *no historical precedent for monetary awards in favor of the sovereign*.

There is no historical precedent for the government, which has not itself suffered a loss and is not in need of compensation, seeking a monetary award based on violation of the public laws.[9] Because there is no historical basis for such an award in favor of the state, the

---

[9]        In prior briefing, the Commission has attempted to avoid this problem by pointing to inapposite cases in which restitution was awarded to a private party or to a state government in its capacity as a wronged party (not as sovereign). [Dkt. 119 at 8 n.4.] *SEC v. Cavanagh*, 445 F.3d 105 (2d Cir. 2006), has been abrogated by *Kokesh*. *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946), allowed for restitution to *private parties* who had been injured.

Commission may not properly be awarded disgorgement.

> **2.** **The disgorgement award sought by the Commission is not appropriate or necessary for the benefit of investors.**

Even if SEC disgorgement were available as a traditional equitable remedy, Congress has imposed an important limit on the equitable relief available to the Commission: such relief must be "appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5). This limitation means that equitable remedies that are not to the benefit of investors are unavailable. An SEC disgorgement award is payable to the United States Treasury, not to investors or alleged victims. *See SEC v. Custable*, 796 F.3d 653, 656 (7th Cir. 2015) (noting authority to "bypass victims of a fraud and send the disgorged profits and the penalty to the U.S. Treasury"); *F.T.C. v. Bronson Partners, LLC*, 654 F.3d 359, 373 (2d Cir. 2011) ("While agencies may, as a matter of grace, attempt to return as much of the disgorgement proceeds as possible, the remedy is not, strictly speaking, restitutionary at all, in that the award runs in favor of the Treasury, not of the victims."). The SEC disgorgement sought here, like SEC disgorgement typically, is not "tied to the losses suffered by defrauded investors," as "compensation is a distinctly secondary goal." *SEC v. Fischbach Corp.*, 133 F.3d 170, 175–76 (2d Cir. 1997).  As is typical, the Commission seeks disgorgement to be paid "to the Securities and Exchange Commission." [Dkt. 191-1 at 2.] The Commission makes no mention of benefitting investors, nor does it show any harm suffered by investors as a result of the negligence finding.

Requiring Mapp to pay the Commission an amount equivalent to his Servergy salary from half a decade ago—which he will never actually be able to do, given his dire financial

---

*Id.* at 397–98. In *Kansas v. Nebraska*, 135 S. Ct. 1042 (2015), disgorgement was awarded to Kansas in its capacity as a wronged party, not as a sovereign. *Id.* at 1057–58. *United States v. E. I. du Pont de Nemours & Co.*, 366 U.S. 316 (1961) is inapposite. In antitrust divestiture, a party divests assets, for example, by selling them to a private party, not paying a monetary judgment to the government. And *Scripps-Howard Radio v. FCC*, 316 U.S. 4 (1942), simply did not address equitable remedies. *Id.* at 13–14. These cases are not precedent for awarding monetary damages to the government.

situation and lack of any meaningful employment prospects—provides no benefit to investors whatsoever. Moreover, such an award would be inappropriate and unwarranted in this case, where investors retain their shares in Servergy. Indeed, Mr. Smith and Mr. Rai testified at trial that Servergy is currently marketing its CTS-1000 technology as a cyber security device through a licensing agreement with Cyphre Security Solutions.  [*See* Trial 12.6.2017 at 186:2–187:18, 190:18–24, 233:21–234:6.] The Commission provides no record citations to support its suggestions that Servergy stock is worthless—such a suggestion is inconsistent with the evidence the jury heard. Here, where Servergy's shareholders retain their ownership of a functioning company and in light of the absence of contrary evidence at trial, the disgorgement requested by the Commission does not satisfy the statutory "benefit of investors" requirement.

The Commission must show that the disgorgement sought is "causally connected to the violation." *Allstate v. Receivable Fin. Corp.*, 501 F.3d 398, 413 (5th Cir. 2007). This Court has "broad discretion not only in determining whether to order disgorgement but also in calculating the amount to be disgorged." *Sethi Petroleum*, 2017 WL 3386047 at *6. The only alleged misrepresentations submitted to the jury were in the Private Placement Memorandum ("PPM") and PPM Supplement, both of which were issued in 2013.  [Jury Charge (Dkt. 180) at 9]. The Court declined to submit the Commission's other alleged theories to the jury. [*Id.*] Indeed, the jury rejected the Commission's only claim premised on pre-2013 conduct, the Section 5 claim. [Verdict (Dkt. 182) at 3).] Yet, inexplicably, the Commission seeks disgorgement of all money earned by Mapp going back to April 11, 2011. [Dkt. 191 at 14; Dkt. 191-1 § 2; Hahn Decl. ¶ 7 & Ex. A.][10]  The Commission has not met its burden to show that Mapp's earnings were profits

---

[10]     The Commission also makes much of salaries earned by Mapp's grown children as Servergy employees, but does not contend these salaries should be included in any disgorgement award. [*See* Dkt. 191 at 12.] Nor could it, as funds that were never in Mapp's hands at all cannot be disgorged under any reading of Fifth Circuit law. *See*

proximately caused by the violation at issue.  Mapp respectfully requests that the Court exercise its broad discretion to decline any disgorgement in this case.

### 3.    Pre-judgment interest should not be awarded here.

In deciding whether an award of prejudgment interest is warranted, a court should consider "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996).

Mapp respectfully submits that inclusion of interest on a disgorgement award, if any, is unnecessary and would be excessive under the circumstances here. As established at trial, Mapp never earned his full contractual salary for working as Servergy's CEO at any point in time [Trial 12.11.2017 at 125:2–12], and the reasonable salary he *was* paid has long been spent on basic living expenses [Mapp Decl. ¶ 8].  Indeed, Mapp and his wife were forced to move in with their daughter and son in law in Houston, and Mapp is barely making ends meet as an Uber driver. [Trial 12.12.2017 at 98:18–25; Mapp Decl. ¶¶ 4–7.] Based on his current situation, Mapp will likely soon lose even that source of minimal income. [Mapp Decl. ¶¶ 5–6.] In *SEC v. Rockwell Energy of Texas, LLC*, No. CIV.A. H-09-4080, 2012 WL 360191 (S.D. Tex. Feb. 1, 2012), the court recognized that ordering prejudgment interest to be paid by a defendant who will be unable to pay it in any event would serve no purpose. *Id.* at *7 (explaining that "any benefit to [the defendants] has run its course"). This is not a case where the defendant has held on to substantial assets and put them to use in the market while the case was pending. Contrary to the Commission's assertion, Mapp has clearly not "enjoyed access to funds over a prolonged period"

---

*Blatt*, 583 F.2d at 1335. There is no law against hiring an officer's family members and no allegation or evidence that they did not perform the work for which they were paid.

[Dkt. 191 at 14], nor was such evidence established at trial. Indeed, Mapp and his wife currently have less than $100 in their checking and savings accounts. [Decl. ¶ 8.] Accordingly, the Court should not impose an award of prejudgment interest against Mapp in favor of the Commission.

**C.    A Civil Penalty is Unnecessary to Impose Punishment on Mapp.**

The Commission overreaches in asking this Court to impose a third-tier penalty—which requires "fraud, deceit, manipulation, or reckless disregard of a regulatory requirement" and "substantial losses," 15 U.S.C. § 77t(d)(2)(C)—based on the jury's single finding that Mapp acted negligently. Mapp respectfully requests that the Court exercise its broad discretion to decline a civil penalty in light of his unintentional conduct and dire financial situation.

First tier penalties apply for any violation. 15 U.S.C. § 77t(d)(2)(A). For an individual during the relevant time period, a first tier penalty can be between $0 and $7,500 or the amount of pecuniary gain. In exercising discretion to impose a civil penalty and setting the appropriate amount, courts consider, *inter alia*, the following factors: "(1) the egregiousness of the defendant's conduct; (2) the degree of . . . scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *SEC v. AmeriFirst Funding, Inc.*, No. 307-CV-1188-D, 2008 WL 1959843, at *7 (N.D. Tex. May 5, 2008) (citations omitted). The court may consider whether, in light of the circumstances, a penalty will serve any purpose. *See, e.g.*, *Rockwell Energy*, 2012 WL 360191, at *8 (declining a civil penalty where the defendants' "financial conditions are bleak").

**1.    Third tier penalties are impermissible absent fraud, and the jury roundly rejected the Commission's fraud theories.**

Both second and third tier penalties require "a showing that [the defendant's] conduct

'involved fraud, deceit, manipulation or deliberate or reckless disregard of a regulatory requirement.' In other words, a 'second' or 'third tier' penalty requires a showing of scienter." *SEC v. Mannion*, 28 F. Supp. 3d 1304, 1312 (N.D. Ga. 2014); *see also SEC v. Mattera*, No. 11 CIV. 8323 PKC, 2013 WL 6485949, at *17 (S.D.N.Y. Dec. 9, 2013) ("Negligence alone is not sufficient to warrant the imposition of a third-tier penalty"); *SEC v. Novus Techs., LLC*, No. 2:07-CV-235-TC, 2010 WL 4180550, at *13 (D. Utah Oct. 20, 2010), *aff'd sub nom. SEC v. Thompson*, 732 F.3d 1151 (10th Cir. 2013)  ("Imposition of a third tier penalty requires a finding that [the defendant] acted with a high degree of scienter."). As one court explained, "there is an unmistakable difference between conduct which negligently operates as a fraud when compared to conduct engaged in with the intent to defraud . . . It is illogical to view negligent actions in the same light as intentional wrongdoing." *SEC v. Moran*, 944 F. Supp. 286, 297 (S.D.N.Y. 1996).

The jury rejected the Commission's sweeping theories of fraud, finding Mapp not liable on every scienter-based claim. [Verdict (Dkt. 182) at 1–2.] Importantly, the jury found Mapp <u>not liable</u> under Rule 10b-5(b), the provision that parallels the misrepresentation liability at issue in Section 17(a)(2). [*Id.* at 1]; *see SEC v. Arcturus Corp.*, 171 F. Supp. 3d 512, 534–35 (N.D. Tex. 2016). The crux of the Commission's argument is that the Court should presume the jury found scienter, and thus intentional fraud, despite being correctly instructed that negligence is sufficient for liability under Section 17(a)(2). [*See* Jury Charge (Dkt. 180) at 13–14 ("The second element for Section 17(a)(2) . . . requires the SEC to prove that Mapp acted negligently").] The jury *was instructed that negligence is sufficient for liability* under Section 17(a)(2); thus, there is no room for a presumption that it nevertheless found scienter.

Statutory second and third tier penalties cannot be imposed where the verdict only supports negligence. *See, e.g.*, *SEC v. Heart Tronics, Inc.*, No. 11-1962, 2016 WL 9049642, at

*3 & n.3 (C.D. Cal. Mar. 30, 2016) (refusing to "presume" a finding of scienter). And courts that have imposed third tier penalties where there are negligence-based claims do so based on an express scienter finding in the jury's verdict, which is glaringly absent here. *See, e.g.*, *In re Reserve Fund Sec. & Derivative Litig.*, No. 09-4346, 2013 WL 5432334, at *19 (S.D.N.Y. Sept. 30, 2013) (jury expressly found scienter as to Section 17(a) violations); *SEC v. Solow*, 554 F. Supp. 2d 1356, 1366 (S.D. Fla. 2008), *aff'd*, 308 F. App'x 364 (11th Cir. 2009) (jury found scienter as to Rule 10b-5 and Section 17(a)(1), thus third tier penalties were appropriate). The Commission has not pointed to a single case as precedent for its request that the Court presume the jury found scienter as to Section 17(a)(2).

Moreover, the Commission's contention that "there can be no question that Mapp's conduct created substantial losses or at least the risk of substantial losses to Servergy investors" is without factual support. [Dkt. 191 at 17.] Rather, as discussed above, the Commission did not call a single investor in the WFG offering and it is undisputed that Servergy is still in business and licensing its technology for a cyber security application. The Commission put forward no evidence as to any loss to investors, much less the amount of any such loss. Any finding of substantial losses would be based on speculation outside the evidence weighed by the jury.

**2.      A draconian civil penalty is not necessary here, as Mapp has already suffered significantly in proportion to the negligent conduct found by the jury.**

In determining an appropriate civil penalty, courts consider the defendant's ability to pay, and decline to impose a civil penalty where the defendant will be unable to pay the fine in any event. *See, e.g.*, *Rockwell Energy*, 2012 WL 360191, at *8; *SEC v. Druffner*, 517 F. Supp. 2d 502, 513 (D. Mass. 2007), *aff'd sub nom. SEC v. Ficken*, 546 F.3d 45 (1st Cir. 2008). Here, Mapp is unable to pay any civil penalty, much less the third tier penalties the Commission seeks. [Mapp Decl. ¶¶ 5–8.]

As discussed above, Mapp has not worked in the professional world since leaving Servergy in 2015. [Mapp Decl. ¶ 5.] He and his wife are barely making ends meet. [*Id.* ¶¶ 4–8.] The Mapps currently have $37.00 in a joint savings account and $51.00 in a joint checking account, and Mrs. Mapp has numerous ongoing medical expenses. [*See* Mapp Decl. ¶ 8.] Mapp has already lost his position at Servergy, been unable to find work since then due to the Commission's investigation and fraud charges [*id.* ¶¶ 2–3], and has suffered extraordinarily in proportion to the negligent conduct found by the jury. Even a penalty of $100 would be significantly punitive. The Court should exercise its discretion to decline any civil penalty, since no additional punishment is necessary.

### 3. Any civil penalty should be based on a single violation.

Liability under Section 17(a)(2) could have been based on the jury's finding a single one of the several misrepresentations and omissions outlined in the Jury Charge [Dkt. 180 at 9], or could have been based on different jurors each finding a different misrepresentation or omission. Because the jury charge did not require the jury to specify which of the alleged misrepresentations in the PPM it found, it should not be presumed that the jury found all three categories, much less that it was unanimous. If the Court ultimately decides a civil penalty is warranted, Mapp respectfully submits that such penalty be based on a single violation.[11]

### III.   CONCLUSION AND PRAYER

For the reasons stated above, Defendant William E. Mapp, III respectfully requests that the Court deny the Commission's Motion for Remedies or modify the remedies requested as set out above, and that the Court enter judgment on the jury's verdict.

---

[11]      If the Court is inclined to further punish Mapp, no more than a first tier civil penalty is available for the negligent violation of Section 17(a)(2) found by the jury. Mapp respectfully submits that no such penalty is warranted here, particularly given Mapp's dire financial condition and inability to pay. Even a nominal amount of $100 could not be currently satisfied by Mapp, and he certainly could not satisfy a $7,500 first tier penalty.

Respectfully submitted,

GREENBERG TRAURIG, LLP

*/s/ David W. Klaudt*

Jason S. Lewis
  Texas Bar No. 24007551
  lewisjs@gtlaw.com
David W. Klaudt
  Texas Bar No. 00796073
  klaudtd@gtlaw.com
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
(214) 665-3600 (Telephone)
(214) 665-3601 (Facsimile)

Natalie D. Thompson
  Texas Bar No. 24088529
  thompsonna@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
(512) 320-7200 (Telephone)
(512) 320-7210 (Facsimile)

ATTORNEYS FOR
WILLIAM E. MAPP, III

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record via the

Court's CM/ECF system this 20th day of March, 2018.

*/s/ David W. Klaudt*
David W. Klaudt